# Exhibit C

Alessandra Glorioso
Michael Galen
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 415-9200
Facsimile:  (212) 953-7201
Email: glorioso.alessandra@dorsey.com
       galen.michael@dorsey.com

*Attorneys for Okoa Capital LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| DIAMOND ELITE PARK LLC | ) ) Case No. 23-22520-shl |
| Debtor. | ) ) ) |

**DECLARATION OF TY CORBRIDGE IN SUPPORT**
**OF OKOA CAPITAL LLC'S EX PARTE MOTION FOR ENTRY OF**
**AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING**
**THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF**
**DOCUMENTS AND EXAMINATION OF THE DEBTOR**

I, Ty Corbridge, being first duly sworn on his oath, hereby declare under penalty of

perjury of the laws of the United States of America as follows.

1.     I am an individual over the age of 18 years old.  I am a resident of Las Vegas,

Nevada.

2.     I submit this declaration (the "Declaration") in support of *Okoa Capital*

*LLC's Ex Parte Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004*

*Authorizing the Issuance of Subpoenas for the Production of Documents and Examination*

*of the Debtor* (the "Motion"). Capitalized terms used but not defined herein will have the

meanings ascribed to such terms in the Motion.

3.      I am a co-founder of Okoa Capital LLC ("Okoa").

4.      I am the duly authorized agent of Okoa in this action and I have the authority to submit this Declaration.

5.      On or about January 7, 2022, Okoa provided a short term loan (the "Loan") to Diamond Elite Park LLC (the "Debtor") in the original principal amount of $6,790,000.00 for the purpose of acquiring the Property. In connection with the Loan, the Debtor executed that certain Loan Agreement (the "Loan Agreement") and that certain Promissory Note (the "Note"), each dated January 7, 2022. The Debtor also granted a Deed of Trust (the "Deed of Trust") in favor of Okoa secured by the Property. The Loan Agreement, Note, and Deed of Trust are referred to herein as the "Loan Documents". Complete and authentic copies of the Loan Documents are attached hereto as **Exhibit 1**. At the time Okoa made the Loan, the Property was in pristine condition. A photograph of the Property at that time is included in Paragraph 19 of the Motion.

6.      Okoa provided *Escrow Instructions* to the title company in connection with the closing of the Loan. A complete and authentic copy of the *Escrow Instructions* is attached hereto as **Exhibit 2**.

7.      In June 2022, the Debtor filed an application for a zoning adjustment on the Property to allow for conversion of the Property to a residential use. The application was approved in August 2022. Complete and authentic copies of the application for zoning adjustment and the approval are attached hereto as **Exhibit 3**. Upon information and belief, the Debtor has not obtained any permits or made any other progress with respect to conversion of the Property to a residential use.

8.      The Debtor defaulted on the Loan several months prior to the January 6, 2023 maturity date, although Okoa did not call a formal default at that time. The Debtor

has failed to make any payments since the Loan matured.

9.      On February 2, 2023, Okoa sent the Debtor a notice of default and demand for payment curing the default.  A complete and authentic copy of that notice is attached hereto as **Exhibit 4**.

10.      On April 7, 2023, Okoa sent the Debtor a second notice of default. A complete and authentic copy of the April Notice of Default, and the Notice of Trustee Sale included therewith, is attached hereto as **Exhibit 5**.

11.      As of July 10, 2023, the total amount of principal and interest due to Okoa under the Loan Documents was $8,136,683.

12.      On June 12, 2023, the City of Phoenix issued the Debtor an Ordinance Violation. A complete and authentic copy of the Ordinance Violation is attached hereto as **Exhibit 6**.

13.      On June 13, 2023, the Debtor's counsel emailed Okoa's state court counsel stating: "The property has not been abandoned and there is no basis to Lender's allegations. We are working diligently to refinance the loan and are taking care of this property." A complete and authentic copy of that correspondence is attached hereto as **Exhibit 7**.

14.      Okoa's representative visited the Property on or about June 15, 2023, and discovered the following conditions:

      a.      contrary to the Debtor's representations, the Property was not secured;

      b.      the windows at the ground floor level were broken and doors were unlocked, allowing unfettered access to trespassers;

      c.      trespassers appeared to have gained access to every part of the Property;

      d.      there was a distinct smell of smoke emanating from the Property, suggesting fires were being burned within the Property;

      e.     the interior of the Property sustained extensive damage, including removal of the wiring throughout the Property, rendering it likely that the HVAC and electrical infrastructure had been destroyed;

      f.     the Property appeared blighted due to neglected landscaping and overgrown weeds, attracting transient individuals and other trespassers.

Copies of the photographs taken by Okoa's representative during the June 15, 2023 visit are included in Paragraph 22 of the Motion.

15.     In June 2023, Okoa's counsel requested that the Debtor provide evidence of insurance that listed Okoa as loss payee. A complete and authentic copy of that correspondence is included as part of **Exhibit 7**.

16.     On or about June 13, 2023, Okoa's counsel corresponded with counsel for Envy Restoration. A complete and authentic copy of that correspondence is attached hereto as **Exhibit 8**. Based on the Envy Restoration correspondence and the fact that Okoa never received notice or payment of insurance proceeds related to the Property damage as it should have if it were listed as loss payee, Okoa became concerned that the Debtor had failed to list Okoa as a loss payee on the insurance policies covering the Property.

17.     After multiple requests for proof of insurance, the Debtor provided a document titled *Evidence of Commercial Property Insurance*. Okoa then contacted the Debtor's insurance broker Perry Schwartz at Protective Insurance Brokerage. After multiple requests for proof of insurance, Mr. Schwartz responded that he was waiting for the Debtor to make payment on the insurance policies. Upon learning that the Debtor's insurance policies on the Property were unpaid and were in danger of lapsing (if they had not already lapsed), Okoa paid $4,400 to Mr. Schwartz's office to reinstate the policies. *Id*. A complete and authentic copy of the correspondence with Mr. Schwartz is attached hereto as **Exhibit 9**. Despite these efforts, Okoa has been unable to confirm the Debtor's insurance with the insurance provider, Great American Insurance Company.

4

18.      Dorsey & Whitney LLP has also made multiple requests to the Debtor's bankruptcy counsel for the Debtor's insurance certificates related to the Property and information on claims filed against those policies, but has received no response. A complete and authentic copy of that correspondence is attached hereto as **Exhibit 10**.

19.      I hereby verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


DATED this 31st day of July 2023.


_____

Ty Corbridge

# Exhibit 1

| RECORDING REQUESTED BY AND WHEN RECORDED MAIL TO: | |
|---|---|
| | |
| | SPACE ABOVE THIS LINE FOR RECORDER'S USE |

## DEED OF TRUST

THIS DEED OF TRUST (this "Deed of Trust") is made on January 7, 2022 by DIAMOND ELITE PARK LLC, an Arizona limited liability company ("Grantor"), to _____ ("Trustee") for the benefit of OKOA CAPITAL LLC ("Beneficiary").

R E C I T A L S

A.      Grantor is indebted to Beneficiary for the principal sum of Six Million Seven Hundred Ninety Thousand Dollars ($6,790,000), as evidenced by the Promissory Note of even date herewith made by Grantor payable to the order of Beneficiary (as may be modified or amended from time to time, the "Note").

B.      Grantor desires and intends for this Deed of Trust to secure the full and punctual (i) payment to Beneficiary of all principal, interest, and other sums that may become due and payable under the Note or this Deed of Trust and (ii) performance and observance by Grantor of all of the other covenants contained in the Note and this Deed of Trust.

NOW, THEREFORE, in consideration of the foregoing Recitals and for other good and valuable consideration, the receipt and sufficiency of which Grantor acknowledges, Grantor grants, bargains, sells, conveys, mortgages, pledges, assigns, and transfers in fee simple to Trustee, all of Mortgagor's present and future estate, right, title, and interest in and to the land located in Phoenix, Arizona more particularly described on Exhibit A, together with any improvements now or hereafter located upon such land and any rights, privileges, appurtenances, and easements benefiting or belonging to such land (collectively, the "Property").

TO HAVE AND TO HOLD the same unto Trustee, its successors and assigns, in fee simple, forever.

IN TRUST to secure for the benefit of Beneficiary the full and punctual (a) payment of all principal, interest, and other sums that may become due and payable under the Note or this Deed of Trust and (b) performance and observance by Grantor of all other covenants contained in the Note and this Deed of Trust.

PROVIDED, HOWEVER, that unless there exists an Event of Default (defined below), Grantor shall have the right to possess, occupy, and use the Property and to collect, receive, and retain its rents, profits, and issues.

PROVIDED, FURTHER, HOWEVER, that if Grantor pays (or causes to be paid) to Beneficiary in full the indebtedness that the Note evidences and this Deed of Trust secures, then this Deed of Trust shall be null and void and of no further force and effect and Trustee shall release this Deed of Trust and reconvey the Property to Grantor upon the request and at the expense of Grantor.

Grantor covenants and agrees with Beneficiary as follows:

1. Grantor shall perform and observe all of its covenants under the Note, the terms of

which are incorporated by reference in and made a part of this Deed of Trust.

2. Grantor shall comply with all legal requirements applicable to the Property (subject to Grantor's right to contest them in good faith at its sole risk and expense).

3. Grantor shall pay (or cause to be paid) before delinquency all taxes, assessments, and other public charges with respect to the Property (subject to Grantor's right to contest them in good faith at its sole risk and expense).

4. It shall be an event of default under this Deed of Trust (an "Event of Default") if Grantor fails to perform any of its obligations or observe any of its covenants under the Note or this Deed of Trust. Notwithstanding anything to the contrary contained in the Note or this Deed of Trust, Grantor shall have fifteen (15) days to cure any monetary default and thirty (30) days to cure any non-monetary default under the Note or this Deed of Trust (however, if such non-monetary default cannot be cured within thirty (30) days, Grantor shall have such additional time as may be reasonable to cure such default provided Grantor commences to cure such default within the initial thirty (30) day cure period and thereafter diligently prosecutes its efforts to cure), in each case after having received written notice from Beneficiary specifying the nature of the default, and neither Beneficiary nor Trustee shall exercise any remedy for any default unless such notice has been given and such default is not cured within such cure period.

5. During an Event of Default, Beneficiary may:

(a) Declare immediately due and payable the indebtedness evidenced by the Note and secured by this Deed of Trust.

(b) Sell any or all of the Property at public auction, in such manner, at such time and place, with such public notice, for such price, and upon such terms as Trustee may deem best for the interests of all concerned in accordance with applicable law. In connection with any such sale, Grantor assents to the entry of an order and the passage of a decree for the sale of all or part of the Property by the court of jurisdiction. If any purchaser defaults, Trustee shall have the power and obligation to resell with such postponement of sale or resale and upon such public notice as Trustee may determine. Upon compliance by the purchaser with the terms of sale, and upon judicial approval as law may require, Trustee shall convey the Property in fee simple to and at the cost of the purchaser, who shall not be liable to see to the application of the purchase money. The proceeds of sale shall be applied as follows: FIRST, to pay all reasonable, customary, and proper costs and expenses of sale, and all taxes, assessments, and insurance; SECOND, to pay all outstanding principal and accrued but unpaid interest under the Note; THIRD, to pay any other indebtedness secured by this Deed of Trust; and FINALLY, to pay any remainder of the proceeds to Grantor, its successors or assigns.

6. The powers, rights, and remedies of Beneficiary and Trustee under this Deed of Trust are cumulative and may be exercised, at any time and from time to time, separately, successively, or simultaneously. Failure by Beneficiary or Trustee to exercise, or delay in exercising, any power, right, or remedy shall not waive or impair such power, right, or remedy. No single or partial exercise of any power, right, or remedy shall preclude any other or further exercise thereof or the exercise of any other power, right, or remedy. Waiver by Beneficiary or Trustee of any of the terms of this Deed of Trust shall not be a waiver of any subsequent breach of the same or any other term of this Deed of Trust. The powers, rights, and remedies in this Deed of Trust may be exercised only to the extent that their exercise does not violate any applicable law, and are intended to be limited to the extent necessary so that they will not render this Deed of Trust invalid, unenforceable, or not entitled to be recorded or filed under applicable law.

7. Grantor specially warrants the Property, subject, however, to all matters of record existing as of the time this Deed of Trust is recorded.

8. Grantor represents and warrants to Beneficiary that the indebtedness secured by this Deed of Trust is solely for business, commercial, or investment purposes.

9. Grantor shall promptly execute, acknowledge and deliver such further documents and instruments, and take such other action, as Beneficiary reasonably may request from time to time to effectuate the purpose and intent of this Deed of Trust.

10. Grantor and Beneficiary shall deliver to each other from time to time, within fifteen (15) days after written request and without charge, an estoppel certificate with respect to such

matters relating to this Deed of Trust or the Note that the other party reasonably may request.

11. All notices and other communications under this Deed of Trust shall be in writing and shall be deemed duly given if (a) personally delivered, with signed receipt, (b) sent by commercial overnight courier with delivery confirmation, or (c) mailed by certified U.S. Mail, return receipt requested, postage prepaid. Notices to Grantor shall be sent to 913 E. 8th Street, Casa Grande, AZ 85122, with a copy to NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A., One South Street, 27th Floor, Baltimore, MD 21202, Attn: Jeffrey Murphy, Esq. Notices to Beneficiary shall be sent to 2290 E 4500 S #260 Holladay, UT 84117. Notices to Trustee shall be sent to Beneficiary. The parties shall be responsible for notifying each other of any change of address. A notice shall be deemed received when actually received or delivery is refused. Attorneys may give notice for their respective clients.

