Alessandra Glorioso
Michael Galen
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200
Facsimile: (212) 953-7201
Email: glorioso.alessandra@dorsey.com
      galen.michael@dorsey.com

*Attorneys for Okoa Capital LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DIAMOND ELITE PARK LLC | ) Case No. 23-22520-shl |
| | ) |
| Debtor. | ) |
| | ) |

**OKOA CAPITAL LLC'S MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(d)(1) AND 362(d)(2)**
**OR IN THE ALTERNATIVE DISMISSAL OF THE BANKRUPTCY**
**CASE PURSUANT TO 11 U.S.C. § 1112(b)(1)**

Okoa Capital LLC ("Okoa"), by and through its undersigned counsel, hereby submits this

motion (the "Motion") seeking entry of an Order granting relief from the automatic stay pursuant

to sections 362(d)(1) and 362(d)(2) of Title 11 of the United States Code (the "Bankruptcy Code"),

and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), or, in the

alternative, dismissing this case pursuant to Bankruptcy Code § 1112(b)(1) with a 120-day bar to

refiling, and granting such other and further relief as this Court deems just and proper, and

respectfully represents as follows:

## PRELIMINARY STATEMENT

1.        This is a single asset real estate bankruptcy case commenced by chapter 11 debtor Diamond Elite Park LLC (the "Debtor") on the eve of foreclosure. Okoa holds a first lien security interest in the Debtor's real estate asset and seeks expedited relief from the automatic stay in order to complete the foreclosure process and protect its collateral from further waste and diminution in value.[1] Indeed, as detailed below, the Debtor has utterly failed to maintain or protect the property (its sole asset). When Okoa made its loan, the Debtor's property was a four-story office building in excellent condition that was occupied by an anchor tenant that paid base rent of $44,927 per month and whose lease did not expire until 2026.  Without prior notification to Okoa (let alone Okoa's consent), and without a full set of architectural plans, a building permit, a construction loan, or even a contract with a general contractor, the Debtor removed the tenant and allowed the vacant building to sit—unoccupied, unsecured, and exposed to trespassers and the elements. Recent inspections indicate that homeless people are living in the building and all wiring, piping, and anything else that had even scrap value has been stripped from the building. The building has been effectively gutted, with every part of the building's interior destroyed and/or vandalized, and the building has virtually no value beyond the land that it sits on.

2.        Even worse, the Debtor has transferred hundreds of thousands of dollars to insider entities controlled by the Debtor's principal in the year preceding the bankruptcy filing, and has apparently misappropriated insurance proceeds. Moreover, the Debtor has no equity in the subject property and it is not necessary for an effective reorganization. As such, relief from the automatic stay is appropriate and Okoa respectfully requests that this Motion be granted without further delay.

4864-5105-3427\5

3.      In the alternative, Okoa requests that the Court dismiss this case pursuant to Bankruptcy Code § 1112(b)(1) for cause. Cause exists, among other things, because the Debtor has grossly mismanaged its estate, allowing waste to continue to occur with respect to its sole piece of property. That waste is causing a substantial and continuing loss to or diminution of the estate and there is no reasonable likelihood of a rehabilitation in this case.  The Debtor stated, through counsel, at the 341 meeting of creditors in this case, that it intends to sell the property.  There is no advantage to the Debtor selling the property through this bankruptcy case, rather than allowing Okoa to sell the property at a foreclosure sale.

### **JURISDICTION & VENUE**

4.      The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The bases for the relief requested herein are Bankruptcy Code §§ 362(d)(1), 362(d)(2), and 1121(b)(1) and Bankruptcy Rule 4001(a).

---

[1] Simultaneously herewith, Okoa has filed a motion requesting entry of an Order scheduling a hearing on this Motion on an expedited basis (the "Motion to Expedite").

## RELEVANT BACKGROUND

7.      On July 9, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court. No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case. As of the date of this Motion, the Debtor has filed only its bare bones petition and, more recently, its schedules (the "Schedules") and Statement of Financial Affairs ("SOFA").

8.      The Debtor is an Arizona limited liability company that owns the real property located at 9630 N. 25th Avenue, Phoenix, Arizona 85021 (the "Property").

9.      On or about January 7, 2022, Okoa provided a short term loan (the "Loan") to the Debtor in the original principal amount of $6,790,000.00 for the purpose of acquiring the Property. In connection with the Loan, the Debtor executed that certain *Loan Agreement* (the "Loan Agreement") and that certain *Promissory Note* (the "Note"), each dated January 7, 2022. The Debtor also granted a *Deed of Trust* (the "Deed of Trust") in favor of Okoa secured by the Property. The Loan Agreement, Note, and Deed of Trust are referred to herein as the "Loan Documents". *See* Declaration of Ty Corbridge in support of this Motion, attached hereto as Exhibit "B" (the "Corbridge Declaration") at ¶ 5, Exh. 1.

10.     The *Escrow Instructions* that Okoa provided to the title company in connection with the closing of the Loan and the Debtor's acquisition of the Property, which required that the Debtor "provide evidence of Hazard Insurance naming Okoa Capital LLC as loss payee." *Id*. at ¶ 6, Exh. 2.