12. TO THE MAXIMUM EXTENT PERMITTED BY LAW, GRANTOR AND (BY ACCEPTING THIS DEED OF TRUST) BENEFICIARY EACH KNOWINGLY, VOLUNTARILY, INTENTIONALLY, IRREVOCABLY, AND UNCONDITIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS DEED OF TRUST, AND ACKNOWLEDGES THAT THIS WAIVER IS MADE AFTER CONSULTING WITH (OR HAVING THE OPPORTUNITY TO CONSULT WITH) COUNSEL OF ITS OWN CHOOSING AS TO THE MEANING OF THIS WAIVER.

13. The provisions of this Deed of Trust shall be binding upon and inure to the benefit of Grantor and Beneficiary and their respective successors and assigns and to Trustee and any successor or substitute trustees. This Deed of Trust shall be governed by the laws of the State of Arizona (excluding choice of law principles). This Deed of Trust contains all (and supersedes any prior) agreements between the parties with respect to the matters that this Deed of Trust covers. The provisions of this Deed of Trust are severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of any other provision. The Recitals set forth above and the exhibit attached to this Deed of Trust are incorporated in and constitute a material part of this Deed of Trust. The headings in this Deed of Trust are for convenience of reference only and shall not affect the meaning or interpretation of this Deed of Trust. Except where the context clearly indicates otherwise, the singular shall be deemed to include the plural, the plural shall be deemed to include the singular and the masculine and neuter shall include feminine and neuter.

14. Grantor irrevocably appoints Trustee as its true and lawful attorney(s), in its name and stead and on its behalf, for the purpose of effectuating any sale, assignment, transfer, or delivery for the enforcement of this Deed of Trust, pursuant to foreclosure or power of sale or otherwise, to execute and deliver all such certificates, deeds, bills of sale, assignments, and other instruments as Trustee may deem necessary or appropriate, and Grantor ratifies confirms that all that such Trustee or any substitute shall lawfully do so by virtue hereof. If more than one person is designated as Trustee, either or any of them may act when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all. Trustee may resign at any time upon giving ten (10) days' written notice to Grantor and Beneficiary. Beneficiary may at any time and from time to time remove the Trustee, with or without cause, and appoint any successor Trustee(s) by a written instrument recorded among the land records where this Deed of Trust is recorded. Such successor Trustee(s) shall succeed to all the rights and obligations of the retiring Trustee as if originally named in this Deed of Trust. Each retiring Trustee, at Grantor's expense, shall duly assign, transfer, and deliver to such successor Trustee(s) all of the rights and monies the retiring Trustee holds at such time and shall execute and deliver such proper instruments as may be reasonably required to evidence such assignment, transfer, and delivery. By accepting this Deed of Trust, Trustee covenants to perform and fulfill the trusts created by this Deed of Trust and shall be liable only for gross negligence or intentional misconduct. Trustee shall not be required to see that this Deed of Trust is recorded, or be liable for its validity or priority, or be responsible for the performance or observance of the terms of this Deed of Trust by Grantor or Beneficiary. Trustee may employ agents and attorneys in the execution of this trust and to protect Beneficiary's interests. Grantor shall pay or reimburse Trustee for the reasonable, out-of-pocket expenses that Trustee incurs under this Deed of Trust (including but not limited to fees of attorneys and auctioneers).

[SIGNATURE PAGE FOLLOWS]

4853-3319-9880, v. 1      1

IN WITNESS WHEREOF, Grantor has executed and delivered this Deed of Trust on the date first written above.

**GRANTOR:**

**DIAMOND ELITE PARK LLC,**
an Arizona limited liability company

By:      Diamond Elite Park Member LLC, an Arizona limited liability company, its Sole Member

By:      Diamond Equity Manager LLC, a Delaware limited liability company, its Manager

By:      _____

Yehoishiah Rubin
Sole Member

| State of ~~Arizona~~ Colorado |  |
|---|---|
| BmS )ss: | |
| County of ~~Pinal~~ Denver | FOR NOTARY SEAL OR STAMP |
| On this 6th day of January, 2022, before me, the Undersigned a Notary Public in and for said County and State, personally appeared Yehoishiah Rubin, Sole Member of Diamond Equity Manager LLC, as Manager of Diamond Elite Park Member LLC, as Sole Member of Diamond Elite Park LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public: _____

My Commission Expires: 3-4-2023 | |

**BRANDI M SOLANO**
NOTARY PUBLIC - STATE OF COLORADO
Notary ID #20074006808
My Commission Expires 3/4/2023

4853-3319-9880, v. 1

**Exhibit A**

That portion of the West half of Section 25, Township 3 North, Range 2, East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona, described as follows:

Commencing at the Southwest corner of the Northwest quarter of Section 25;

Thence North 89 degrees 40 minutes 56 seconds East along the South line of the Northwest quarter 540.15 feet;

Thence South 00 degrees 19 minutes 37 seconds West 33.00 feet to the point of beginning, said point being the South right-of-way line of Mountain View Road;

Thence North 89 degrees 40 minutes 56 seconds East 391.63 feet to a point of curve, concave Northwest having a radius of 333.03 feet;

Thence Northeast along the arc of said curve, through a central angle of 36 degrees 22 minutes 55 seconds, an arc length of 211.47 feet;

Thence North 53 degrees 18 minutes 01 seconds East 8.74 feet;

Thence South 81 degrees 41 minutes 59 seconds East 14.14 feet to a point on the West right-of-way line of 25th Avenue;

Thence South 36 degrees 41 minutes 59 seconds East 277.34 feet to a point of curve, concave Southwest having a radius of 267.02 feet;

Thence Southeast along the arc of said curve, through a central angle of 34 degrees 45 minutes 23 seconds, arc length of 161.98 feet;

Thence North 88 degrees 57 minutes 55 seconds West 561.87 feet;

Thence South 00 degrees 19 minutes 37 seconds West 181.42 feet;

Thence South 89 degrees 55 minutes 08 seconds West 268.20 feet;

Thence North 00 degrees 19 minutes 37 seconds East 473.18 feet to the Point of Beginning.

EXCEPT that part taken by Order of Immediate Possession No CV2020-015690, recorded in Document No. 20210028645, described as follows:

Commencing at the center of said Section 25, a brass cap in hand hole at the intersection of 23rd Avenue and Mountain View Road;

Thence South 89 degrees 40 minutes 56 seconds West, along the East-West Mid-Section line of said Section 25, a distance of 1,467.50 feet to a point on the West right of way line of 25th Avenue;

Thence departing said Mid-Section line and along said West right of way line, South 36 degrees 38 minutes 36 seconds East, a distance of 133.21 feet to the Point of Beginning;

Thence continuing along said West right of way line, South 36 degrees 38 minutes 36 seconds East, a distance of 59.76 feet;

Thence departing said West right of way line, North 87 degrees 59 minutes 00 seconds West, a distance of 3.31 feet;

Thence North 36 degrees 38 minutes 36 seconds West, a distance of 55.63 feet;

Thence North 14 degrees 41 minutes 49 seconds East, a distance of 3.31 feet to a point on said West right of way line and the Point of Beginning.

4853-3319-9880, v. 1

# LOAN AGREEMENT

This Loan Agreement ("**Agreement**") is made and entered into January 7th, 2022 ("**Effective Date**") by and between **Okoa Capital LLC** ("**Lender**"), and **Diamond Elite Park LLC**, an Arizona limited liability company ("**Borrower**"), whose address is 913 E. 8th Street, Casa Grande, AZ 85122, and **Yehoishiah Rubin** as an individual guarantor ("**Guarantor**"). The above-described individuals and entities may be referred to as a "**Party**" or "**Parties**," as necessary in this Agreement.

<u>RECITALS</u> ·

A.        WHEREAS, Borrower desires to borrow funds from Lender, and Lender is willing to loan funds to Borrower in material reliance upon representations of Borrower and Guarantor both orally and as set forth herein;

B.        WHEREAS, the funds borrowed pursuant to this Agreement shall be secured by Borrower's interest in a property located at **9630 N 25th Avenue, Phoenix, AZ; Parcel No.: 14912004V** as more particularly described in Exhibit "A" to this Agreement ("**25th Avenue Property**");

C.        WHEREAS, the 25th Avenue Property shall be pledged as collateral secured by a first position Deed of Trust for repayment of all sums due and owing under this Agreement;

D.        WHEREAS, as inducement for Lender to enter into this Agreement, Guarantor herewith guarantees the Borrower's performance of all the covenants, terms, conditions, and obligations contained in this Agreement; and

E.        WHEREAS, by this Agreement, the Parties desire to formalize, memorialize, and agree upon the terms and conditions of repayment of the funds that are loaned pursuant to this Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and the covenants, terms, conditions, and obligations herein set forth, the Parties agree as follows:

<u>AGREEMENT</u>

1.        <u>Loan Commitment</u>.  Lender will loan the principal amount of Six Million Seven Hundred and Ninety Thousand Dollars ($6,790,000) with interest accruing at the rate of Twelve Percent (12%) per annum to Borrower for the purpose of providing a short-term loan to Borrower ("**Principal Loan**").  Borrower agrees to repay the Principal Loan in full with the Loan Fee, as defined below in paragraph 2, along with any other interest, costs, fees, and expenses in accordance with the terms of this Agreement ("**Loan Commitment**"). Lender will wire the Principal Loan to Borrower upon the completion of all Funding Conditions, as more particularly described below.

2.        <u>Payment Terms</u>.  In accordance with the Promissory Note, attached as **Exhibit B** to this Agreement, Borrower shall pay the Principal Loan and Loan Fee, as described below, along with any other costs, fees, and expenses twelve (12) months after the Effective Date of this Agreement ("**Initial Loan Term**").  Under no event shall the loan run later than <u>**January 6th, 2023**</u>, when all obligations and debts set forth herein shall become immediately due and payable (the "**Final Payment Date**").

(a)        *Loan Fee*. As transactional costs and an origination fee, Borrower agrees to pay Okoa Capital LLC at closing an amount of **One Hundred and Thirty-Five Thousand Eight Hundred Dollars ($135,800)** to be net funded out of the Principal Loan ("**Lender Loan Fee**").

(b)     *Interest Payments.*  As interest, Borrower agrees to pay accrued interest monthly on the
outstanding balance of the Loan.  As of the Effective Date, the monthly interest payment will
be Sixty-Seven Thousand Nine Hundred Dollars ($67,900).  Borrower agrees to make a
minimum of three monthly payments totaling **Two Hundred and Three Thousand Seven
Hundred Dollars ($203,700)** ("**Minimum Interest**").  All remaining closing costs shall be
borne by Borrower.

(c)     *Reserve Interest.*  Borrower agrees that Four Hundred Seven Thousand Four Hundred Dollars
($407,400) shall be held back with Lender for an interest reserve (the "**Interest Reserve**").
The Interest Reserve shall be applied by Lender against the Monthly Interest Payments for
the initial six (6) months.  In the event the Loan is paid prior to the expiration of the initial
three (3) month period, then the payoff amount shall be reduced and offset by the remaining
amount held by Lender from the Interest Reserve.

(d)     *Default Interest.*  If any Event of Default occurs, the Loan Fee shall become immediately due
and payable, while additional interest will accrue on the unpaid Principal Loan, Loan Fee,
and all other unpaid costs, fees, and expenses at the rate of two percent (2%) percent every
thirty (30) days ("**Default Rate**"), until the Loan Commitment is paid in full.

ANY PROVISION OF THIS AGREEMENT, THE PROMISSORY NOTE, THE MORTGAGE, THE
ASSIGNMENT OR THE GUARANTY (THE "LOAN DOCUMENTS") NOTWITHSTANDING, IN NO
EVENT SHALL THE INTEREST ACCRUED WITH RESPECT TO THE PRINCIPAL LOAN EXCEED
THE RATE PERMITTED UNDER APPLICABLE LAW AND IF THE APPLICATION OF THE
PROVISIONS OF ANY LOAN DOCUMENT WOULD RESULT IN THE ACCRUAL OF INTEREST IN
EXCESS OF THAT PERMITTED UNDER APPLICABLE LAW, THE INTEREST ACCRUED SHALL BE
LIMITED TO THE MAXIMUM RATE PERMITTED UNDER APPLICABLE LAW.

3.     <u>Duties of Borrower</u>.  Subject to all other obligations set forth in this Agreement or otherwise
assumed by the Borrower, Borrower covenants and agrees not to use, disburse, assign, transfer, pledge, or
otherwise encumber or hypothecate the Loan Commitment to any other individual or entity not a Party to this
Agreement, without a subsequent written agreement with Lender.  Borrower also covenants and agrees to
provide written notice to Lender of any material change in circumstances of the Borrower, including, but not
limited to, any material financial or economic change, or any material change otherwise relating in any way to
the Collateral, Loan Commitment, or the Borrower's ability to perform according to the terms of this
Agreement or Guarantor's ability to Guaranty the Loan and pay the Interest and Lender Loan Fee.

4.     <u>Funding Conditions</u>.  Borrower agrees to fulfill each of the following conditions prior to
receiving the Principal Loan: (1) execute and provide copies of all documents contemplated by this Agreement,
(2) execute and provide copies of all required entity and organizational authorizations necessary to perform
the covenants, terms, conditions, and obligations of this Agreement, and (3) execute and record a deed of trust
(as well as a UCC Financing Statement if necessary) with a first-position lien in favor of Lender on the **25th
Avenue Property** in a form satisfactory to the Lender ("**Funding Conditions**").