4

11.     In June 2022, the Debtor filed an application for a zoning adjustment on the Property to allow for conversion of the Property to a residential use. The application was approved in August 2022. The approval provided two (2) years to apply and pay for building permits with respect the conversion of the Property. *Id*., Exh. 3. Upon information and belief, the Debtor has not obtained any permits or made any other progress with respect to conversion of the Property to a residential use. *Id*. at ¶ 7.

12.     It was contemplated that Okoa's short term Loan would be paid off with a construction loan when it matured after one (1) year, in January 2023. *Id*. at ¶ 8. Okoa underwrote the Loan as an office building and contemplated that if the Debtor failed to obtain take-out financing, it would exit by selling the Property as an office building. *Id*. The Loan Agreement required that the Debtor "provide written notice to [Okoa] of any material change in circumstances . . . including, but not limited to, any material financial or economic change, or any material change otherwise relating in any way to the Collateral, Loan Commitment, or the Borrower's ability to perform according to the terms of this Agreement . . . ." *See id*.; Loan Agreement, ¶ 3. No such notice was ever provided. *Id*. Okoa never consented to a conversion of the Property for residential use taking place during the term of the Loan, nor did Okoa consent to the Debtor removing all tenants from the Property, *id*., which, according to the Debtor, it did, for the purpose of converting the property for residential use.

13.     The Loan matured on January 6, 2023 and the full amount remaining due under the Loan became immediately due and payable. The Debtor has failed to make any payments on the Loan since the maturity date.[2] *Id*. at ¶ 9.

---

[2] In fact, the Debtor defaulted on the Loan several months prior to the maturity date for nonpayment.  Okoa did not

14.     On February 2, 2023, Okoa sent the Debtor a notice of default and demand for payment curing the default. *Id*. at ¶ 10, Exh. 4.

15.     On April 7, 2023, Okoa sent the Debtor a second notice of default, which was accompanied by a Notice of Trustee Sale (the "April Notice of Default"). *Id*., Exh. 5. The April Notice of Default informed the Debtor that the "enclosed Notice of Trustee's Sale was recorded on April 6, 2023 with the Maricopa County Recorder's Office setting July 10, 2023 as the date of the Trustee's Sale concerning the Property." *Id*.

16.     On June 30, 2023, Okoa commenced an action in Arizona Superior Court (the "State Court Action")[3] against the Debtor and certain other individuals and entities asserting causes of action for, among other things, breach of the Loan Documents and breach of the implied covenant of good faith and fair dealing. *Id*. at ¶11. Okoa was unsuccessful in serving the summons and complaint on the Debtor prior to the Petition Date and the State Court Action is now stayed as to the Debtor. *Id*.

17.     As of the Petition Date, the total amount of principal and interest due to Okoa under the Loan Documents was $8,134,420. *Id*. at ¶ 12.

### **The Debtor has Caused Waste at the Property**

18.     The Debtor has not exercised reasonable care in maintaining the Property which is currently in a state of extreme disrepair.

---

call a formal event of default at that time.

[3] *Okoa Capital LLC v. Diamond Elite Park, LLC et al.*, Case No. CV2023-009952 (Arizona Superior Court, Maricopa County)

4864-5105-3427\5

19.     At the time Okoa made the Loan to the Debtor and the Debtor acquired the Property in January 2022, the Property was in pristine condition, as shown in the photograph below. *Id*. at ¶ 5.



20.     On June 12, 2023, the City of Phoenix issued the Debtor a Notice of Ordinance Violation (the "Ordinance Violation"). *Id*. at ¶ 13, Exh. 6. The Ordinance Violation details violations of a Neighborhood Preservation Ordinance including "vacant and unsecured structures with open, broken, or missing windows and/or doors," "accumulation of trash and debris throughout the property," and "grass/weeds over 6 inches tall." The Ordinance Violation provides instructions for corrective action, including board up and securement specifications.

21.     Okoa's representative visited the Property on or about June 15, 2023, and discovered the following conditions:

4864-5105-3427\5

A. The Property was not secured. The windows at the ground floor level were broken and doors were unlocked, allowing unfettered access to trespassers, as shown in the photograph below.



B. Trespassers appeared to have gained access to every part of the Property.

C. There was a distinct smell of smoke emanating from the Property, suggesting fires were being burned within the Property.

D. The interior of the Property had sustained extensive damage, including removal of the wiring throughout the Property, rendering it likely that the HVAC and electrical infrastructure had been destroyed, as shown in the photographs below.

 

8

    E.  The Property appeared blighted due to neglected landscaping and overgrown weeds, attracting transient individuals and other trespassers.

*See id*. at ¶ 14.

### The Debtor Failed to Provide Insurance Information and Apparently Failed to List Okoa as Loss Payee on its Insurance as Required

22.    In June 2023, Okoa's counsel requested that the Debtor provide evidence of insurance that listed Okoa as loss payee. *Id*. at ¶15, Exh. 7.

23.    On or about June 13, 2023, Okoa's counsel corresponded with counsel for Envy Restoration regarding work completed by Envy Restoration to repair damage to the Property's water lines caused by a theft at the Property. Okoa was informed that although Envy Restoration completed the necessary repairs and the Debtor received insurance proceeds for the damage to the Property, the Debtor failed to pay Envy Restoration from such proceeds. *Id*. at ¶ 16, Exh. 7. Based on this correspondence, and the fact that Okoa never received notice or payment of insurance proceeds related to the Property damage as it should have if it were listed as loss payee, Okoa became concerned that the Debtor had failed to list Okoa as a loss payee on the insurance policies covering the Property. *Id*.