5.     <u>Event of Default</u>.  Any one of the following occurrences shall constitute a default ("Event of
Default") under this Agreement if:

(a)     Borrower fails to timely observe or perform any covenant, condition, requirement, or
agreement required to be observed or performed by Borrower under this Agreement and such
failure continues for ten (10) days after Borrower receives written notice via email;

(b)     Borrower fails to make any payment required by this Agreement when the same becomes due
and payable in accordance with the terms hereof and such failure continues for five (5) days;

(c)     Any warranty, representation, or statement made or furnished to Lender by or on behalf of
Borrower in relation to this Loan Agreement proves to have been false in any material respect
when made or furnished;

(d)     The Borrower files or has filed against it any bankruptcy proceeding; or

In addition to the foregoing, Borrower shall not sell, assign, convey, mortgage, pledge, hypothecate
or otherwise transfer all or any part of the Property without first obtaining the written consent of the Lender,
and any attempt to do so shall be void.  Any violation or attempted violation of this provision shall permit the
Lender to declare, at the Lender's option and with notice to the Borrower, an Event of Default hereunder.

Upon the occurrence of an Event of Default under this Agreement, the non-defaulting Party or Parties,
or any one of them, may, at its option and without notice or demand, accelerate the entire Loan Commitment
and terminate this Agreement without prejudice to any claim it may have for damages suffered by it as a result
of the default and may pursue such remedies as are available under the law including but not limited to
foreclosing on the property, in Lender's sole and absolute discretion.

6.     <u>Representations</u>.  The Borrower and Guarantor each represent and warrant the following
material facts to Lender, which the Lender reasonably and justifiably and materially relies upon as a material
inducement to signing and executing this Agreement and funding the Principal Loan:

(a)     Borrower is the exclusive owner of the **25th Avenue Property**;

(b)     The 25th Avenue Property is not encumbered by any other mortgage, trust deed, lien,
judgment lien, or any other interest that would preclude giving Lender a first-position security
interest in the same as contemplated by this Agreement;

(c)     The individual signing below on behalf of the Borrower has the prior written authorization,
approval, and consent of the entity to enter into this Agreement and make the covenants, terms,
conditions, and obligations set forth herein.

(d)     **Borrower REPRESENTS AND WARRANTS that this is a commercial transaction.  The
loan at issue is for business and commercial purposes.**  Borrower does not seek to obtain a
loan from the Lender for a consumer purpose, nor does Borrower intend to use the loaned
funds for a consumer purpose.  Consequently, this Agreement, the Promissory Note and the
Trust Deed associated with this transaction are not subject to any federal lending or disclosure
requirements such as the Truth in Lending Act ("TILA"), the Home Owners Equity Protection
Act ("HOEPA"), the Equal Credit Opportunity Act ("ECOA"), and/or the Real Estate
Settlement Procedures Act ("RESPA"), nor is this transaction subject to the Fair Debt
Collection Practices Act ("FDCPA"), nor any federal or state consumer law or statute.
Borrower and Guarantor hereby waive any and all claims against the Lender under TILA,
HOEPA, ECOA, RESPA, FDCPA and any federal and/or state consumer law or statute.

7.     <u>Warranties</u>.  The Parties each individually warrants as follows:

(a)     That it or he is not a party to any contract, obligation, agreement, demand, or claim that would in any way limit, proscribe, negate or modify this Agreement, or any of its provisions.

(b)     That it or he is not a party to any legal proceeding, nor the subject of any judgment (civil or criminal), levy, suit, or execution, nor has any such action, suit or proceeding been threatened that has not been disclosed.

8.      Term. The term of this Agreement shall commence on the Effective Date, as set forth in the introductory paragraph of this Agreement, and shall continue until the Final Payment Date, as set forth in the Payment Terms of Paragraph 2.

9.      CPI Upward Rate Adjustment. The Parties all agree, that in the event of a CPI increase of TWELVE PERCENT (12%) or more from the note date, the interest rate accruing on the unpaid balance of this note (whether before or after default according to the foregoing interest rate provisions) shall be adjusted on the first day of each month (each such day an "*Adjustment Date*") by a percentage equal to the CPI Increase (defined below).

"*CPI Increase*", as used herein, shall mean a percentage equal to the percentage increase in (i) the United States Department of Labor, Bureau of Labor Statistics ("*BLS*"), Consumer Price Index for all Urban Consumers (CPI-U) U.S. City Average - All Items (1982-84 = 100) (the "*Index*") for the last full calendar month preceding the applicable Adjustment Date over and above (ii) the corresponding Index figure for the calendar month in which this note was given; provided that (a) if such Index should be discontinued, such calculation shall be made by use of another reputable index selected by Lender which is recognized by BLS as comparable to the Index, (b) if the base period for the Index (currently 1982-84 = 100) is hereafter modified, the base period used in making the foregoing calculation shall be appropriately adjusted to reflect such modification, and (c) if the Index is published in such manner that an Index figure is not available for a particular month (the "*Relevant Month*") (such as, by way of illustration only and not by way of limitation, if the Index were only published every other month), then the Index figure published for the most recent month preceding such Relevant Month shall be used. Notwithstanding anything to the contrary in the foregoing, in no event shall the interest rate be reduced below the initial note rate.

10.     Amendments and Waivers. No amendment or waiver of any provision of this Agreement, or consent to any departure by either Party from any such provision, shall be effective unless the same shall be in writing and signed by the Parties to this Agreement, and, in any case, such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. The waiver by any Party of any breach of this Agreement shall not operate as or be construed to be a waiver by such Party of any subsequent breach.

11.     Assignments. This Agreement and the rights of the Parties hereunder may not be assigned without the prior written consent of the Parties hereto; provided, however, Lender may assign or transfer its duties or interests hereunder to an affiliate of Lender at its sole discretion. In the event of a valid, approved assignment this Agreement shall inure to the benefit of, and be binding upon such successors and assigns.

12.     Notice. Any notice or communication required or permitted under this Agreement shall be sufficiently given if delivered by hand or sent by first class mail to the following addresses:

LENDER:             Okoa Capital LLC
                    2290 E 4500 S #260 Holladay, UT 84117
                    tycorbridge@gmail.com
                    Phone – 702.378.1854

4877-2808-1160, v. 2

BORROWER:      **Diamond Elite Park LLC**
E. 8th Street
Casa Grande, AZ 85122
Attn: Mr. Yehoishiah Rubin
shia@diamondequity.net, 845-521-0880

13.    <u>Entire Agreement; Severability</u>. This Agreement, including all exhibits attached hereto, shall constitute the entire agreement between the Parties with respect to the subject matter hereof, and shall supersede all previous oral and written (and all contemporaneous oral) negotiations, commitments, agreements, and understandings relating hereto. Should one or more of the provisions of this Agreement be held by any court to be invalid, void, or unenforceable, the remaining provisions shall nevertheless remain in full force and effect. The language of this Agreement shall be construed as a whole and not strictly for or against any Party.

14.    <u>Time is of the Essence</u>. Time is of the essence with respect to this Agreement. The dates contained herein shall be strictly construed.

15.    <u>Governing Law and Jurisdiction</u>. This Agreement shall be governed by, and enforced in accordance with, the laws of the state of Arizona. The Parties to this Agreement hereby agree to submit to the non-exclusive jurisdiction of the federal and state courts located in Arizaon in any action or proceeding arising out of or relating to this Agreement in any way.

16.    <u>Attorney Fees</u>. If either Party fails to perform the provisions of this Agreement, the Party at fault, or the defaulting Party, as the case may be, agrees to pay all costs and expenses of collection, as well as all costs incurred to enforce this Agreement, including a reasonable attorney fee, whether or not arbitration or judicial proceedings are commenced.

17.    <u>Business Days</u>. In the event any date described in this Agreement relative to the performance of actions hereunder falls on a Saturday, Sunday, or legal holiday, such date shall be deemed postponed until the next business day thereafter.

18.    <u>Facsimile Transmission and Counterparts</u>. Facsimile transmission (or any other electronic transmission) of any signed original documents, and retransmission of any signed facsimile (or other electronic transmission), shall be the same as delivery of an original. This Agreement and any attached exhibits requiring signatures may be executed in counterparts, and all counterparts shall constitute but one and the same document.

19.    <u>Recitals, Exhibits, Referenced Documents</u>. All recitals, exhibits, schedules, and other documents referenced in this Agreement shall be deemed incorporated into this Agreement as if they were restated herein.

20.    <u>Organizational Compliance with Terms of this Agreement</u>. Borrower agrees to conform all organizational agreements and articles, including, but not limited to, the Articles of Organization and Operating Agreement to be consistent with the terms of this Agreement subject to the review and approval of Lender.

21.    <u>Personal Guaranty</u>. For good and valuable consideration, the undersigned guarantor agrees to personally and joint and severally guarantee the performance of all the covenants and obligations of the Borrower contained in this Agreement pursuant to the terms of a Personal Guaranty executed contemporaneously herewith. As more particularly set forth in the Personal Guaranty, Guarantor shall be jointly and severally liable in the first instance for any default on the part of the Borrower without regard to whether or not collection remedies are pursued first as against the Borrower.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by duly authorized members or agents, as set forth below:

**LENDER**

**OKOA CAPITAL LLC**

By: _____
    Name:
    Title:

**BORROWER**

**DIAMOND ELITE PARK LLC,**
an Arizona limited liability company

By:  Diamond Elite Park Member LLC, an Arizona
     limited liability company, its Sole Member

    By:  Diamond Equity Manager LLC, a
       Delaware limited liability company, its
       Manager

    By: _____
       Yehoishiah Rubin
       Sole Member

**GUARANTOR**
_____
**Yehoishiah Rubin**

# EXHIBIT A

to

LOAN AGREEMENT

---

25th Avenue Property Description

[Attached]

That portion of the West half of Section 25, Township 3 North, Range 2, East of the Gila and Salt River Base and
Meridian, Maricopa County, Arizona, described as follows:

Commencing at the Southwest corner of the Northwest quarter of Section 25;

Thence North 89 degrees 40 minutes 56 seconds East along the South line of the Northwest quarter 540.15 feet;

Thence South 00 degrees 19 minutes 37 seconds West 33.00 feet to the point of beginning, said point being the
South right-of-way line of Mountain View Road;

Thence North 89 degrees 40 minutes 56 seconds East 391.63 feet to a point of curve, concave Northwest having
a radius of 333.03 feet;

Thence Northeast along the arc of said curve, through a central angle of 36 degrees 22 minutes 55 seconds, an
arc length of 211.47 feet;

Thence North 53 degrees 18 minutes 01 seconds East 8.74 feet;

Thence South 81 degrees 41 minutes 59 seconds East 14.14 feet to a point on the West right-of-way line of 25th
Avenue;

Thence South 36 degrees 41 minutes 59 seconds East 277.34 feet to a point of curve, concave Southwest having
a radius of 267.02 feet;

Thence Southeast along the arc of said curve, through a central angle of 34 degrees 45 minutes 23 seconds, arc
length of 161.98 feet;

Thence North 88 degrees 57 minutes 55 seconds West 561.87 feet;

Thence South 00 degrees 19 minutes 37 seconds West 181.42 feet;

Thence South 89 degrees 55 minutes 08 seconds West 268.20 feet;

Thence North 00 degrees 19 minutes 37 seconds East 473.18 feet to the Point of Beginning;

EXCEPT that part taken by Order of Immediate Possession No CV2020-015690, recorded in Document No.
20210028645, described as follows:

Commencing at the center of said Section 25, a brass cap in hand hole at the intersection of 23rd Avenue and
Mountain View Road;

Thence South 89 degrees 40 minutes 56 seconds West, along the East-West Mid-Section line of said Section 25,
a distance of 1,467.50 feet to a point on the West right of way line of 25th Avenue;

Thence departing said Mid-Section line and along said West right of way line, South 36 degrees 38 minutes 36
seconds East, a distance of 133.21 feet to the Point of Beginning;

Thence continuing along said West right of way line, South 36 degrees 38 minutes 36 seconds East, a distance of
59.76 feet;

Thence departing said West right of way line, North 87 degrees 59 minutes 00 seconds West, a distance of 3.31
feet;

Thence North 36 degrees 38 minutes 36 seconds West, a distance of 55.63 feet;

Thence North 14 degrees 41 minutes 49 seconds East, a distance of 3.31 feet to a point on said West right of
way line and the Point of Beginning.

# EXHIBIT B

to

LOAN AGREEMENT

Promissory Note

# PROMISSORY NOTE

$6,790,000
January 7th, 2022

FOR VALUE RECEIVED, **Diamond Elite Park LLC**, an Arizona limited liability company ("**Maker**"), and **Yehoishiah Rubin** ("**Guarantor**") promise to pay to the order of **Okoa Capital LLC** ("**Holder**"), in, at the date, and at such place as hereafter stated, the principal sum of **Six Million Seven Hundred and Ninety Thousand Dollars ($6,790,000)** on or before January 6th, 2023 ("**Final Payment Date**"). Payment under this Promissory Note ("**Note**") shall be payable as required by the Loan Agreement, incorporated herein by this reference, summarized as follows:

1.  Interest on the unpaid principal balance will accrue at an annual rate equal to Twelve Percent (12%). Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month and any partial month in which the loan is repaid in full is calculated on the basis of the actual days and a 360-day year and shall include the day of payoff. All interest payable under this Note is computed using this method.

2.  Maker shall pay to Holder a monthly interest fee in the amount of **Sixty-Seven Thousand Nine Hundred Dollars ($67,900)**.

3.  Maker may prepay this note at any time without penalty provided Maker has paid at least Two Hundred and Three Thousand Seven Hundred Dollars ($203,700) of interest in the aggregate.

4.  Outstanding principal, loan origination fee, unpaid interest, along with all costs, fees, and expenses, shall be due and payable no later than the Final Payment Date.