24.    On June 27, 2023, the Debtor's state court counsel provided documents titled *Evidence of Commercial Property Insurance* and *Certificate of Liability Insurance*, which were certified by the Debtor's insurance broker Perry Schwartz at Protective Insurance Brokerage. *Id*. at ¶ 16, Exh. 8. On July 18, 2023, Okoa contacted Mr. Schwartz's office to verify the insurance and was informed that Mr. Schwartz's office was waiting for the Debtor to make payment on the insurance policies, for which $4,400 was due and owing. *Id*. at ¶ 17, Exh. 9. Upon learning that the Debtor's insurance policies on the Property were unpaid and were in danger of lapsing (if they had not already lapsed), Okoa agreed to pay $4,400 to Mr. Schwartz's office to reinstate the

9

policies. *Id.*

25.    Okoa subsequently learned that although it consented to pay $4,400, Mr. Schwartz's office charged its credit card for $8,166 without any explanation. *Id.* at ¶ 18.[4] Okoa has since been unable to obtain an explanation as to why it was charged almost twice as much as agreed to, and has not received confirmation from Mr. Schwartz's office that the $8,166 was used to pay the insurance provider, Great American Insurance Company ("Great American"). *Id.* Okoa has also been unable to confirm the Debtor's insurance directly with Great American. *Id.*

26.    Undersigned counsel also made multiple requests to the Debtor's bankruptcy counsel for the Debtor's insurance certificates related to the Property and information on claims filed against those policies. *Id.* at ¶ 19, Exh. 10. The first such request was made on July 12, 2023, with follow up emails on July 17, 2023 and again on July 20, 2023. *Id.* It was not until August 7, 2023 that the Debtor's bankruptcy counsel responded to this request, again attaching an *Evidence of Commercial Property Insurance* and *Certificate of Liability Insurance* that were certified by Mr. Schwartz. *Id.*, Exh. 11. The new versions of those forms only listed the United States Trustee as a loss payee and certificate holder, but did not list Okoa. *Id.* No information regarding claims against the policies was provided as requested. *Id.*

27.    At the 341 meeting held on August 10, 2023 (the "341 Meeting"), a Mr. Taub (who represented the Debtor's Vice President David Goldwasser at the 341 Meeting) stated that the Debtor's insurance on the Property is in place and committed to provide not only a broker's statement confirming the insurance, but the actual insurance policies to Okoa's counsel after the

---

[4] Okoa hereby reserves all rights to assert an administrative claim for the insurance premium payment in this case.

4864-5105-3427\5

341 Meeting. [5]    Mr. Taub never provided the insurance policies or any other documents.
Additionally at the 341 meeting, the Debtor testified that it renewed the insurance policy a few
months ago and did not believe a payment had ever been missed, thus creating an inconsistency
with the insurance broker's assertion that the premiums were unpaid.

28.    On August 14, 2023, Mr. Schwartz's office provided the Debtor's insurance policy,
which indicates that the Debtor has a Commercial Inland Marine policy. *See* Corbridge
Declaration, ¶ 20, Exh. 12. This is contrary to the representation in the *Evidence of Commercial
Property Insurance* documents provided by the Debtor, which indicate a commercial property
policy and state that the amount of the commercial property coverage is $10,000,000 with a
$25,000 deductible. *See* Corbridge Declaration, Exh. 8 and 11. The policy number listed in the
*Evidence of Commercial Property Insurance* documents is identical to the Commercial Inland
Marine policy. *Id*. In reality, the Commercial Inland Marine policy provides $10,000,000 of
coverage for "***Usable Existing Structure(s) at any one construction project***". *See* Commercial
Inland Marine policy at p. 25 (internal quotations omitted) (emphasis added). The Property has
been vacant for months and the Debtor is not conducting any construction project. Additionally,
the Commercial Inland Marine policy does not list Okoa as loss payee. *Id*.

---

[5] A copy of the 341 meeting transcript will be filed as a supplement hereto once transcribed.

## Schedules and Statements

29.     On August 7, 2023, the Debtor filed its Schedules and SOFA. The Schedules reveal that the Property is the Debtor's only asset, save for $28 in its bank account. *See* Schedule A/B at p. 1. Although the Debtor asserts that the Property is worth $10,000,000, the Debtor states in the Schedules that the Property has not been appraised by a professional within the last year. *Id*. at p. 2.[6] The Schedules also reveal that the Debtor owes $165,348.84 of property taxes to Maricopa County.[7] *See* Schedule E/F at p. 2. Those taxes are entitled to priority.