5.  The Default Interest rate shall be two percent (2%) every thirty (30) days on all past due and owing amounts.

Payments should be made to Okoa Capital LLC at 2290 E 4500 S #260 Holladay, UT 84117, or at such other place as may be designated by Holder in writing. Payments are due on the first (1st) day of each month during which the Note is in effect. The Final Payment Date may be modified by Holder pursuant to paragraph 2 of the Loan Agreement executed concurrently herewith.

If any default occurs in the payment of any installment of principal and interest or any part thereof, the Holder at its option, and without notice or demand, may declare the entire principal balance together with accrued interest immediately due and payable. In the event of any default on the part of the Maker, Maker agrees to pay all costs and expenses of collection (with or without suit), including reasonable attorney fees.

As security for this Note, Maker grants and pledges to Holder their interest in the **25th Avenue Property** as defined in the Loan Agreement of even date herewith, which property is covered by an ALTA policy of title insurance against the subject real property insuring a first position of priority in a form satisfactory to Holder.

Maker waives diligence, demand, presentment for payment, notice of non-payment, protest and notice of protest, notice of dishonor, bringing of suit, and specifically consent to and waive notice of any renewals or extensions of this Note, whether made to or in favor of the undersigned, or any other person or persons. Failure to declare the entire balance of this Note due and payable upon the occurrence of an Event of Default, including the non-payment or partial payment of any installment shall not constitute a waiver of the right to declare said balance due and owing at any time subsequent thereto.

This Note shall be governed by and construed in accordance with the laws of the **State of Arizona.**

This Note is personally guaranteed by **Yehoishiah Rubin** pursuant to the terms of a Personal Guaranty of even date herewith.

IN WITNESS WHEREOF, the undersigned Maker and Guarantor execute this Note as of the date first written above.

The undersigned personally guaranty the repayment of this Note, together with the performance of all covenants and obligations of the Maker contained in this Note. The Guarantor shall be jointly and severally liable in the first instance for any default on the part of the Maker without regard to whether or not collection remedies are pursued first as against the Maker.

**MAKER**

**DIAMOND ELITE PARK LLC,**
an Arizona limited liability company

By:  Diamond Elite Park Member LLC, an Arizona
     limited liability company, its Sole Member

    By:  Diamond Equity Manager LLC, a
         Delaware limited liability company, its
         Manager

        By:  _____
             Yehoishiah Rubin
             Sole Member

**GUARANTOR**

_____
**Yehoishiah Rubin**

**NOTICE REGARDING ANCILLARY SERVICES: Title costs for this transaction may include charges for certain services provided by Riverside Abstract, LLC at the request of your lender or attorney. The issuance of the title policy is not dependent upon the performance of such services. This bill is a good faith estimate of closing charges made to induce company to issue title insurance.**

IN WITNESS WHEREOF, the undersigned hereby acknowledges that he has carefully reviewed the Settlement Statement and to the best of his knowledge and belief it is a true and accurate statement of all receipts and disbursements made for this transaction.

PURCHASER:

**Diamond Elite Park LLC**

BY: _____

Name:

Title:

The parties hereto agree that all water, sewer and utility charges shall be prorated and adjusted between the parties outside of closing. This settlement statement was prepared by Riverside Abstract, LLC, as agent for Chicago Title Insurance Company with information and figures provided and reviewed by Seller and Purchaser. Seller and Purchaser hereby approve the settlement statement and authorize disbursement of funds accordingly. In the event that the figures included herein are in error and/or do not reflect the terms of the Purchase Agreement between Seller and Purchaser then the parties agree that adjustments, including but not limited to additional funds paid or reimbursed as appropriate, will be made post-closing. Seller and Purchaser hereby release and agree to hold Riverside Abstract, LLC, and Chicago Title Insurance Company harmless from any and all claims or causes of action relative to the accuracy of the closing figures.

## SIGNATURE PAGE

**NOTICE REGARDING ANCILLARY SERVICES: Title costs for this transaction may include charges for certain services provided by Riverside Abstract, LLC, at the request of your lender or attorney. The issuance of the title policy is not dependent upon the performance of such services. This bill is a good faith estimate of closing charges made to induce company to issue title insurance.**

IN WITNESS WHEREOF, the undersigned hereby acknowledges that he has carefully reviewed the Settlement Statement and to the best of his knowledge and belief it is a true and accurate statement of all receipts and disbursements made for this transaction.

**SELLER:**

**Bay Pacific Phoenix Corp Center LLC**

BY:_____

Name:

Title:

The parties hereto agree that all water, sewer and utility charges shall be prorated and adjusted between the parties outside of closing. This settlement statement was prepared by Riverside Abstract, LLC, as agent for Chicago Title Insurance Company with information and figures provided and reviewed by Seller and Purchaser. Seller and Purchaser hereby approve the settlement statement and authorize disbursement of funds accordingly. In the event that the figures included herein are in error and/or do not reflect the terms of the Purchase Agreement between Seller and Purchaser then the parties agree that adjustments, including but not limited to additional funds paid or reimbursed as appropriate, will be made post-closing. Seller and Purchaser hereby release and agree to hold Riverside Abstract, LLC, and Chicago Title Insurance Company harmless from any and all claims or causes of action relative to the accuracy of the closing figures.

[Additional Signatures Follow]

# Exhibit 2

# ESCROW INSTRUCTIONS

January 7th, 2022

TO:  Mendy Fine, Riverside Abstract

DELIVERED VIA EMAIL

SUBJECT PROPERTY: 9630 N 25th Avenue, Phoenix, AZ; Parcel No: 149-12-004V & 149-09-024

Escrow Agent is directed to do the following in connection with the above referenced transaction:

- Provide an ALTA Lender's Title Policy insuring Okoa Capital LLC for $6,790,000.
- Prepare a deed of trust in favor of Lender.
- Assure and guaranty that the deed of trust is in a FIRST LIEN position.  All taxes for years 2022 must be paid in full.
- Verify all delivered loan documents together with the Loan Agreement, Promissory Note, and Personal Guaranty are properly executed by authorized individuals. Please scan and email theses executed documents along with the closing statement to ty@okoacapital.com PRIOR to closing.  Please mail original Promissory Note and Deed of Trust to: 2290 E 4500 S #260 Holladay, UT 84117.
- Borrower agrees to pay all costs and expenses in connection with this transaction.
- Borrower agrees to loan fee of One Hundred and Thirty-Five Thousand Eight Hundred Dollars ($135,800).
- Borrower agrees to a $67,900 origination fee made payable to Great Stone Capital Fund A LLC and sent to: _____.
- Six Hundred and Eleven Thousand One Hundred Dollars ($611,100) shall be held back for an interest reserve.
- Lender requires that Borrower provide evidence of Hazard Insurance naming Okoa Capital LLC as loss payee.

You are authorized to distribute funds upon completion of the foregoing conditions.

Sincerely,

Ty Corbridge
Okoa Capital LLC

# Exhibit 3

# City of Phoenix

PLANNING AND DEVELOPMENT DEPARTMENT

APPLICATION FOR ZONING ADJUSTMENT

# APPLICATION NO: ZA-280-22

| | | |
|---|---|---|
| **CASE TYPE:** Use Permit | **COUNCIL DISTRICT:** 3 | **EXISTING ZONING:** A-1 |
| **DATE FILED:** 6/21/2022 | **CASE STATUS:** Pending | **FILING STAFF:** 077303 |

| Fee | Fee Waived | Fee Date | Receipt | Purpose |
|---|---|---|---|---|
| $490.00 | $0.00 | 06/21/2022 | | Original Filing Fee |

**HEARING DATES**

ZA: 08/04/2022 1:30 PM    **LOCATION:** Meeting will be held virtually.

BOA:

**PROPERTY LOCATION:** 9630 North 25th Avenue

**LEGAL DESCRIPTION:** see attached

CONTACT INFORMATION

| NAME | ADDRESS | PHONE | FAX | EMAIL |
|---|---|---|---|---|
| David Ehrman<br>Diamond Elite Park, LLC<br>(Owner, Applicant) | 913 E 8th Street<br>Casa Grande AZ 85122 | (347) 424-8920 | | david@diamondequity.net |
| Ashley Z Marsh<br>Gammage & Burnham, PLC<br>(Representative) | 40 N Central Avenue, 20th Floor<br>Phoenix AZ 85004 | (602) 256-4443 | | amarsh@gblaw.com |

If, during the course of review of a pending application, the applicant submits one or more additional applications that are related to the pending application, then and in such event, the substantive review time frame shall be reset on all related applications. In this event there shall be one applicable substantive review time for all of the related applications and the time frame shall be revised to be the longest substantive review time frame that was applicable to any one of the related applications. As a result, the entire substantive review time frame for the related applications shall start over, and a fee may be charged.

An applicant may receive a clarification from the city of its interpretation or application of a statute, ordinance, code or authorized substantive policy statement. To request clarification or to obtain further information on the application process and applicable review time frames, please call 602-262-7131 (option 6), email zoning.mailbox@phoenix.gov or visit our website at http://phoenix.gov/pdd/licensetimes.html.

In making this application, I understand that the filing of this application and payment of fees does not entitle me to the relief requested. (See Sec. 307 of City of Phoenix Zoning Ordinance for standards by which the hearing officer will review the application.) I understand the approval of this request does not replace the need for acquiring the appropriate building permits, site plan approval, liquor license or any other licenses required by governmental agencies. I also understand that in the case of liquor request approval of a use permit does not guarantee the CITY OF PHOENIX will recommend approval of the liquor license.

APPLICANT'S SIGNATURE:_____    DATE:_____

**NOTE TO APPLICANT:** SUCH USE PERMITS AND VARIANCES AS ARE GRANTED BY THE ZONING ADMINISTRATOR SHALL BE VOID IF THE USE IS NOT COMMENCED OR IF A BUILDING PERMIT IS NOT OBTAINED **60 DAYS** OF SUCH GRANTING OR WITHIN THE TIME STIPULATED BY THE ADMINISTRATOR.

APPEALS OF DECISIONS OF THE ZONING ADMINISTRATOR MAY BE MADE BY ANY PERSON TO THE BOARD OF ADJUSTMENT WITHIN **15 DAYS** AFTER THE DATE OF ACTIONS.

**REQUEST**

1. Use permit to allow a residential use. Use permit required.

**ZONING ORD. SECTIONS**
627.C.1

GEOGRAPHIC INFORMATION

**APN:** 149-09-024, 149-12-004V

**Qtr Section(Map Index):** 27-23(J7), 28-23(K7)

**ZA CASE NO:** 280-22-3                                                    **Date:** 8/4/22 130pm

| **Zoning Administrator Action** | **Appeal Date:** |

☒ Approved  ☐ Denied  ☐ Denied, as filed  ☒ Stipulations          ☐ Under Advisement  ☐ Withdrawn  ☐ Other
                                                                    ☐ Cont: _____

**STIPULATIONS:**

1) 2 years to apply and pay for building permits.

Must appeal by August 19, 2022.

8/4/22
/DATE/                    E.M._____          ZONING ADMINISTRATOR
                          BY

☐ Support Present      ☐ Opposition Present

STIPULATIONS MET:
YES/NO

WHITE: ZONING ADMINISTRATOR      GOLDENROD: APPLICANT (FINAL ACTION)                    70-24D Rev. 6/06

# Exhibit 4



February 2, 2023


1771 N Agave St
Casa Grande, AZ 85122


Via Certified Mail & Email

Re:  **9630 N 25th Avenue, Phoenix, AZ; Parcel No.: 149-12-004V & 149-09-024.**

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. YOUR LOAN IS IN A DEFAULT STATUS AND REMAINS UNPAID AS OF THE ABOVE DATE.**

Dear Borrower:

The purpose of this letter is to provide you with written notice that your loans are in default under your payment obligations pursuant to that Promissory Note and Loan Agreement dated January 7th, 2023.  This loan has been in default since January 7th when the loan matured and attempts have been made to collect payment.

WE HEREBY DEMAND that you cure this default by making a full cash payment in the amount of $7,337,727 within ten (10) days from the date of this letter.  If Borrowers fail to strictly comply with this payment demand, Lender is prepared to exercise all rights and remedies available to Lender under the loan documents, including without limitation, exercising rights under any trust deeds.  In the event Lender is forced to pursue payment through foreclosing on real property or other assets, be advised that pursuant to the original Promissory Note and other loan documents, Lender will be entitled to recover any and all associated costs and attorney's fees incurred in conjunction therewith in addition to the default fees.

If not cured in a timely manner, Lender may record a notice of default against the collateral properties.


Sincerely,

Ty Corbridge
Okoa Capital, LLC

# Exhibit 5

# MOYES SELLERS & HENDRICKS

**JEFFREY L. SELLERS**

1850 N. Central Avenue, Suite 1100 • Phoenix, AZ 85004

📞 (602) 604-2109          ✉ jlsellers@law-msh.com

April 7, 2023

**<u>VIA CERTIFIED AND FIRST-CLASS MAIL</u>**

Diamond Elite Park LLC
Attn: Yehoishiah Rubin
1771 North Agave Street
Casa Grande, Arizona 85122

> **Re:  9630 North 25th Avenue, Phoenix, Arizona 85021; Parcel No: 149-12-004V ("Property")**

Mr. Rubin:

We represent and act as agent for the purposes of this Notice for OKOA Capital LLC concerning the above-referenced Property, which Property is encumbered by a Deed of Trust referenced in the enclosed Notice of Trustee's Sale.