30.     Although the Schedules list nearly $8.5 million of unsecured non-priority claims, many of the purported creditors appear, in reality, to be investors who hold equity interests in the Debtor. *See* ScheduleE/F at p. 2-5. Those individuals and entities are Abraham and Samuel Greenfeld, Baze Ltd, Handy Laundry Products Corp., HEW Equities LLC, Rachel and Yoel Loeb, Yecheskel Weingarten, and the Debtor's principal Yehoishiah Rubin. *Id*. Collectively, those individuals and entities account for roughly $7.2 million of the unsecured claims. *Id*. The Schedules do not state the basis for any of those claims, instead leaving that line blank. *Id*. At the 341 Meeting, the Debtor's principal, Yehoishia Rubin, claimed that those individuals and entities made loans to the Debtor, but could not recall for certain if those loans were memorialized in writing. The Debtor's counsel also made clear at the 341 Meeting that the Debtor intends to pay off its "investors" in the Debtor if its $10 million valuation is accurate, *id*. at 11:9-12; ("if we can get that purchase price in that range, we can pay off the secured debt in full and have monies to pay the other investors and creditors."), and also that other "investors" may had been paid by the Debtor prior to the Petition Date, *id*. at 17:4-17 (Debtor's counsel committed to provide "a list of any repayments to any investors at any point in time since the debtor acquired the property in 2022").

31.    The SOFA reveals that the Debtor received payment of $250,000 for an insurance claim in March 2023 related to water damage at the Property. *See* SOFA at p. 1, 3. Although Okoa was listed as loss payee on the proof of insurance documents that the Debtor provided in June 2023, Okoa never received notice of the claim in January 2022 or of the payment in March 2023. Corbridge Declaration, ¶ 15. Okoa did not receive the $250,000 payment as a loss payee ordinarily would. *Id*.

32.    Even more concerning, the SOFA reveals that the Debtor transferred over $500,000 to affiliated entities within in the one (1) year period before the Petition Date, despite being left with no cash reserves and numerous unpaid creditors. *Id*. at p. 2.

33.    At the 341 meeting, Mr. Rubin could not answer even the most basic questions about the Debtor's Schedules and SOFA. Most notably, although he admitted that he personally owns and/or controls all three (3) of the insider entities that received over $500,000 in the year before the Petition Date, he would not testify as to why those payments were made other than to say the Debtor owed them money. Mr. Rubin also testified that the Debtor disputes the amount of Okoa's claim, but did not know why. Mr. Rubin also said that he did not remember whether Okoa was named as a loss payee on the insurance policy, he had no answer to whether the taxes owed to Maricopa County were past due, and he did not know the last time the Debtor's bank account

---

[6] The Debtor stated at the 341 Meeting that a bank had appraised the Property in March or April but did not know the name of the bank. Okoa has now received a copy of that appraisal, which was conducted by Mountain America Credit Union in February 2023, before the Property was abandoned and destroyed.  That appraisal contemplated that the Property would continue to be used as an office building and contains a number of unsupported assumptions regarding the value of the Property used as an office building or otherwise. Regardless, the existence of the February appraisal directly contradicts the Debtor's representation in the Schedules that no such appraisal exists.

[7] More than two (2) weeks before the Schedules were filed, the Maricopa County Treasurer filed a proof of claim asserting a claim of $340,697.68.

balance changed. The Debtor's attorney repeatedly interrupted the 341 meeting to answer questions on the Debtor's behalf or mischaracterize questions asked by the U.S. Trustee and Okoa's counsel. At the end of the 341 Meeting, the U.S. Trustee agreed to the request from Okoa's counsel that the meeting be held open as a result of the outstanding questions about the Debtor's insurance and Mr. Rubin's general non-responsiveness.

### Okoa's Appraisal

34.     Okoa has engaged Randall Clemson, the executive vice president of Kidder Mathews Valuation Advisory Services (the "Appraiser") to conduct an appraisal of the Property. On July 27, 2023, the Appraiser visited the Property. *See* Declaration of Randall Clemson in support of this Motion, attached hereto as Exhibit "C" (the "Clemson Declaration"), ¶ 7. Although the Appraiser is finalizing the appraisal report, which will be filed shortly as a supplement to this Motion, he has completed his valuation of the Property. As will be more fully set forth in the appraisal report, the value of the Property is $3,100,000. *Id*. at ¶ 15.

35.     As noted in the Clemson Declaration, the Property was still not secured and may be accessed by anyone at any time. *Id*. at ¶ 8. The Appraiser was able to walk into the building and freely access all parts of the Property. *Id*. All four floors of the building are in an extreme state of disrepair and have been vandalized. *Id*. at ¶ 9. It appears trespassers have been living in the building, as clothes, shoes, cups, and food wrappers are strewn about, and certain areas of the building smell of urine. *Id*. at ¶ 10.

4864-5105-3427\5

36.    All piping and wiring have been torn out of the walls and ceiling, the electrical components have been stripped from the electrical boxes, many of the overhead lights have been destroyed, and all of the flooring has been ripped up. *Id*. at ¶ 11.  The interior of the Property is covered in debris. *Id*. at ¶ 9. The hatch to the roof was also open, allowing roof access to any entrants. *Id*. at ¶ 12.

37.    Consistent with the City of Phoenix Ordinance Violation, the exterior of the building is also in poor shape, with all of the plants and grass overgrown and dead and the ground outside the building littered with tree branches. *Id*. at ¶ 13.

38.    The Appraiser reported that the Property is in the worst condition of any building he has ever visited in his 18 years of appraising real property. *Id*. at ¶ 14. Several pictures from Mr. Clemson's inspection of the Property on July 27, 2023 are attached as <u>Exhibit 1</u> to the Clemson Declaration, which clearly show the utter destruction that the Debtor has allowed to occur at the Property.