Pursuant to Arizona Revised Statute § 33-809(C), this letter is formal notice to you that Diamond Elite Park LLC, as the maker of the Promissory Note, secured by the Deed of Trust, is in breach of the terms of the Promissory Note in the original principal amount of $6,790,000; the final payment of such Note was due January 6, 2023, and is unpaid. A previous notice of default was provided to you by the lender. As such, OKOA Capital LLC, as beneficiary under the Deed of Trust, has elected to have the Property secured by the Deed of Trust sold.

The enclosed Notice of Trustee's Sale was recorded on April 6, 2023 with the Maricopa County Recorder's Office setting July 10, 2023 as the date of the Trustee's Sale concerning the Property.

Sincerely,

MOYES SELLERS & HENDRICKS

*/s/ Jeffrey L. Sellers*

Jeffrey L. Sellers

JLS/jsl

Enclosure

cc:  Yehoishiah Rubin, Guarantor (by First Class Mail *only*)

00331576

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
STEPHEN RICHER
20230175335    04/06/2023    08:54
ELECTRONIC RECORDING

6940352-4-1-1--
amine

When recorded, return to:

Moyes Sellers & Hendricks, Ltd.
Attn: Jeffrey L. Sellers, Esq.
1850 N. Central Ave., #1100
Phoenix, AZ 85004

---

## NOTICE OF TRUSTEE'S SALE

**NOTICE! IF YOU BELIEVE THERE IS A DEFENSE TO THE TRUSTEE'S SALE OR IF YOU HAVE AN OBJECTION TO THE TRUSTEE'S SALE, YOU MUST FILE AN ACTION AND OBTAIN A COURT ORDER PURSUANT TO RULE 65, ARIZONA RULES OF CIVIL PROCEDURE, STOPPING THE SALE NO LATER THAN 5:00 P.M. MOUNTAIN STANDARD TIME OF THE LAST BUSINESS DAY BEFORE THE SCHEDULED DATE OF THE SALE, OR YOU MAY HAVE WAIVED ANY DEFENSES OR OBJECTIONS TO THE SALE. UNLESS YOU OBTAIN AN ORDER, THE SALE WILL BE FINAL AND WILL OCCUR:**

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust, recorded on January 12, 2022, at Recording No. 2022-0037333 of the Official Records of Maricopa County, Arizona, Arizona, at public auction to the highest bidder.

| | |
|---|---|
| Sale Date and Time: | July 10, 2023, at 10:00 a.m. |
| Sale Location: | Main Entrance to the Superior Court Building at the Maricopa County Courthouse<br>201 W. Jefferson St.<br>Phoenix, AZ 85003 |
| Legal Description: | *See* Exhibit "A" attached hereto and incorporated herein by reference. |
| Street Location of Property: | **9630 N. 25th Ave., Phoenix, AZ 85021** |
| Tax Parcel Numbers: | 149-12-004V |
| Original Principal Balance: | $6,790,000.00 |
| Name and Address of Beneficiary: | OKOA Capital LLC, a Utah limited liability company<br>2290 E. 4500 S., #260<br>Holladay, UT 84117 |

00331276                              Page 1 of 4

Name and Address of Original Trustor:    Diamond Elite Park LLC
1717 N. Agave St.
Casa Grande, AZ 85122

Name and Address of Successor Trustee:    Jeffrey L. Sellers, Esq.
Moyes Sellers & Hendricks, Ltd.
1850 N. Central Ave., #1100
Phoenix, AZ 85004
Ph: (602) 604-2141

Dated this 5 day of April, 2023.

_____
Jeffrey L. Sellers, Attorney at Law
Trustee/Successor Trustee is qualified per A.R.S.
§ 39-803(A)(2), as a Member of the State Bar of
Arizona

STATE OF ARIZONA          )
                          ) ss.
County of Maricopa        )

On April 5, 2023, before me, the undersigned, a Notary Public in and for said County
and State, personally appeared Jeffrey L. Sellers, as Trustee/Successor Trustee, personally
known to me and whose name is subscribed to this Notice of Trustee's Sale and acknowledged to
me that he executed the same.

_____
Notary Public

My Commission Expires:

10-31-26
_____

Official Seal:

Aubrey Greer
Notary Public
Maricopa County, Arizona
My Comm. Expires 10-31-26
Commission No. 639191

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF MARICOPA, STATE OF ARIZONA, AND IS DESCRIBED AS FOLLOWS:

PARCEL NO. 1:

That portion of the West half of Section 25, Township 3 North, Range 2, East of the Gila and Salt River Base and Meridian, Maricopa County, Arizona, described as follows:

Commencing at the Southwest corner of the Northwest quarter of Section 25;

Thence North 89 degrees 40 minutes 56 seconds East along the South line of the Northwest quarter 540.15 feet;

Thence South 00 degrees 19 minutes 37 seconds West 33.00 feet to the point of beginning, said point being the South right-of-way line of Mountain View Road;

Thence North 89 degrees 40 minutes 56 seconds East 391.63 feet to a point of curve, concave Northwest having a radius of 333.03 feet;

Thence Northeast along the arc of said curve, through a central angle of 36 degrees 22 minutes 55 seconds, an arc length of 211.47 feet;

Thence North 53 degrees 18 minutes 01 seconds East 8.74 feet;

Thence South 81 degrees 41 minutes 59 seconds East 14.14 feet to a point on the West right-of-way line of 25th Avenue;

Thence South 36 degrees 41 minutes 59 seconds East 277.34 feet to a point of curve, concave Southwest having a radius of 267.02 feet;

Thence Southeast along the arc of said curve, through a central angle of 34 degrees 45 minutes 23 seconds, arc length of 161.98 feet;

Thence North 88 degrees 57 minutes 55 seconds West 561.87 feet;

Thence South 00 degrees 19 minutes 37 seconds West 181.42 feet;

Thence South 89 degrees 55 minutes 08 seconds West 268.20 feet;

Thence North 00 degrees 19 minutes 37 seconds East 473.18 feet to the Point of Beginning;

(Continued)

EXCEPT that part taken by Order of Immediate Possession No CV2020-015690, recorded in Document No. 20210028645, described as follows:

Commencing at the center of said Section 25, a brass cap in hand hole at the intersection of 23rd Avenue and Mountain View Road;

Thence South 89 degrees 40 minutes 56 seconds West, along the East-West Mid-Section line of said Section 25, a distance of 1,467.50 feet to a point on the West right of way line of 25th Avenue;

Thence departing said Mid-Section line and along said West right of way line, South 36 degrees 38 minutes 36 seconds East, a distance of 133.21 feet to the Point of Beginning;

Thence continuing along said West right of way line, South 36 degrees 38 minutes 36 seconds East, a distance of 59.76 feet;

Thence departing said West right of way line, North 87 degrees 59 minutes 00 seconds West, a distance of 3.31 feet;

Thence North 36 degrees 38 minutes 36 seconds West, a distance of 55.63 feet;

Thence North 14 degrees 41 minutes 49 seconds East, a distance of 3.31 feet to a point on said West right of way line and the Point of Beginning.

PARCEL NO. 2:

Beneficial signage easement as set forth in the Declaration of Signage Easement recorded March 26, 2003 in Document No. 20030367048, records of Maricopa County, Arizona.

# Exhibit 6

Unofficial
Document

Digitally signed by Bettina Gamez on behalf
of the City of Phoenix

**City of Phoenix**

Neighborhood Services Department
Neighborhood Preservation Division
200 W. Washington, 4th Fl., Phoenix, AZ 85003-1611
(602) 534-4444 - TTY Number (602) 495-0685

DIAMOND ELITE PARK LLC
913 E 8TH ST

CASA GRANDE AZ 851223502

## NOTICE OF ORDINANCE VIOLATION

| | | | |
|---|---|---|---|
| **Property Address:** | 9630 N 25TH AVE | **APN:** | 149-12-004V |
| **Legal Description:** | Deed #: 22-0037332 | **QS:** | Q27-23 |

BE

**Date of Notice:** 06/12/2023          **Date of Violation:** 06/09/2023          **Case Number:** PEF2023-13817

**Correct all violations listed on the enclosed page(s) by:** 07/17/2023

This letter serves as a legal notice of violation (s) of the City of codes listed below and/or on the attached page(s).

The Responsible Party has the right to appeal a Notice of Violation of the Neighborhood Preservation Ordinance (NPO), Chapter 39, to the Neighborhood Services Department. The appeal and application fee must be received by our office, Neighborhood Services Department, attention Abatement Supervisor, 200 W. Washington Street, 4th Floor, Phoenix, AZ 85003-1611, no later than 5:00 p.m. on the Compliance Date listed on this Notice of Ordinance Violation. Please contact Neighborhood Preservation at (602) 534-4444, option 1, for more information.

A Responsible Party, as defined in the NPO, is an occupant, lessor, lessee, manager, licensee, or person having control over a structure or parcel of land; and in the case where the demolition of a structure is proposed as a means of abatement, any lien holder whose lien interest is recorded in the official records of the Maricopa County Recorder's Office.

**The Responsible Party is legally obligated to correct all violations listed below. If the Responsible Party fa to resolve the cited violations by the Compliance Date, the City will proceed without further notice and wil abate (correct or eliminate) the violations pursuant to Phoenix City Code Chapter 39. The City will abate a cited violations and record a lien/assessment against the property for all related costs incurred. A lien/assessment will be superior to all other liens, obligations, mortgages, and other encumbrances excep liens for general taxes. These abatement measures may include lot cleaning, board up, and/or demolition certain structures and/or clean up of the demolished structures and other items on the property.**

An owner-occupied property, where the property owner is financially unable to bring the property into compliance, may be eligible for specific programs that could assist them. This includes repairs to residential property such as paint and roof.For further information about these programs and other resources, please contact the Neighborhood Revitalization Division at (602) 534-4444, option 3. The property must be owner occupied to apply.

**If the City abates the violations, THE ESTIMATED COST FOR THE CITY OF PHOENIX TO ABATE THE VIOLATION(S) IS: 18,000.00.**

**COMPLIANCE DATE FOR THIS NOTICE is:** 07/17/2023

Si prefiere esta informacion en espanol, llame por telefono a nuestra oficina al (602) 534-4444, opción 1.

**Violation Code:** 39-7A TRASH/LITTER
THERE IS AN ACCUMULATION OF TRASH AND DEBRIS THROUGHOUT PROPERTY.
PROPERTY MUST BE MAINTAINED FREE OF ACCUMULATED GARBAGE, DEBRIS, AND
RUBBLE, WASTE, LITTER, AND SCRAP MATERIAL.  IF YOU HAVE ANY QUESTIONS, PLEASE
CONTACT INSPECTOR GINA KOWALSKI @ 602-534-3629
Description:
Maintaining an accumulation of garbage, debris, rubble, hazardous waste, or blight, which includes but is not limited to: bottles
papers, glass, cans, organic or inorganic material, an accumulation of inoperable vehicles, discarded, broken or inoperable
appliances or equipment, discarded or broken furniture or bicycles, an accumulation of vehicle, bike or appliance parts, broken
glass, mixed materials, dry vegetation, rags, empty barrels, boxes, crates, mattresses, bedding, lumber, scrap iron, tin or other
metal.

Corrective Action:
Remove from property and dispose of properly.


**Violation Code:** 39-7B ROW
THERE ARE GRASS/WEEDS OVER 6 INCHES AND TRASH/DEBRIS ALONG THE ADJACENT
RIGHT-OF-WAYS. ALL STREETS, ALLEYS AND SIDEWALKS ADJACENT TO THE PROPERTY
MUST BE MAINTAINED FREE OF OVER HEIGHT OR DRY VEGETATION AND ANY
ACCUMULATION OF TRASH OR DEBRIS. IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT
INSPECTOR GINA KOWALSKI @ 602-534-3629
Description:
The owner and any responsible party in control of any land abutting a sidewalk, alley or street shall maintain the sidewalk, alley or
street free from trash, litter, weeds and obstructions.

Corrective Action:
Remove trash, litter, debris and any obstructions from the adjacent right of way.


**Violation Code:** 39-7D VEGETATION
THERE ARE GRASS/WEEDS OVER 6 INCHES AND/OR Dunofficial document TATION INCLUDING TREES
ON THIS PROPERTY.  GRASS/WEEDS MUST BE MAINTAINED BELOW 6 INCHES AND ANY
DEAD VEGETATION (INCLUDING TREES) MUST BE REMOVED. IF YOU HAVE ANY QUESTION
PLEASE CONTACT INSPECTOR GINA KOWALSKI @ 602-534-3629
Description:
Maintaining an exterior condition on the property which may include, but is not limited to the following: tumbleweeds, weeds in
excess of 6", lawn grass in excess of 6", dead trees and branches, palm fronds within 10 feet of the ground, potential fire hazards
and dry vegetation.

Corrective Action:
Remove from the property and dispose of properly.


**Violation Code:** 39-8B5 NUISANCE
THIS IS A SECUREMENT NOTICE.  THERE ARE VACANT AND UNSECURED STRUCTURES
WITH OPEN, BROKEN, OR MISSING WINDOWS AND/OR DOORS.  ALL OPENINGS ON ALL
VACANT STRUCTURES (INCLUDING STORAGE STRUCTURES) MUST BE INTACT AND
LOCKED OR SECURED IN ACCORDANCE WITH THE ATTACHED CITY OF PHOENIX BOARD
UP/SECUREMENT SPECIFICATIONS. WOOD USED TO SECURE OPENINGS MUST BE
PAINTED.  IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT INSPECTION GINA KOWALSKI
602-534-3629

Description:
All buildings, structures and excavations are to be maintained so as not to pose a hazard. The maintenance of a building, structure or excavation that meets any of the following is a nuisance and constitutes a violation of this ordinance, and subjects the building, structure or excavation to demolition or other abatement measures upon expiration of required notice: The building or structure has been vacant and unsecured for more than forty-eight hours on more than one occasion during a twelve-month period.