## **RELIEF REQUESTED**

39.    By this Motion, Okoa respectfully requests entry of an Order substantially in the form annexed hereto as <u>Exhibit "A"</u> granting Okoa relief from the automatic stay pursuant to Bankruptcy Code §§ 362(d)(1) and 362(d)(2) to permit Okoa to complete the foreclosure process with respect to the Property. As set forth in the Motion to Expedite, Okoa is requesting that this relief be granted on an expedited basis to avoid further damage to the Property, diminution of its value, and risk of personal injury to entrants.

**A.    Okoa is Entitled to Relief from Stay Pursuant to Bankruptcy Code § 362(d)(1)**

40.    Bankruptcy Code § 362(d)(1) provides that the Court shall grant relief from stay "for cause, including the lack of adequate protection of an interest in property of" the party seeking

15

relief. 11 U.S.C. § 362(d)(1). The movant bears the initial burden of demonstrating cause and, upon such a showing, the burden shifts to the debtor to rebut that showing. *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999). Here, as outlined below, cause exists to grant Okoa relief from the automatic stay to complete the foreclosure process with respect to the Property for at least two reasons.

41.     <u>First</u>, Okoa's interest in the Property is not being adequately protected. "The critical purpose of adequate protection is to guard against the diminution of a secured creditor's collateral during the period when the debtor-in-possession is using the collateral." *In re Wythe Berry Fee Owner LLC*, Case No. 22-11340 (MG), 2023 Bankr. LEXIS 645, at *16 (Bankr. S.D.N.Y. Mar. 13, 2023) (citations omitted). As detailed above and in both the Corbridge Declaration and the Clemson Declaration, the Debtor has utterly failed to guard against diminution in value of the Property, instead leaving the Property unsecured and unguarded which, in turn, has resulted in extensive damage by various trespassers. The condition of the Property is so poor that the City of Phoenix issued the Ordinance Violation and there is no indication the Debtor has taken any steps to rectify the issues outlined therein. These failures are particularly problematic given the Debtor's failure to pay its insurance premiums, the questionable status of the Debtor's property insurance, and the Debtor's apparent failure to name Okoa as the loss payee for at least part of the time the insurance policy was in effect. The Debtor's decision to short circuit Okoa's foreclosure sale by filing this bankruptcy case has only allowed the Property to further deteriorate and pose additional risk to both entrant's and to Okoa's interests.

42.     The Debtor has also failed to acquire the permits necessary to convert the property into a residential property, as the Debtor has represented its purpose to be. There is a limited time frame within which such permits must be acquired, but the Debtor appears to have no sense of

urgency with respect to any aspect of this Property, that is, aside from blocking Okoa from enforcing its rights with respect to the Property and making payments to affiliates and alleged investors.

43.    Finally, as indicated by the Appraiser's preliminary valuation, and as will be confirmed by the forthcoming Appraisal, the value of the Property is less than half the amount of Okoa's secured claim. There is no equity cushion available to provide adequate protection to Okoa and its interest in the Property.

44.    Okoa thus submits that because its interest in the Property is not being adequately protected by the Debtor, cause exists to grant Okoa relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1).

45.    Second, cause exists to permit Okoa to complete the foreclosure sale of the Property in accordance with applicable state law. The Second Circuit has adopted a list of twelve non-exclusive factors – the *Sonnax* factors – to consider in determining whether to lift the stay to permit another proceeding to continue:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.*, 907 F.2d 1280, 1986 (2d Cir. 1990). "Not all of the *Sonnax* Factors are relevant in every case, and 'cause' is a broad and flexible concept that must be determined on a

case-by-case basis." *In re HBL SNF, LLC*, 635 B.R. 725, 733 (Bankr. S.D.N.Y. 2022) (citation omitted).

46.    Here, the relevant factors weigh in favor of granting relief from the automatic stay to permit Okoa to complete the foreclosure process with respect to the Property. As discussed in Section B below, there Debtor has no equity in the Property and it is not necessary for an effective reorganization (factor 2). Allowing foreclosure would thus not affect the ultimate outcome of this bankruptcy case, which cannot rely on the Property in any event (factor 1). This bankruptcy is essentially a two-party dispute, thus granting Okoa relief from the automatic stay would not adversely affect other creditors as there are few, if any, other legitimate creditors as compared to the amount of Okoa's claim (factor 7). This bankruptcy was filed by the Debtor with the sole aim of staying the trustee's sale in order to keep its hold on the Property and yet the Debtor has done nothing to protect and maintain the Property, resulting in substantial damage to the Property and diminution in its value (factor 12).

47.    The Debtor's suggestion that it be permitted to sell the Property through this bankruptcy case is wholly unacceptable. The Debtor entirely failed to care for the Property and apparently has not kept it properly insured.  The Debtor has admitted that it paid insider entities controlled by Mr. Rubin in the year prior to the Petition Date rather than secure the Property, obtain permits to move forward with its project, or pay creditors.  Now it has no cash left.  The Debtor's principal, Mr. Rubin also demonstrated at the 341 Meeting that he is either wholly ignorant regarding the matters set forth in the Schedules and SOFA, or he would like to avoid testifying to those matters under oath. Okoa is extremely concerned that any 363 sale conducted by the Debtor would be marked by the same incompetence and self-dealing that the Debtor has displayed to date, and that the Debtor would not conduct an arms' length marketing and sale process.  Moreover, the

18

significant administrative expense associated with that process is unnecessary and only further impairs the Debtor's legitimate creditors.