Corrective Action:
Secure all open building(s) structures(s) including accessory structures such as storage sheds and garages. All building(s)/structures(s) must be kept secure so they cannot be opened from the outside. Unoccupied structures may be secured with locked doors and windows or temporarily boarded per the City of Phoenix Board Up Specifications, but may only be boarded for 90 days (per section 39-6A7). Buildings requiring securement longer than 90 days must utilize the City of Phoenix Alternate Long Term Securement Specifications that require the use of Polycarbonate material in lieu of wood. To obtain a copy of the City of Phoenix Board Up and/or Alternate Long Term Specifications please call (602) 534-4444. If the corrective action includes demolition or rehabilitation work, the Responsible Party must obtain the proper permits from Development Services Department and Maricopa County prior to commencing the demolition or rehabilitation.

Repair suitable for occupancy or demolish. If the remedy includes demolition or rehabilitation, the Responsible Party must obtain the proper permits from Development Services Department and Maricopa County prior to commencing demolition or rehabilitation. If the property is located in a Historic District, please contact the City of Phoenix Historic Preservation Office at (602) 261-8699. If the remedy includes demolition, the Responsible Party must contact the City of Phoenix's City Archaeology Office at (602) 495-0901, prior to initiating any ground-disturbing demolition activities, to ensure compliance with Arizona State Laws regarding protection of archaeological resources on private land. The Responsible Party has the right to appeal the Notice of Ordinance Violation. The appeal and application fee must be received by our office no later than 5:00 p.m. on the Compliance Date listed on this Notice. Please contact Neighborhood Preservation at (602) 534-4444 for an appeal application.

Unofficial Document

**COMMON BLIGHT**
**VIOLATION INFORMATION**

In response to the initial complaint, the inspector will look for these eight blighting conditions on the property, and on other properties in the immediate area.

**Vegetation:**  Property owners are responsible for keeping their properties, and the adjacent rights-of-way, free of dead or dried vegetation (weeds, tall grass, tumbleweeds, shrubs, trees, palm fronds, etc).  All dead or dried vegetation must be removed and disposed of properly.  Property owners also are responsible for assuring that grass and weeds on their property and in the adjacent rights of way do not exceed six inches in height.

**Inoperable Vehicles:**  Inoperable vehicles must not be visible from beyond the bounds of the property.  An inoperable vehicle is one that is not equipped with all parts that are required to legally and safely operate on public streets and/or cannot be driven under its own power.  Car covers, tarps, bamboo, shades and other similar types of materials are not acceptable screening.

**Junk, litter and debris:**  Property owners are responsible for keeping their property free of junk, litter, and debris. This includes tires, furniture, discarded paper, cardboard, plastics, building and landscaping material, as well as any other discarded items.

**Vacant and accessible structures:**  Property owners are responsible for assuring all vacant buildings and structures (including primary structures, garages, storage structures, accessory buildings, sheds, etc.) are secured so that windows, doors or other openings cannot be accessed from the outside.  A property owner may be required to board up a building/structure to city specifications if it becomes vacant and is not secure.  Boarding up a building/structure is a one time, temporary securement option, for a period not to exceed 180 days. Rehabilitation or demolition of a structure may be required under certain conditions.

**Outside storage:**  Outside storage of personal property at residentially-zoned properties is limited to the rear yard behind the primary structure only.  Any building or landscaping materials for use on the property, machinery, appliances or parts/auto parts may not be visible from beyond the boundaries of a residentially-zoned property.  Outdoor storage of items for commercial or business use at a residential property is not allowed.  There are specific regulations that apply to outdoor storage and use on properties zoned for other than residential use that vary by zoning district.

Unofficial Document

**Fences in disrepair:**  Fencing and screening walls must be structurally sound and made from the same materials. They also must be maintained so that they are free from deterioration and blight.

**Non-dustproof parking:**  All parking and maneuvering areas must be dust proofed according to city specifications. Specific standards vary by zoning district.

**Graffiti:**  Graffiti must be removed from all sidewalks, walls, fences, signs and other structures or surfaces visible from beyond the bounds of the property.  This is the responsibility of the property owner.  Free paint and graffiti removal supplies are available from the city.  Assistance is available for those unable to physically remove graffiti themselves.
**Remember, graffiti is a crime. Call 911 if you witness graffiti in progress.**

*Recidivists (repeat offenders) may receive only one official Notice of Violation.*
*Future violations may result in legal action without issuance of a formal Notice.*

For more information, resources, or assistance call 602-534-4444, Option 1 or email
blight@phoenix.gov or use the free smartphone app "myPHXAZ"

**Si tiene preguntas o necesita más información, comuníquese a nuestra oficina al 602-534-4444, opción 1.**



# City of Phoenix
## BOARD UP/SECUREMENT SPECIFICATIONS

All unoccupied structures within the City of Phoenix must be secured to the following specifications. Structures which will be secured for 90 days or less may use either Option A or B. Structures secured for more than 90 days must be secured in accordance with Option B for openings visible from the street (Phoenix City Code 39-6A7).

### Option A- Short Term (Less Than 90 Days) Securement Specifications

### Carriage Bolt Method:

**General Application All** Plywood should be a minimum of ¾" exterior glue, construction grade, (NO OSB) Plywood should be painted with a good quality exterior paint that matches the exterior. Openings that require more than a 4' X 8' sheet shall be secured with 2 sheets spliced together as shown in Diagram B. Plywood must overlap 4" on all four sides unless there is a protruding sill at the bottom, then the bottom edge of the Plywood should sit on that sill Secure with 3/8 carriage bolts with washers and double nuts on the interior. (Purpose of the double nut is to secure against one another). On the exterior, use washers ¼ "larger than the bolt size. Install carriage bolts as close to the corners as possible. Openings that are 3'X3' or less may be secured with one 2" X 4" board and two carriage bolts. Avoid tightening to tight to prevent crushing the interior wall surface.

**Casement Style windows** (windows that swing out from the side of the frames) must have the whole opening covered. Covering one or two panes will not be accepted. If only one pane is broken the BOARDING WITH SCREWS method can be used to cover the entire opening.

**Sliding windows** should be opened as far as possible to permit the carriage bolts to pass through the window opening. The sliding sash may often be lifted out of the track and stored inside the building.

**Fixed glass windows** require reverting to the Boarding with Screws method below.

**Doors:** If the door(s) are functional and lock that is sufficient, however if the door is missing or the locking mechanism does not work, a temporary plywood door with an accessible entrance with lock and key will be required. It may be necessary to install a temporary 2"x4" frame to attach to the plywood door. All other non-functioning doors should be boarded the same as the window openings

**Refer to Diagrams A, B & C**

### Boarding with Screws:

*   Insert ¾" plywood into the exterior of the window opening for a close fit and secure with a minimum 1 ½" drywall, deck or sheet metal screws.
*   Cut plywood so it completely inserts into the window opening (including any radius arch at the top of the window opening) and set the screws every 8" to 10".
*    Screws are to be set into the wooden window frame or wood lintel and/or only, **not** into brick masonry, concrete or adobe. Screwing into mortar joints would be acceptable if there is no wooden material available.

## Doorways/Other Openings:

* Doorway openings should be boarded to the same requirements as window openings one entry doorway should be an accessible entrance with lock and key.

* Security Door may be necessary if there are no doors that can be locked. This is shown in Diagram C. Use 6" extra heavy hinges and fasten to the jamb with 1 ½ screws. Place strap of hinge on the exterior and secure with carriage bolts by placing the nuts on the interior side. Use a 8" X 12" flat strap fastened to the door stop and jamb with 3 inch lag bolts. If the door jamb is loose and has a removable stop, remove the stop and nail the jamb with 1 6 cut nails that are located so that a new stop will cover the nails. If more support is needed, attach a 4' length of 2" X 4" in place of door jamb. Cut a slot in the plywood just large enough for the Tee Strap leg, reinforce both outer edges of the slot with flat straps (Minimum size 1" X 8"), and fasten with carriage bolts.

* Other openings that permit entrance into or under the building must also be boarded. This may include, but is not limited to crawl space access, large vents, basement and cellars doors and windows, Arcadia door, Gable ends, side mount air conditioning openings and Doggie doors. Most of these can be secure by covering with Plywood and applying screws every 8" to 10" inches.

**No trespassing signs should also be posted and an authority to arrest form should be on file with the City of Phoenix Police Department**

## General Considerations:

* All first and second story windows must be boarded. Windows above two stories should ALSO be boarded if these openings/windows are not weather tight.

* If boards cannot be inserted into the window openings because of security bars, carefully remove the bars and board the openings as indicated above. Then security bars should be stored inside the building.

* **Use caution when installing plywood into the window openings.** It should fill the entire opening, and should be secured snugly (but not overly tight) against the building, but the bolts should not be overly tight because this can actually damage building exteriors/frame building.

* Evaluate whether any patching of the roof is needed at same time so that building is entirely weather tight and vandal-free. <small>Unofficial Document</small>

* Once completed, schedule an inspection by the Neighborhood Preservation Inspector so that the work can be inspected and the violations signed off on.

## City of Phoenix

## Option B- Long Term (More Than 90 Days) Securement Specifications Utilizing Polycarbonate Material

**\*1Carriage Bolt Method:**

**General Application** All Polycarbonate material shall be a minimum thickness of .220.  Openings that require more than a 4' X 8' sheet shall be secured with 2 sheets spliced together as shown in Diagram B. Polycarbonate should be cut to the outer edge of the window frame.  Self tapping screws with security heads may be required if bowing occurs. If the window is inset the Polycarbonate should be inset as well to the outer edge of the window frame.  Secure with 3/8 carriage bolts with washers and double nuts and washers on the interior. (Purpose of the double nut is to secure against one another). Install carriage bolts as close to the corners as possible.

**Casement Style windows** (windows that swing out from the side of the frames) must have the entire opening covered.  Covering individual panes will not be accepted.  If only one pane is broken the SECURE WITH SCREWS method can be used to cover the entire opening.  Material will need to be notched at the corners to accommodate the hinges.

**Sliding windows** should be opened as far as possible to permit the carriage bolts to pass through the window opening. The sliding sash may often be lifted out of the track and stored inside the building.

**Fixed glass windows** require reverting to the Securing with Screws method below.

**Glass Patio Doors:**  If the doors are functional and can be locked that is sufficient however if the door is missing glass or the glass is broken then the Carriage Bolt Method General Application applies.

Unofficial Document

## Secure with Screws:

\*   Insert minimum .220 thickness Polycarbonate into the exterior of the window opening for a close fit and secure with a minimum 1 ½" drywall, deck or sheet metal screws secure top.

\*   Cut the Polycarbonate to completely insert into the window opening to the outer edge of the window frame (including any radius arch at the top of the window opening) and set the screws every 8" to 10".

\*   Screws are to be set into the wood window frame or wood lintel only, **not** into brick masonry, concrete or adobe.  Screwing into mortar joints will be acceptable if there is no wood material available or if authorized by the City of Phoenix under unique circumstances.

\*   If covers cannot be inserted into the window openings because of security bars, carefully remove the bars and secure the openings as indicated above.  Security bars should be placed inside the building.

# Exhibit 7

**From:** Jeff Sellers jlsellers@law-msh.com 📎
**Subject:** RE: 25th Ave.
**Date:** June 30, 2023 at 3:24 PM
**To:** Elliott Engel ee@bbelaw.com
**Cc:** Cody Jess cjess@law-msh.com, Shia Rubin shia@diamondequity.net, Brian M. Boyle bmb@bbelaw.com, Natalya Ter-Grigoryan
ntg@law-msh.com, Shlome Masri shlomemasri@icloud.com

Mr. Engel, as of a couple of days ago the property is still not secure, and people are walking in and out. Two side steel doors are wide open. Locks are all broken. The property needs to be cleaned out and boarded up. Note also that my client has made attempts to verify that the insurance coverage is still in effect and cannot get a response from the insurance agent or company.

My clients are not willing to extend the trustee's sale without the borrower bringing interest current and making a material reduction in the principal balance. So, your offer of paying 90 days of interest for a 90 day extension is not acceptable.



**Jeffrey L. Sellers**
**Shareholder**

**1850 N. Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**Office (602) 604-2109**
**www.law-msh.com**

---

**From:** Elliott Engel <ee@bbelaw.com>
**Sent:** Tuesday, June 27, 2023 2:06 PM
**To:** Jeff Sellers <jlsellers@law-msh.com>
**Cc:** Cody Jess <cjess@law-msh.com>; Shia Rubin <shia@diamondequity.net>; Brian M. Boyle <bmb@bbelaw.com>; Natalya Ter-Grigoryan <ntg@law-msh.com>; Shlome Masri <shlomemasri@icloud.com>
**Subject:** RE: 25th Ave.

Jeff,

Per your request, please see attached. Please advise about the extension.

Thank you,

Elliott

**Elliott Engel, Esq.**
*Partner*
**P:** 667-217-5150 | **E:** ee@bbelaw.com
**MD:** 1777 Reisterstown Road, Suite 265 | Baltimore, MD 21208

**NY:** 978 Route 45, Suite 107 | Pomona, New York 10970
bbelaw.com



---

**From:** Jeff Sellers <jlsellers@law-msh.com>
**Sent:** Monday, June 26, 2023 5:09 PM
**To:** Elliott Engel <ee@bbelaw.com>
**Cc:** Cody Jess <cjess@law-msh.com>; Shia Rubin <shia@diamondequity.net>; Brian M. Boyle <bmb@bbelaw.com>; Natalya Ter-Grigoryan <ntg@law-msh.com>; Shlome Masri <shlomemasri@icloud.com>
**Subject:** RE: 25th Ave.