48.      Allowing the stay to remain in place would only serve to delay the inevitable and would run the very real risk that the Property falls into further disrepair and that Okoa's rights are further prejudiced. Accordingly, there is cause to grant Okoa relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1).

**B.      Okoa is Entitled to Relief from Stay Pursuant to Bankruptcy Code § 362(d)(2)**

49.      Bankruptcy Code § 362(d)(2) provides that the Court shall grant relief from stay to permit an act against property "if (A) the debtor does not have equity in such property; and (B) such property is not necessary for an effective reorganization". 11 U.S.C. § 362(d)(2). Bankruptcy Code § 362(g)(1) places the burden of establishing lack of equity on the movant. Here, Okoa has met that burden because the preliminary valuation of the Property, as will be further substantiated by the forthcoming Appraisal, demonstrates that the Property has a value that is far less than the amount of Okoa's claim. Therefore, the Debtor thus has no equity in the Property.

50.      Once a movant has established a lack of equity, "it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.)*, 484 U.S. 365, 375 (1988) (quoting 11 U.S.C. § 362(g)) (emphasis in original). To meet this burden, the Debtor must demonstrate not just that the Property is necessary for an effective reorganization, but that "the property is essential to an effective reorganization *that is in prospect*." *Id.* at 376 (emphasis in original). Here, there is no possibility of an effective reorganization, let alone an imminent one. The Debtor did not file any motions for first day relief (although a prepetition insurance premium was due and owing to keep the Property insured) and filed its Schedules and

SOFA two (2) weeks after the deadline, demonstrating little interest in actively prosecuting this Chapter 11 case. Rather, the sole aim seems to have been to delay Okoa from exercising its legal and contractual rights and remedies with respect to the Property and seizing control of the sale process.

51.    In light of the foregoing, Okoa submits that it is entitled to relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(2) to complete its foreclosure with respect to the Property and take any and all actions related thereto.

## C.    THE DEBTOR'S CASE SHOULD BE DISMISSED FOR CAUSE PURSUANT TO BANKRUPTCY CODE § 1112(b)(1)

52.    Under Bankruptcy Code § 1112(b)(1), a bankruptcy court is permitted to dismiss a chapter 11 case for "cause". 11 U.S.C. § 1112(b). Section 1112(b) sets forth a list of what may constitute cause, but it is widely recognized that such list is "illustrative, not exhaustive." *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997); *see In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011). As the House Report accompanying the Bankruptcy Act of 1978 explained, "[t]he Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H.R. REP. NO. 95-595, 95th Cong., 1st Sess. at 405–06 (1978). Two causes for dismissal of a chapter 11 case that are widely recognized in the Second Circuit and by bankruptcy courts across the country are: (A) the chapter 11 case was filed in bad faith; and (B) the debtor is unable to effectuate a confirmable plan. Both of these causes are present in this case and accordingly, the Debtor's bankruptcy case should be dismissed for cause.

53.    The language of Bankruptcy Code § 1112(b)(1) is mandatory such that if it is determined that cause exists, the Court must convert or dismiss the case unless unusual circumstances can be established that demonstrate the conversion or dismissal is not in the best

20

interests of the estate. 11 U.S.C. § 1112(b)(1) and (b)(2); *see Babayoff*, 445 B.R. at 76; *In re Acme Cake Co., Inc.*, 495 B.R. 212, 222 (Bankr. E.D.N.Y. 2010).

### The Debtor's Case Should Be Dismissed Because it was Filed in Bad Faith

54.     Courts in the Second Circuit have consistently recognized that filing of a chapter 11 case in bad faith constitutes cause to dismiss the case under Bankruptcy Code § 1112(b). *See C-TC 9th Ave. P'ship*, 113 F.3d at 1310 ("A bankruptcy court may dismiss a bad faith filing on an interested party's motion or sua sponte."); *In re Island Helicopters*, 211 B.R. 453, 461 (Bankr. E.D.N.Y. 1997) ("Although chapter 11 does not explicitly so state, it is well established that bad faith may serve as a ground for dismissal of a bankruptcy petition." (internal quotations and citations omitted)). Whether a Chapter 11 petition was filed in bad faith requires determining whether "it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *1633 Broadway Mars Rest. Corp. v. Paramount Grp., Inc. (In re 1633 Broadway Mars Rest. Corp.)*, 388 B.R. 490, 498 (Bankr. S.D.N.Y. 2008) (quoting *Baker v. Latham Sparrowbush Ass'n (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991)). "The test as a whole looks to the Debtor's intentions and realistic goals." *Id*. As set forth below, the timing and circumstances of the Debtor's bankruptcy filing evidences a plain intent to obstruct Okoa from rightfully regaining possess of the Property. Moreover, there is no reasonable likelihood that the Debtor will successfully reorganize given the absence of income, assets, and creditors.