Before we can consider an extension we need to confirm that the property is insured and that OKOA is named as an additional insured.  Please provide that evidence.



**Jeffrey L. Sellers**
**Shareholder**

**1850 N. Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**Office  (602) 604-2109**
**www.law-msh.com**

---

**From:** Elliott Engel <ee@bbelaw.com>
**Sent:** Sunday, June 25, 2023 6:13 PM
**To:** Jeff Sellers <jlsellers@law-msh.com>
**Cc:** Cody Jess <cjess@law-msh.com>; Shia Rubin <shia@diamondequity.net>; Brian M. Boyle <bmb@bbelaw.com>; Natalya Ter-Grigoryan <ntg@law-msh.com>; Shlome Masri <shlomemasri@icloud.com>
**Subject:** RE: 25th Ave.

Jeff:

Borrower is seeking a 3-month extension in an effort to sell the property and pay up the debt. Borrower received several LOIs and believes that it's in everyone's best interest to allow it to close on the sale and turn over the proceeds to Lender.

In return, Borrower will pay 3 months' interest upfront at the time of extension.  This is all the Borrower and its principals can afford to pay for an extension in an effort to get the property sold -- for everyone's benefit.

Please advise.

Please advise.

Thank you,

Elliott

**Elliott Engel, Esq.**
*Partner*
**P:** 667-217-5150 | **E:** ee@bbelaw.com
**MD:** 1777 Reisterstown Road, Suite 265 | Baltimore, MD 21208
**NY:** 978 Route 45, Suite 107 | Pomona, New York 10970
bbelaw.com

**From:** Jeff Sellers <jlsellers@law-msh.com>
**Sent:** Tuesday, June 20, 2023 8:48 PM
**To:** Elliott Engel <ee@bbelaw.com>
**Cc:** Cody Jess <cjess@law-msh.com>; Shia Rubin <shia@diamondequity.net>; Brian M. Boyle
<bmb@bbelaw.com>; Natalya Ter-Grigoryan <ntg@law-msh.com>; Shlome Masri
<shlomemasri@icloud.com>
**Subject:** Re: 25th Ave.

Is your client able to bring interest current and pay down principal by 10%?

Sent from my iPad

> On Jun 20, 2023, at 4:53 PM, Elliott Engel <ee@bbelaw.com> wrote:
>
>
> Jeff:
>
> We are working diligently to refinance this loan.    Would Lender consider granting
> Borrower an extension?
>
> Thank you,
>
> Elliott
>
> **Elliott Engel, Esq.**
> *Partner*
> **P:** 667-217-5150 | **E:** ee@bbelaw.com
> **MD:** 1777 Reisterstown Road, Suite 265 | Baltimore, MD 21208
> **NY:** 978 Route 45, Suite 107 | Pomona, New York 10970
> bbelaw.com
> <image001.png>

**From:** Jeff Sellers <jlsellers@law-msh.com>
**Sent:** Tuesday, June 20, 2023 5:21 PM
**To:** Elliott Engel <ee@bbelaw.com>
**Cc:** Cody Jess <cjess@law-msh.com>; Shia Rubin <shia@diamondequity.net>; Brian
M. Boyle <bmb@bbelaw.com>; Natalya Ter-Grigoryan <ntg@law-msh.com>; Shlome
Masri <shlomemasri@icloud.com>
**Subject:** Re: 25th Ave.

We are not aware of anything because the borrower refuses to respond to
information requests. Thanks for the update.  What are your plans to address the
July 10 trustee's sale?

Sent from my iPhone


On Jun 20, 2023, at 2:14 PM, Elliott Engel <ee@bbelaw.com> wrote:


Jeff,

Please be advised that we secured and bordered the property and
have coordinated the issue with police, who are regularly patrolling
and arresting trespassers.   We will address the landscaping issue
raised in the email below.

As you're well aware, the Borrower's plans are to only keep the shell of
this building so, as a practical matter, there is nothing that the vagrants
are doing that is interfering with those plans, but we have coordinated
with the police to ensure that the area is patrolled regularly.

Thank you,

Elliott

**Elliott Engel, Esq.**
*Partner*
**P:** 667-217-5150 | **E:** ee@bbelaw.com
**MD:** 1777 Reisterstown Road, Suite 265 | Baltimore, MD 21208
**NY:** 978 Route 45, Suite 107 | Pomona, New York 10970
bbelaw.com
<image002.png>

**From:** Jeff Sellers <jlsellers@law-msh.com>
**Sent:** Thursday, June 15, 2023 2:33 PM
**To:** Elliott Engel <ee@bbelaw.com>; Cody Jess <cjess@law-msh.com>
**Cc:** Chaim C Zlotowitz, Esq. <chaim@zlotowitzlaw.com>; Shia Rubin
<shia@diamondequity.net>; Brian M. Boyle <bmb@bbelaw.com>;

~~shla@diamondequity.net~~>; Brian M. Boyle <~~bmb@bbelaw.com~~>;
Shlome Masri <shlomemasri@icloud.com>; Natalya Ter-Grigoryan
<ntg@law-msh.com>; David Goldstein <dbg@hgplaw.com>
**Subject:** 25th Ave.

Elliot, your response is laughable.  Here is the report we have from our
client based on an inspection of this abandoned property today:

I am writing to provide you with alarming information regarding the
25th Avenue property, which demands immediate attention to address
security breaches and neglect.  Here are the concerning details:

1. Contrary to Borrower attorney's representations, the property is
   NOT secured.  Bottom floor windows are broken, and the doors
   are unlocked.
2. Our representative entered the premises and detected a distinct
   smell of smoke, from fires happening in the building.  The
   property owner has removed the doors and piled them together,
   creating a significant security vulnerability.
3. The intruders have gained access to every room, causing
   damage and removing the wiring throughout the building.   They
   have had their way for months and months.  HVAC and electrical
   have probably all been destroyed.
4. Several individuals were residing in the bottom floor and were
   kicked out.   Our guy could hear people upstairs but did not dare
   go up there.
5. It is crucial to take immediate action to rectify the situation. I
   recommend changing the locks, replacing the broken window,
   and engaging a courtesy patrol to prevent further unauthorized
   entry.
6. The power utility, APS, indicates that the power is still active at
   the property but no lights are on anywhere.
7. The neglected landscaping and overgrown weeds are attracting
   unwanted attention from homeless individuals, making the
   property an easy target for further damage or occupation.
8. I will promptly send you the visual documentation of the
   property's current condition to provide a visual understanding of
   the issues at hand.

<image003.png>

**Jeffrey L. Sellers**
**Shareholder**

**1850 N. Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**Office (602) 604-2100**

Office (***) ***-****

**www.law-msh.com**

---

**From:** Elliott Engel <ee@bbelaw.com>
**Sent:** Tuesday, June 13, 2023 12:30 PM
**To:** Cody Jess <cjess@law-msh.com>; Jeff Sellers <jlsellers@law-msh.com>
**Cc:** Chaim C Zlotowitz, Esq. <chaim@zlotowitzlaw.com>; Shia Rubin <shia@diamondequity.net>; Brian M. Boyle <bmb@bbelaw.com>; Shlome Masri <shlomemasri@icloud.com>; Natalya Ter-Grigoryan <ntg@law-msh.com>
**Subject:** RE: Property Closing
**Importance:** High

Cody:

The property has not been abandoned and there is no basis to Lender's allegations.   We are working diligently to refinance the loan and are taking care of this property.

We reserve all rights and claims.

Thank you,

Elliott

**Elliott Engel, Esq.**
*Partner*
**P:** 667-217-5150 | **E:** ee@bbelaw.com
**MD:** 1777 Reisterstown Road, Suite 265 | Baltimore, MD 21208
**NY:** 978 Route 45, Suite 107 | Pomona, New York 10970
bbelaw.com
<image002.png>

---

**From:** Cody Jess <cjess@law-msh.com>
**Sent:** Monday, June 12, 2023 7:06 PM
**To:** Jeff Sellers <jlsellers@law-msh.com>; Christopher Simpson <csimpson@omlaw.com>
**Cc:** Chaim C Zlotowitz, Esq. <chaim@zlotowitzlaw.com>; Shia Rubin <shia@diamondequity.net>; Elliott Engel <ee@bbelaw.com>; Brian M. Boyle <bmb@bbelaw.com>; Shlome Masri <shlomemasri@icloud.com>; Natalya Ter-Grigoryan <ntg@law-msh.com>
**Subject:** RE: Property Closing
**Importance:** High

Chris,

If you have any objections to OKOA Capital taking possession to secure the property, we need to hear from you <u>by 5 pm June 13, 2023</u>.

Best,

<image003.png>

**Cody James Jess**
**Shareholder**

**1850 North Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**Office  (602) 604-2194**
**www.law-msh.com**

---

**From:** Jeff Sellers <jlsellers@law-msh.com>
**Sent:** Monday, June 12, 2023 4:01 PM
**To:** Christopher Simpson <csimpson@omlaw.com>
**Cc:** Chaim C Zlotowitz, Esq. <chaim@zlotowitzlaw.com>; Shia Rubin <shia@diamondequity.net>; Elliott Engel <ee@bbelaw.com>; Brian M. Boyle <bmb@bbelaw.com>; Shlome Masri <shlomemasri@icloud.com>; Cody Jess <cjess@law-msh.com>; Natalya Ter-Grigoryan <ntg@law-msh.com>
**Subject:** RE: Property Closing

Please note that OKOA Capital will be taking possession of the property at 9630 North 25th Avenue, Phoenix, AZ which has been abandoned by the owner/borrower.  We will secure the vacant property against further damage from the elements and intrusions by trespassers.  If you have objections, you should let us know.  We have been attempting to contact you for months concerning these issues to no avail.

<image003.png>

**Jeffrey L. Sellers**
**Shareholder**

**1850 N. Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**Office  (602) 604-2109**
**www.law-msh.com**

---

**From:** Christopher Simpson <csimpson@omlaw.com>
**Sent:** Monday, June 12, 2023 1:37 PM
**To:** Jeff Sellers <jlsellers@law-msh.com>
**Cc:** Chaim C Zlotowitz, Esq. <chaim@zlotowitzlaw.com>; Shia Rubin

<shia@diamondequity.net>; Elliott Engel <ee@bbelaw.com>; Brian M.
Boyle <bmb@bbelaw.com>; Shlome Masri
<shlomemasri@icloud.com>
**Subject:** Property Closing

Buyer's counsel is indicating they still intend to close on June 15th.

**Christopher C. Simpson**
602-640-9349 (direct)

---

**OSBORN**
**MALEDON**

2929 N. Central Ave, Ste. 2000
Phoenix, AZ 85012
**omlaw.com**

# Exhibit 8

**From:** Jeff Sellers jlsellers@law-msh.com 📎
**Subject:** FW: OKOA Capital foreclosure Diamond Elite
**Date:** June 13, 2023 at 3:19 PM
**To:** Ty Corbridge ty@okoacapital.com, Jason Meyer jason@okoacapital.com
**Cc:** Cody Jess cjess@law-msh.com, Natalya Ter-Grigoryan ntg@law-msh.com



**Jeffrey L. Sellers**
**Shareholder**

**1850 N. Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**Office  (602) 604-2109**
**www.law-msh.com**

**From:** DeVon Veater <dveater@brentwoodlg.com>
**Sent:** Tuesday, June 13, 2023 2:08 PM
**To:** Jeff Sellers <jlsellers@law-msh.com>
**Subject:** RE: OKOA Capital foreclosure Diamond Elite

Yes, insurance paid Diamond Elite and they didn't pay my client.  My client performed the work.  Completely stiffed.  We brought the judicial foreclosure action but OKOA came in.  We're hoping for some excess proceeds.

**DeVon Veater**
Attorney



📞  Direct: (480) 428-8017 | Office: (480) 428-8015
✉  dveater@brentwoodlg.com
📍  2520 East University Drive, Suite 103, Tempe, AZ 85281

NOTE: This email and any attachment are confidential and may be privileged.  We do not intend to waive any privilege by sending it to you.  If you have received this email in error; please do not read, use, or disseminate it or any information contained or attached to it.

**From:** Jeff Sellers <jlsellers@law-msh.com>
**Sent:** Tuesday, June 13, 2023 1:55 PM
**To:** DeVon Veater <dveater@brentwoodlg.com>
**Subject:** RE: OKOA Capital foreclosure Diamond Elite

Hey, we are likely to go to sale on July 10 and take title here.   Can you tell me a little about what

your client did, whether they finished the repairs, was there an insurance claim filed that you know of?  We will probably need to revisit the casualty and repair to get the building back into rentable condition.  Did your client get partial payment or entirely stiffed?



**Jeffrey L. Sellers**
**Shareholder**

**1850 N. Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**Office  (602) 604-2109**
**www.law-msh.com**

---

**From:** DeVon Veater <dveater@brentwoodlg.com>
**Sent:** Friday, April 21, 2023 11:32 AM
**To:** Jeff Sellers <jlsellers@law-msh.com>
**Subject:** RE: OKOA Capital foreclosure Diamond Elite

Thank you for the quick response.

**DeVon Veater**
Attorney



📞  Direct: (480) 428-8017 | Office: (480) 428-8015
✉  dveater@brentwoodlg.com
📍  2520 East University Drive, Suite 103, Tempe, AZ 85281

NOTE: This email and any attachment are confidential and may be privileged.  We do not intend to waive any privilege by sending it to you.  If you have received this email in error; please do not read, use, or disseminate it or any information contained or attached to it.