55.     Bad faith dismissals have "long been the policing mechanism of Bankruptcy Courts to make certain that those who invoke the reorganization or rehabilitation provisions of the bankruptcy law do so only to accomplish the aims and objectives of bankruptcy reorganization

21

philosophy and for no other purpose." *In re Island Helicopters*, 211 B.R. at 462 (citation omitted).

"As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there

can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition

may be dismissed as not being filed in good faith." *In re HBA East, Inc.*, 87 B.R. 248, 259–60

(Bankr. E.D.N.Y. 1988) (citations omitted). In this case, the timing of the Debtor's filing leaves

no doubt as to the Debtor's motives – to prevent Okoa from and exercising its rights.

56.    In addition to the timing of filing the Chapter 11 petition, bankruptcy courts look

to a number of circumstances in determining whether a petition was filed in bad faith and should

be dismissed. "This court may consider any factors which evidence an intent to abuse the judicial

process and the purposes of the reorganization provisions or, in particular, factors which evidence

that the petition was filed to delay or frustrate the legitimate efforts of creditors to enforce their

rights." *In re Island Helicopters*, 211 B.R. at 462 (internal quotations, alterations and citations

omitted).

57.    Here, the Debtor is not motivated by a legitimate desire to reorganize, but rather by

a desire to delay, obstruct, and/or interfere with Okoa's rights and avoid a foreclosure sale of the

Property. The Debtor has no operations, assets (besides the Property), or liabilities to reorganize.

While the Debtor asserts that the value of the Property is $10 million and that Okoa is oversecured,

that valuation is baseless and wildly inaccurate. In reality, the value of the property is less than

half that amount and Okoa is certainly undersecured. By the Debtor's own admission, it has not

conducted an appraisal of the Property in at least the past year. The interior of the Property has

been destroyed due to the Debtor's negligence, lack of care, and failure of management. Entryways

to the property have remained unsecured for extended periods of time and were open as recently

as July 27, 2023 when the Appraiser visited the Property. There are many signs that trespassers

have been living in the Property, including clothing, food wrappers, and the smell of urine. All

piping, wiring, electrical components, and flooring are torn out of the building.   There is no

credible basis for the Debtor's purported valuation of the Property. The Debtor simply scheduled

an inflated property value so it could claim Okoa is oversecured and prevent Okoa from exercising

its legitimate rights with respect to the Property.

58.     The Second Circuit Court of Appeals has highlighted the following factors as

indicative of bad faith filing:

(1) The debtor has only one asset;

(2) The debtor has few unsecured creditors whose claims are small in relation to those of secured creditors;

(3) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) The debtor has little or no cash flow;

(7) The debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) The debtor has no employees.

*C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (citations omitted). Each of these factors directly applies

to this case.

### (1) The Debtor has only one asset.

59.     The Property is the Debtor's only asset, aside from $28 in the Debtor's bank

account. As set forth above, the Debtor's asserted $10 million valuation of the Property is baseless

and inaccurate. Okoa's Appraiser has determined that the value of the Property is $3.1 million and

a full appraisal will be filed shortly to supplement this Motion. Therefore, Okoa is vastly undersecured, and there are no additional assets to fund a plan of reorganization.

***(2) The Debtor has few unsecured creditors whose claims are small in relation to those of secured creditors.***

60.    Because the Property's value is less than half of Okoa's secured claim, and because the Debtor has no other assets, the size of the unsecured creditor body is irrelevant, as there are no assets to fund a plan that could provide them with any recovery.

***(3) The Debtor's one asset is subject of a foreclosure action as a result of arrearages or default on the debt.***

61.    Prior to the Petition Date, the Debtor defaulted on the Loan to Okoa by failing to pay the full amount outstanding under the Loan on the Loan's maturity date.  Okoa issued its first notice of default on February 2, 2023.  On April 7, 2023, Okoa noticed a trustee's sale of the Property for July 10, 2023—the day after the Petition Date.  Thus, this factor is met.

***(4) The Debtor's financial condition is, in essence, a two party dispute between the Debtor and its secured creditor that can be resolved in the pending state foreclosure action.***

62.    This case presents what is essentially a two party dispute between Okoa and the Debtor. Based on the Appraiser's valuation of the Property and the forthcoming appraisal report, Okoa is vastly undersecured. There are no other assets available for any other creditors in this case. Disposition of the Property should be resolved outside of this case via Okoa's trustee's sale.

***(5) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.***

63.    Okoa noticed a trustee's sale of the Property for July 10, 2023. The Debtor filed this case on July 9, 2023.  The sole reason this case was filed on the Petition Date was to stop Okoa's trustee's sale. It is clear that the Debtor is trying to frustrate and delay Okoa's legitimate efforts to sell the Property.

24

**(6) The Debtor has little or no cash flow.**

64.     As reflected in the Schedules and SOFA, and as confirmed at the 341 meeting, the Debtor has no cash and no cash flow. The Debtor does not have an operating business.

**(7) The Debtor cannot meet current expenses including the payment of personal property and real estate taxes.**

65.     By the Debtor's own admission it has one bank account containing only $28. The Debtor has no cash and no source of cash flow to pay any expenses that may come due. That includes the significant property taxes that are due and owing to Maricopa County.