---

**From:** Jeff Sellers <jlsellers@law-msh.com>
**Sent:** Friday, April 21, 2023 11:29 AM
**To:** DeVon Veater <dveater@brentwoodlg.com>
**Subject:** RE: OKOA Capital foreclosure Diamond Elite

Hope you are doing well; here is the balance at March 31

3/31 Payoff:  $7,498,423
Principal: $6,790,000
Interest Due: $402,873
Late Fees/Default Int: $305,550



**Jeffrey L. Sellers**
**Shareholder**

**1850 N. Central Avenue, Suite 1100**
**Phoenix, Arizona 85004-4541**
**Office  (602) 604-2109**
**www.law-msh.com**

---

**From:** DeVon Veater <dveater@brentwoodlg.com>
**Sent:** Friday, April 21, 2023 10:04 AM
**To:** Jeff Sellers <jlsellers@law-msh.com>
**Subject:** OKOA Capital foreclosure Diamond Elite

Good morning Jeff,

It's been a while.  I hope all is well with you.  I represent Envy Restoration and it received notice from you regarding a scheduled foreclosure sale.  I'm hoping to get a little information.  You stated in the notice that Diamond Elite missed the final payment on the note.  Do you happen to have that amount handy?  I'd like to have an idea of whether there may be excess proceeds available after the sale.  Any information would be appreciated.

**DeVon Veater**
Attorney



☎  Direct: (480) 428-8017 | Office: (480) 428-8015
✉  dveater@brentwoodlg.com
📍  2520 East University Drive, Suite 103, Tempe, AZ 85281

NOTE: This email and any attachment are confidential and may be privileged.  We do not intend to waive any privilege by sending it to you.  If you have received this email in error; please do not read, use, or disseminate it or any information contained or attached to it.

2023.03.01   Exhibit 2 -      Exhibit 1 -
Complaint.pdf    Lien.pdf    Agreement.pdf

# Exhibit 9



**From:** **Molly Weiss** mweiss@supreminsurance.com 📎
**Subject:** Re: Great American Insurance Policy IMP E942620
**Date:** July 25, 2023 at 3:37 PM
**To:** Jason Meyer jason@okoacapital.com
**Cc:** ty@okoacapital.com

The policy is paid and will be reinstated. See attached certificates.

Thank you

Molly Weiss



**PROTECTIVE INSURANCE BROKERAGE INC.**
**670 Myrtle Ave. #161**
**Brooklyn NY 11205**
P: 718-887-8004
F: 718-873-1390

On Tue, Jul 25, 2023 at 4:53 PM Jason Meyer <jason@okoacapital.com> wrote:
  Molly, can we pay over the phone?  How else can I get you paid by tomorrow?

On Tue, Jul 25, 2023 at 11:49 AM Molly Weiss <mweiss@supreminsurance.com> wrote:

Please pay per attached invoice. Please make the check payable and send it to:
**PROTECTIVE INSURANCE BROKERAGE INC.**
**670 Myrtle Ave. #161**
**Brooklyn NY 11205**

Thank you

Molly Weiss



**PROTECTIVE INSURANCE BROKERAGE INC.**
**670 Myrtle Ave. #161**
**Brooklyn NY 11205**
P: 718-887-8004
F: 718-873-1390

---------- Forwarded message ---------
From: **PERRY SCHWARTZ** <pschwartz@supreminsurance.com>
Date: Mon, Jul 24, 2023 at 4:25 PM
Subject: Fwd: Great American Insurance Policy IMP E942620
To: Molly Weiss <mweiss@supreminsurance.com>

Lender wants to pay for diamond elite park. Check if we can still reinstate and how much TOTAL balance is to avoid future

Lender wants to pay for diamond elite park! Check if we can still reinstate and how much TOTAL balance is to avoid future cancellations.

Thank you

Perry Schwartz



PROTECTIVE INSURANCE BROKERAGE INC.
**670 Myrtle Ave. #161**
**Brooklyn NY 11205**
P: 718-887-8004
F: 718-873-1390

---------- Forwarded message ---------
From: **Jason Meyer** <jason@okoacapital.com>
Date: Mon, Jul 24, 2023 at 3:51 PM
Subject: Re: Great American Insurance Policy IMP E942620
To: PERRY SCHWARTZ <pschwartz@supreminsurance.com>
Cc: Ty Corbridge <ty@okoacapital.com>

Yes. we will pay this.  was it ever paid by the insured?

On Mon, Jul 24, 2023 at 1:48 PM PERRY SCHWARTZ <pschwartz@supreminsurance.com> wrote:
  do you want to pay it? about $4400.

Thank you

Perry Schwartz



PROTECTIVE INSURANCE BROKERAGE INC.
**670 Myrtle Ave. #161**
**Brooklyn NY 11205**
P: 718-887-8004
F: 718-873-1390

On Mon, Jul 24, 2023 at 3:47 PM Jason Meyer <jason@okoacapital.com> wrote:
  How much is the payment?  Can we bring it current

On Mon, Jul 24, 2023 at 1:46 PM PERRY SCHWARTZ <pschwartz@supreminsurance.com> wrote:
Waiting for insured to make payment first.




Thank you

Perry Schwartz



PROTECTIVE INSURANCE BROKERAGE INC.
670 Myrtle Ave. #161
Brooklyn NY 11205
P: 718-887-8004
F: 718-873-1390




On Mon, Jul 24, 2023 at 1:53 PM Jason Meyer <jason@okoacapital.com> wrote:
PERRY,
We are a signed beneficiary on the insurance policy.  Would you please send us proof of insurance?

On Wed, Jul 19, 2023 at 3:33 PM Jason Meyer <jason@okoacapital.com> wrote:
Perry,
Could we get this proof of insurance?

On Tue, Jul 18, 2023 at 10:15 AM PERRY SCHWARTZ <pschwartz@supreminsurance.com> wrote:
Yes, Molly should send shortly.



Please note that we are having trouble with some of our emails not being received by many recipients. Please confirm
receipt of this email by replying.


Thank you

Perry Schwartz



PROTECTIVE INSURANCE BROKERAGE INC.
670 Myrtle Ave. #161
Brooklyn NY 11205
P: 718-887-8004
F: 718-873-1390



On Tue, Jul 18, 2023 at 11:26 AM Jason Meyer <jason@okoacapital.com> wrote:

Could you please respond to me

On Thu, Jul 13, 2023 at 11:41 AM Jason Meyer <jason@okoacapital.com> wrote:

Perry,

I am emailing you regarding the Insurance policy listed above.  I have attached the Evidence of Commercial Insurance.  We are attempting to confirm that this is a valid insurance policy listing us as a beneficiary on this policy.

Can you confirm this?
Could you put us in touch with Great American Insurance so that we can also confirm this?

--

 **Jason Meyer**
Partner
OKOA Capital, LLC
jason@okoacapital.com
801 557 0909


--

 **Jason Meyer**
Partner
OKOA Capital, LLC
jason@okoacapital.com
801 557 0909


--

 **Jason Meyer**
Partner
OKOA Capital, LLC
jason@okoacapital.com
801 557 0909

--

 **Jason Meyer**
Partner
OKOA Capital, LLC
jason@okoacapital.com
801 557 0909


--

 **Jason Meyer**
Partner
OKOA Capital, LLC
jason@okoacapital.com
801 557 0909




**Jason Meyer**
Partner
OKOA Capital, LLC
jason@okoacapital.com
**801 557 0909**




**Jason Meyer**
Partner
OKOA Capital, LLC
jason@okoacapital.com
**801 557 0909**


---

## ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 07/25/23

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: 670 Myrtle Ave PMB 161 | |
|---|---|---|
| PROTECTIVE INSURANCE BROKERAGE | PHONE (A/C, No, Ext): (718)887-8004 | FAX (A/C, No): (718)873-1390 |
| 670 Myrtle Ave PMB 161 | E-MAIL ADDRESS: pschwartz@supreminsurance.com | |
| Brooklyn, NY 11205 | INSURER(S) AFFORDING COVERAGE | NAIC # |
| | INSURER A: JAMES RIVER INSURANCE COMPANY | |
| INSURED | INSURER B: | |
| DIAMOND ELITE PARK LLC. | INSURER C: | |
| DBA PARK @25TH PHASE 4 | INSURER D: | |
| 913 EASTH 8TH ST. | INSURER E: | |
| CASA GRANDA, AZ 85122      AZ  85122 | INSURER F: | |

**COVERAGES**   **CERTIFICATE NUMBER:**   **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY [X]  CLAIMS-MADE [X] OCCUR | | X | 00126264-0 | 01/06/23 | 01/06/24 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 1,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY [ ] PRO-JECT [ ] LOC  OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| | AUTOMOBILE LIABILITY [ ] ANY AUTO [ ] OWNED AUTOS ONLY [ ] SCHEDULED AUTOS [ ] HIRED AUTOS ONLY [ ] NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB [ ] OCCUR EXCESS LIAB [ ] CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | DED [ ] RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY       Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | [ ] PER STATUTE [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

9630 NORTH 25TH AVENUE PHOENIX AZ 85021

CERTIFICATE HOLDER HEREBY ADDED AS ADDITIONAL INSURED

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| OKOA CAPITAL LLC, ISAOA/ATIMA, LLC.<br>2290 E 4500 S #260<br>Holladay, UT 84117 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Perry Schwartz* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

---

**ACORD**    **EVIDENCE OF COMMERCIAL PROPERTY INSURANCE**

DATE (MM/DD/YYYY)
07/25/23

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): (718)887-8004 | COMPANY NAME AND ADDRESS | | NAIC NO: |
|---|---|---|---|---|
| PROTECTIVE INSURANCE BROKERAGE<br>670 Myrtle Ave PMB 161<br>Brooklyn, NY 11205 | | GREAT AMERICAN INSURANCE COMPANY | | |
| FAX (A/C, No): (718)873-1390 | E-MAIL ADDRESS: pschwartz@supreminsurance.com | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH | | |
| CODE: | SUB CODE: | POLICY TYPE | | |
| AGENCY CUSTOMER ID #: | | COMMERCIAL PROPERTY | | |
| NAMED INSURED AND ADDRESS | | LOAN NUMBER | POLICY NUMBER | |
| DIAMOND ELITE PARK LLC. | | | IMP E942620 | |
| 913 EAST H 8TH ST | | EFFECTIVE DATE | EXPIRATION DATE | |

# Exhibit 10

| | |
|---|---|
| **From:** | Glorioso, Alessandra |
| **To:** | TDonovan@GWFGLaw.com |
| **Cc:** | Gabriel, Isaac; Galen, Michael; knash@gwfglaw.com |
| **Subject:** | RE: Insurance Policies and Claims - In re Diamond Elite Park LLC |
| **Date:** | Thursday, July 20, 2023 8:29:45 AM |
| **Attachments:** | image001.png |
| | image002.png |

Correction, Ted.  My apologies and hope to hear back from you soon.

**Alessandra Glorioso**
**Partner, Bankruptcy Practice Group Co-Chair**



P: 302.425.7166
C: 302.242.5897

**From:** Glorioso, Alessandra
**Sent:** Thursday, July 20, 2023 9:26 AM
**To:** 'TDonovan@GWFGLaw.com' <TDonovan@GWFGLaw.com>
**Cc:** Gabriel, Isaac <Gabriel.Isaac@dorsey.com>; Galen, Michael <galen.michael@dorsey.com>;
'knash@gwfglaw.com' <knash@gwfglaw.com>
**Subject:** RE: Insurance Policies and Claims - In re Diamond Elite Park LLC

Tom,

Please see the below request repeated as follows:  We represent Okoa Capital LLC in the Diamond
Elite Park LLC bankruptcy case. Please send us copies of the Debtor's insurance certificates for any
insurance policies related to the property located at 9630 N 25th Ave., Phoenix, AZ 85021. Please
also send us any claims that have been filed against those policies.

Regards,

**Alessandra Glorioso**
**Partner, Bankruptcy Practice Group Co-Chair**



P: 302.425.7166
C: 302.242.5897

**From:** Glorioso, Alessandra
**Sent:** Monday, July 17, 2023 8:54 AM
**To:** 'knash@gwfglaw.com' <knash@gwfglaw.com>
**Cc:** Gabriel, Isaac <Gabriel.Isaac@dorsey.com>; Galen, Michael <galen.michael@dorsey.com>
**Subject:** RE: Insurance Policies and Claims - In re Diamond Elite Park LLC

Kevin,

Following up on the below.

Thanks,

**Alessandra Glorioso**
**Partner, Bankruptcy Practice Group Co-Chair**



**P:** 302.425.7166
**C:** 302.242.5897

---

**From:** Glorioso, Alessandra
**Sent:** Wednesday, July 12, 2023 5:15 PM
**To:** 'knash@gwfglaw.com' <knash@gwfglaw.com>
**Cc:** Gabriel, Isaac <Gabriel.Isaac@dorsey.com>; Galen, Michael <galen.michael@dorsey.com>
**Subject:** Insurance Policies and Claims - In re Diamond Elite Park LLC

Kevin,

We represent Okoa Capital LLC in the Diamond Elite Park LLC bankruptcy case. Please send us copies of the Debtor's insurance certificates for any insurance policies related to the property located at 9630 N 25th Ave., Phoenix, AZ 85021. Please also send us any claims that have been filed against those policies.

Regards,

**Alessandra Glorioso**
**Partner, Bankruptcy Practice Group Co-Chair**



DORSEY & WHITNEY (DELAWARE) LLP
300 Delaware Avenue, Suite 1010 | Wilmington, DE 19801
**P:** 302.425.7166
**C:** 302.242.5897

**CONFIDENTIAL COMMUNICATION**
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.
Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received
this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments,
including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.
Thank you.*