**(8) The Debtor has no employees.**

66.     The Debtor has no operations and no need for employees. No wages and benefits motion was filed for payments owed to any employees and no employees were listed on the schedules as creditors on account of wages due.

## Application of the *C-TC* Factors

67.     Overall, the above factors, along with all of the other circumstances surrounding this case, demonstrate that the Debtor's bankruptcy case was filed in bad faith with the sole aim of circumventing Okoa's legitimate efforts to foreclose on the Property. Given the fact that the Debtor has no operations, has no cash, and the value of its sole asset—the Property—is insufficient to pay Okoa's secured claim, let alone to fund a Plan and provide a recovery to any other creditors, it is clear that the Debtor is not motivated by a plausible or legitimate intention to reorganize and utilize the protections afforded by the Bankruptcy Code. Rather, it is an effort to obstruct Okoa's exercise of its rights and remedies and supplant the trustee's sale that had been scheduled for approximately three months as of the Petition Date with a sale process of its own design.

68.     The Debtor has transferred large sums of money to its insiders in the year preceding the Petition Date, despite the fact that its creditors have not been paid. The Debtor's neglect and

25

mismanagement has caused waste at the Property, leading to severe damage and diminution of value of its sole asset. All the while, the Debtor failed to pay its property taxes and failed to pay the insurance premiums to maintain its insurance. Indeed, the only reason the Debtor's insurance policy is still in place today is because Okoa stepped in and paid the delinquent premiums. Okoa made those payments notwithstanding the fact that (i) the broker misrepresented the amount that Okoa would be charged, (ii) the Debtor actually has a Commercial Inland Marine policy that insures the Property as a construction project, rather than a property insurance policy as previously represented, and (iii) the Debtor apparently failed to list Okoa as a loss payee on its insurance policies as it was required to do, causing the Debtor to receive a $250,000 insurance payment in March 2023 that should have been paid to Okoa. The Court should not countenance the Debtor's egregious behavior and, if the Court elects not to lift the stay as requested above, the Court should in the alternative dismiss the Debtor's case for cause pursuant to Bankruptcy Code § 1112(b)(1).

**D.      The Debtor's Bankruptcy Case Should Be Dismissed Because the Debtor is Unable to Effectuate a Plan**

69.      In addition to recognizing bad faith in filing as a basis for dismissal of a chapter 11 case, it is also widely recognized that a chapter 11 case may be dismissed where the debtor cannot effectuate a confirmable plan of reorganization. *See In re Babayoff*, 445 B.R. at 76 ("Courts recognize that cause under Section 1112(b) may be established where the record shows that the debtor cannot effectuate a plan."). "A debtor is unable to effectuate a plan where it lacks the ability to formulate a plan or to carry one out." *Id*. (internal quotation and citation omitted).

70.      Here, the Debtor has nothing to reorganize – it has no operations and no assets besides the Property, the value of which is not even sufficient to provide a full recovery to Okoa as the secured creditor, let alone to fund a plan that will pay any other creditors. The Debtor has caused significant degradation of the Property's value and has no other assets.  There is no reason

26

to add the administrative expenses associated with administering a bankruptcy case to the Debtor's balance sheet.

71.     Moreover, Bankruptcy Code § 1129(a)(3) provides that a plan may only be confirmed if such plan was proposed in good faith. As demonstrated above, the Debtor's entire bankruptcy case was filed in a bad faith attempt to prevent Okoa's foreclosure sale, despite the fact that there is no possibility of effecting a reorganization. Any plan proposed by the Debtor will lack the good faith necessary for confirmation under Bankruptcy Code § 1129(a)(3).

72.     In light of the foregoing, Okoa submits that if the Court is not inclined to grant relief from stay as requested above, dismissal of the Debtor's bankruptcy case for cause under Bankruptcy Code § 1112(b)(1) is both necessary and appropriate. Okoa further requests that if the Court dismisses the bankruptcy case, that the Court bar the Debtor from filing another bankruptcy case for a period no less than 120 days so that the Debtor cannot repeat its efforts to frustrate Okoa's exercise of its rights and remedies by filing another bankruptcy petition on the eve of the trustee's sale.

## **NOTICE**

73.     In accordance with Bankruptcy Rule 4001(a) and as proposed in the Motion to Expedite, Okoa proposes to serve notice of this Motion by overnight mail on (i) the Debtor; (ii) counsel to the Debtor; (iii) the United States Trustee; (iv) any committee appointed in this case; and (v) any interested party that has filed a notice of appearance in this bankruptcy case. Okoa submits that such notice is sufficient and no other or further notice need be provided.

74.     No prior request for the relief sought in this Motion has been made by Okoa to this or any other Court.

4864-5105-3427\5

WHEREFORE, Okoa respectfully requests that the Court enter an Order granting it relief from the automatic stay in substantially the form attached hereto as Exhibit "A", or in the alternative enter an order dismissing the case with a 120-day bar to refiling, and grant such other and further relief as the Court deems just and proper.

Dated: August 16, 2023

By: */s/ Alessandra Glorioso*
Alessandra Glorioso
Michael Galen
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 415-9200
Facsimile:  (212) 953-7201
Email: glorioso.alessandra@dorsey.com
          galen.michael@dorsey.com

*Attorneys for Okoa Capital LLC*

28

4864-5105-3427\5