| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------x<br>In re:<br><br>Diamond Elite Park LLC,<br><br>                           Debtor.<br>-------------------------------------------------------------x | Hearing Date and Time:<br>September 12, 2023 at 10:00 a.m.<br><br>Chapter 11<br><br>Case No. 23-22520 (SHL) |

**DEBTOR'S OPPOSITION TO MOTION OF SECURED LENDER FOR RELIEF FROM THE AUTOMATIC STAY OR DISMISSAL OF CHAPTER 11 CASE**

      The debtor herein, Diamond Elite Park LLC (the "Debtor"), as and for its Opposition to the motion of its secured lender, Okoa Capital LLC (, the "Lender") seeking relief from the automatic stay pursuant to 11 U.S.C. §362, or, alternatively, dismissal under 11 U.S.C. §1112 as a bad faith filing (the "Motion"), respectfully states and alleges as follows:

**Overview**

      1.     The Debtor owns a commercial property located at 9630 North 25th Avenue, Phoenix, Arizona known as "Park@25th" (the "Property") which was acquired for approximately $10 million in early 2022 for redevelopment purposes. The Lender provided acquisition financing to the Debtor in the principal amount of $6,790,000, yielding a commercially sound loan to value ratio.

      2.     After acquisition, the Debtor emptied the building of commercial tenants and obtained rezoning to develop the property for residential use. This process took longer than anticipated but is now complete. In the interim, the Property fell into foreclosure, forcing the Debtor to seek Chapter 11 relief prior to a scheduled foreclosure sale. The Chapter 11 filing was made in the good faith belief that the Property continues to retain equity and can be sold to pay-off the mortgage debt in full.

1

3. Following the commencement of the bankruptcy case, the Lender quickly moved for stay relief or dismissal only one month into the case. Notably, although the Lender argues that its secured claim exceeds the value of the Property, it has filed the Motion in such haste that no appraisal is presented, only a preliminary opinion of an appraiser which is based solely on the building's current mid-construction status without any apparent effort to analyze its potential as an income producing residential property or a reconciliation and analysis regarding the purchase price of $10 million less than two years ago.

4. Moreover, the Lender alleges bad faith in conclusory fashion based almost entirely on the facts that the Debtor is a single asset real estate entity and the Debtor defaulted in payment of the mortgage debt.

5. The Lender's focus on minor damage and graffiti caused by trespassers overlooks the undeniable fact that the redevelopment was a sound business decision that has better positioned the Property notwithstanding that construction remains incomplete.

6. The Debtor believes that value of the Property exceeds the Lender's claim and intends to pursue a vigorous sale process. Contemporaneously herewith, the Debtor is moving for the retention of a broker. The Debtor has also moved for the retention of a security company to patrol the Property and prevent trespassers and further vandalism, and thereby preserve value.

7. As the party seeking stay relief, the Lender has the burden to make a *prima facie* showing with actual evidence that cause exists for relief from the stay. As such, the Lender's Motion requires an evidentiary hearing at which the Lender carries the initial burden as to all issues. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1825 (2d Cir. 1990) (movant "has the burden to make a prima facie should that 'cause' exists for relief from the stay").

8.     Moreover, the Lender's unsupported accusations notwithstanding, the Debtor is acting in good faith in accordance with its obligations under the Bankruptcy Code and should be provided a fair and reasonable opportunity to implement its business plan in bankruptcy within 90 days of the Chapter 11 filing under Section 362(d)(3). The familiar standard for deciding stay relief under *United Savings Association v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76, 180 S.Ct. 626 (1987) ("*Timbers*") is whether a confirmable Chapter 11 plan can be achieved within a reasonable period of time.

9.     The Debtor is actively seeking to market the Property for sale and is prepared to file a plan within the 90-day deadline set by Section 362(d)(3). The Debtor recognizes the impact of Section 362(d)(3) and submits that its provisions for stay relief after 90 days without a viable plan in place forms the appropriate horizon for "reasonable time" in single asset real estate cases under *Timbers*. Indeed, some courts and commentors have contended that the provisions of Section 362(d)(3) statutorily offset any bad faith considerations in a single asset real estate case. *In re RYYZ, LLC*, 490 B.R. 29, 35 (Bankr. E.D.N.Y. 2013) ["Section 362(d)(3) provides a window of opportunity for debtors. Section 362(d)(3)'s specific, albeit nonexclusive, criteria for stay relief ought to counsel against knee-jerk motions at the outset of the case that merely parrot the elements of "bad faith," or other grounds for relief, just because the case involves single asset real estate."].

**Factual Background**

10.     As noted, the Property was acquired in January 2022. The purchase price of $9.7 million (subject to adjustments), was funded by a combination of investments totaling $3,210,000 and a mortgage in the sum of $6,790,000 issued by the Lender and secured by a Deed of Trust.

11.     The commercial tenants were removed and the Debtor cleared the building so that renovations could commence once the rezoning from commercial to residential use was obtained.

The rezoning process, although successfully completed, took longer than anticipated, and the Debtor suffered a maturity default before it could complete construction or refinance the Lender's mortgage.

12. A foreclosure sale scheduled for July 10, 2023 was stayed by the Chapter 11 filing on July 9, 2023. Less than one month later, the Lender moved for a Rule 2004 examination of the Debtor and then followed with the instant Motion. The Debtor consented to the Rule 2004 motion and has produced dozens of documents aggregating hundreds of pages of information. Additional production is being made in response to a follow-up request from the Lender, and the Rule 2004 examination of the Debtor's principal, Yehoishiah Rubin, has been tentatively scheduled for September 12, 2023.

13. The Debtor has arranged for the Property to be safeguarded by a security company through five visits every night, seven nights a week between 7:00 p.m. and 6:00 a.m. by a security patrol guard who will park in front of the Property, walk around, check doors and look for unauthorized persons on the Property, with each visit estimated to last approximately 20 minutes. An Order authorizing the retention has been noticed for presentment on September 15, 2023.

14. The Debtor intends to market and sell the Property. To that end, the Debtor has negotiated an agreement with a well-respected broker. The Debtor is fully cognizant of the 90-day period established in 11 U.S.C. §362(d)(3) in which to provide protection for the Lender and intends to file a plan consistent with the foregoing prior to the October 7, 2023 deadline.

## Legal Analysis

**A.    The Automatic Stay Generally**

15. The basic tenets of the automatic stay have been described by the Hon. Martin Glenn as follows:

> The automatic stay affords one of the fundamental debtor protections provided by the bankruptcy laws. It maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. The automatic stay is intended to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas. In this regard, the automatic stay promotes equal creditor treatment and gives the debtor a breathing spell. The automatic stay is critical to debtors because it allows them to focus on their reorganization instead of ligation.

16. *In re Residential Capital, LLC*, No. 12-12020 MG, 2012 WL 3423285, at *4–5 (Bankr. S.D.N.Y. Aug. 14, 2012) (internal quotation marks and citations omitted).

17. As the movant, the Lender carries the initial burden to demonstrate cause. *In re Keene Corp.*, 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994) ["The burden of proof on a motion to lift or modify the automatic stay under 11 U.S.C. § 362(d)(1) is a shifting one]. Only after the movant establishes cause, does the burden of proof then shift to the debtor. *See* 11 U.S.C. § 362(g)(2); *Sonnax Industries, supra,* 907 F.2d at 1285 ["If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."]. The shifting burden of proof was examined at length by the Hon. Stuart M. Bernstein in *In re Elmira Litho, Inc.*, 174 B.R. 892 (Bankr. S.D.N.Y. 1994). As Judge Bernstein explained, once the moving creditor has established the validity of its secured claim, it has the burden of proving that its position is imperiled by a potential decline in value of its collateral as a result of the automatic stay, at which point the burden shifts to the debtor to prove either that the collateral is not declining in value, or that the lender is otherwise adequately protected by an equity cushion, payments or otherwise. *Id.,* at 902-903.

**B.    Section 362(d)(1) – Lack of Adequate Protection Has Not Been Established**

18. The Lender alleges that it is not adequately protected because the Property is subject to diminution in value. As Judge Bentley explained in the context of Section 363:

5

> . . . a lender invoking 363 (e) relief needs to make a prima facie case not only as to the validity of its liens, but also that its collateral is declining in value. If the lender bears that prima facie case and satisfies it, the burden then shifts to the debtor to disprove that showing or alternatively to show that the lender is adequately protected despite a decline in the value of its collateral.
>
> Here, I don't need to address other means of adequate protection such as an equity cushion, replacement liens, or other payments. The question is just whether the value of the collateral is declining. The parties have not addressed whether the Lenders have satisfied their prima facie case on that issue, to the extent the Lenders have the burden of so proving.

*In re Golden Seahorse LLC*, 2023 WL 2472970, *7 (Bankr. S.D.N.Y. 2023).

19.    Here, the Lender has failed to meet its burden, citing only to the current condition of the Property and trying to raise issues about insurance coverage. As noted, the poor condition is a direct result of the filing coming in the middle of construction, exacerbated by minor vandalism and graffiti. A motion has been drafted to retain a security firm to provide five on-site inspections of the Property by a security guard every night, seven days a week to protect the premises. Further, among the dozens of sets of documents provided to the Lender in response to its Rule 2004 motion, the Debtor has provided copies of insurance policies in place through January 2024 covering both general liability and property damage, with a policy limit of $10 million. Copies of the certificates of insurance are collectively annexed hereto as Exhibit "A",

20.    Thus, the Debtor's submits that the Lender is adequately protected by a substantial equity cushion in Property which the Debtor believes has increased in value since the Property was acquired by reason of the rezoning. Even as the parties may dispute the equity in the Property, there has been no showing that the value is diminishing during the Chapter 11. The Debtor submits that between the retention of the security firm and protection provided through insurance, there is no serious risk of diminution.

**C.    Section 362(d)(1) – Cause Has Not Been Shown Under The Sonnax Factors**

21. Where, as here, stay relief is sought so that a pre-bankruptcy foreclosure may continue, Courts in the Second Circuit consider the so-called *Sonnax* factors in determining whether "cause" exists to lift the automatic stay:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Sonnax Industries, supra,* 907 F.2d at 1286. *See, also, In re Residential Capital, LLC, supra*, 2012 WL 3423285, at *5; *In re Worldcom, Inc.,* No. 02-13533, 2003 WL 22025051 at *8 (Bankr. S.D.N.Y. Jan. 30, 2003).

22. While the Lender claims that factors 1, 2, 7 and 12 favor vacating the stay, its analysis is severely flawed. First and foremost, the Lender mischaracterizes this case as a two-party dispute. In fact, there are nine non-insider creditors holding claims totaling over $240,000 as set forth in the Form 204 list of the 20 largest unsecured creditors. Moreover, there are investor loans exceeding $3 million which are entitled to consideration by the Court notwithstanding the Lender's efforts to ignore them altogether.

23. Taking each of the Sonnax Factors in turn, it is readily apparent that the stay should remain in place.

7

*1. Relief Will Not Result in a Complete Resolution of the Issues (Factor No. 1)*

Any request for stay relief will not result in a complete resolution of the issues. The rights of other creditors are not protected by the foreclosure action, in which the Lender seeks to proceed to sell the Property solely to satisfy its own claim, rather than to the maximize the value of the Property for all stakeholders. The stay must remain permit a sale through a marketing program that values the Property as an income producing asset and not merely a partially renovated structure.

*2. Lifting the Automatic Stay Is Connected to and Will Interfere with the Debtor's Chapter 11 Case (Factor No. 2)*

Factor 2 addresses whether the litigation is sufficiently related to the bankruptcy case. In describing the type of actions unrelated to the bankruptcy proceeding in which stay relief might be warranted, Congress provided the following examples:

> [A] divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case and should not be stayed.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-44 (1977); S Rep. No. 95-989, 95th Cong., 2d Sess. 52 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6300.

In sharp contrast to these legislative examples, the issues presented in the foreclosure action constitute core bankruptcy matters because they involve resolution of claims and counterclaims by or against the Debtor (28 U.S.C. §157(b)(2)(C)); implicate the use and sale of property belonging to the Debtor's bankruptcy estate (28 U.S.C. §157(b)(2)(M) and (N)); and involve the liquidation of assets of the estate and adjustment of debtor-creditor relationships under 28 U.S.C. §157(b)(2)(O).

8

*3. The Other Proceeding Does Not Involve the Debtor as a Fiduciary (Factor No. 3)*

The Lender does not assert that the Debtor is a fiduciary. Therefore, the third *Sonnax* Factor weighs against lifting the stay.

*4. There is No Need for the Specialized Tribunal (Factor No. 4)*

Factor 4, considering whether the issues presented need to be tried in a specialized court, also provides no assistance to the Lender. Questions involving a secured claim against the Property, while governed by state law, present "meat and potatoes" issues for the Bankruptcy Court. As such, the state court does not have greater expertise in deciding the questions presented than the Bankruptcy Court, making this case readily distinguishable from those involving specialized areas of law, such as domestic relations issues (*See, e.g.*, *In re Newman*, 196 B.R. 700, 703 (Bankr. S.D.N.Y. 1996); *Robbins v. Robbins*, 964 F.2d 342 (4th Cir. 1992), or a specialized forum (*See In re Marketxt Holdings Corp.*, 428 B.R. 579 (S.D.N.Y. 2010) (deferring to arbitration panel specifically established by the National Association of Securities Dealers to address the issues presented)).

*5. No Insurer Has Assumed Responsibility for the Action (Factor No. 5)*

No insurer is involved in the foreclosure action here. As a result, the fifth *Sonnax* Factor does not support relief from the stay.

*6. The State Court Action does not Primarily Involve Third Parties (Factor No. 6)*

The purpose behind the Sixth Factor has been explained as follows:

> A court may lift a stay for actions which bear little relation to the bankruptcy case. *See* 2 Collier on Bankruptcy ¶ 362.07, at 362-50 (15th ed. 1982). Such lack of connection with the title 11 case occurs where the action essentially involves third parties, the debtor functions only as a bailee or conduit for the goods or proceeds in question, and resolution of the issue in no way frustrates the orderly distribution of assets of the estate.

9

*In re Mego Intl, Inc.*, 28 B.R. 324 (Bankr. S.D.N.Y. 1983). Here, there foreclosure action does not involve third parties, but instead directly concerns the Debtor and its sole asset, the Property. Thus, Factor 6 supports resolving the disputes between the Debtor and the Lender concerning the Lender's secured claim in the Bankruptcy Court.

*7. Litigation of the Foreclosure Would Prejudice the Interests of Other Creditors (Factor No. 7)*

As with the first Factor, it is indisputable that the interests of other creditors are best served by denying the Motion for stay relief. Unlike the Chapter 11 case, none of the Debtor's other creditors has standing to be heard in the foreclosure action. The disposition of the Debtor's Property must be resolved in the context of the bankruptcy case where this Court can insure that it is available for the benefit of all creditors, and not just the Lender.

Without the protection of the automatic stay, the Debtor cannot realize going concern value from the Property. Accordingly, the Chapter 11 case is hindered and negatively impacted by permitting the foreclosure sale to proceed. Contrary to the Lender's argument, the seventh *Sonnax* Factor thus weighs heavily against relief from stay.

*8. Whether the Lender's Claim is Subject to Equitable Subordination (Factor No. 8)*

The equitable subordination of the Lender's claim has not been proposed. However, in the event that evidence is presented in support of such a challenge, this Factor favors litigating all issues relating to the Lender's claim through the Chapter 11 process, where the provisions of 11 U.S.C. §510 can be fully analyzed and applied as may be just and proper.

*9. The Lender's success in the Foreclosure Action Will Not Lead to an Avoidable Judicial Lien (Factor No. 9)*

Factor 9 is not applicable, because the avoidance of liens is not an issue here. Thus, the Lender cannot rely on Factor 9.

*10. The Interests of Judicial Economy and Economical Resolution of the Actions Are Best Served by Maintaining the Automatic Stay (Factors No. 10 and 11)*

The question of judicial economy is focused on choosing between two parallel proceedings "to save judicial resources, prevent duplicative litigation, and avoid potentially inconsistent results." *In re Henderson*, 352 B.R. 439 (Bankr. N.D.Texas 2006). Here, this is an easy choice as the Bankruptcy Court has the unquestioned core jurisdiction and statutory authority to oversee the disposition of the Property through a Section 363 sale for the benefit of all creditors, not just the Lender.

*11. The Balance of Harms Favors Maintaining the Automatic Stay (Factor No. 12)*

The twelfth *Sonnax* Factor, the balance of the harms, also weighs in favor of denial of the Motion. Permitting the foreclosure sale to proceed harms the general creditors, as their recovery will be substantially diminished, if not eliminated entirely by a foreclosure sale, rather than a Section 363 marketing and sale process in conjunction with a Chapter 11 plan confirmation.

**D.    Section 362(d)(2) – No Showing Has Been Made That the Debtor and Hotel are Incapable of Reorganizing**

24.    The Lender also seeks to vacate the stay under Section 362(d)(2), which permits the stay to be modified with respect to specific property only if "(A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization."

25.    At this point, it cannot be said that the Debtor's interest in the Property has no equity value. Section 362(g) places the burden of proof as to equity, or the lack thereof, squarely on the Lender. In this instance, the Lender has presented only a declaration from an appraiser containing a "preliminary valuation" based upon the value of the Property as an unoccupied building under construction, without any analysis of the income producing value of the Property. Notably, the Lender promised to supplement the declaration with a formal appraisal but has failed

11

to do so in the ensuing three weeks since the Motion was filing, strongly suggesting that the actual appraisal that it commissioned may not support its contentions. The Debtor reserves the right to supplement this Opposition in the event a formal appraiser is ultimately produced.

26.    However, even if a lack of equity is actually established, the inquiry does not end there, as the Lender must still establish the second element or prong under Section 362(d)(2), that the Property is "not necessary to an effective reorganization."

27.    Clearly, continued ownership of the Property is necessary for any reorganization of the Debtor. Whether an effective reorganization can be achieved is more subjective, but at this very early stage, the Debtor should be given the benefit of all reasonable inferences consistent with *Timbers*, where the Supreme Court held that the Debtor is entitled to latitude under 11 U.S.C. §362(d)(2) in determining whether a confirmable Chapter 11 plan can be filed within a reasonable time. *Supra*, 484 U.S. at 375-76. Moreover, the Supreme Court also duly noted that when a motion for stay relief is made in the early stages of a bankruptcy case the courts "demand less detailed showings" of reorganization prospects. *Id.,* at 376.

28.    Under *RYYZ, supra,* as the deadline fixed by Section 362(d)(3) has not yet expired, the Debtor is well within the "reasonable time" allotted by the Supreme Court in *Timbers* for proceeding with a plan. Thus, cause under Section 362(d)(2) has not been established.

    E.    **The Petition Was Filed In Good Faith**

29.    In its Motion, the Lender seeks the alternative relief of dismiss based upon a mechanical application of the factors identified by the Second Circuit Court of Appeals in two seminal decisions, *In re Cohoes Industrial Terminal Inc.*, 931 F.2d 222 (2d Cir. 1991) and *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir. 1997). However, as the Hon. Nancy Hershey Lord has cautioned:

> In applying the *C–TC* factors, the Court will not engage in a mechanical counting exercise" to determine whether the Debtor filed this bankruptcy case in bad faith. These factors are to be considered in the context of the totality of the circumstances and not in a vacuum. No one factor is determinative of good faith and, it is the totality of circumstances, rather than any single factor, that will determine whether good faith exists.

*In re Consol. Distributors, Inc.*, 2013 WL 3929851, at *7 (Bankr. E.D.N.Y. July 23, 2013) (internal quotation marks and citations omitted). Judge Lord's comments are particularly germane here, where the Debtor is a single asset real estate holder and not an operating company. Otherwise, *C-TC* factors would "automatically doom" almost every single asset case from the outset. *In re 68 West 127th Street LLC, supra,* 285 BR. at 846. It is for that reason that courts have recognized that the *C-TC* factors "do no more than assist the [Court's] exercise of discretion in deciding when a debtor has improperly invoked the Bankruptcy Code." *Id*.

30. Moreover, in the Second Circuit "it is settled that dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." *In re 300 Washington St. LLC*, 528 B.R. 534, 551 (Bankr. E.D.N.Y. 2015) (internal quotation marks and citations omitted).

31. In performing a good faith analysis, it is also important to bear in mind the comments by the Court in *In re Clinton Centrifuge, Inc.*, 72 B.R. 900, 905 (Bankr. E.D.Pa. 1987), which explained that:

> In engrafting the good faith requirement into the Code, courts must be careful not to upset the delicate balance of interests fashioned by Congress under chapter 11. Moreover, to the extent that the concept of good faith exists independent of other Code provisions (such as adequate protection), courts must be vigilant to apply this concept in ways consistent with the legislative policy decisions embodied in these other [Code] enactments. Thus, in evaluating a debtor's good faith, the court's only inquiry is to determine whether the debtor seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended. When a debtor is motivated by plausible legitimate reorganization (or liquidation) purposes

13

and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.

32. Here, the Lender argues that the petition should be dismissed as a two-party dispute where the petition was filed on the eve of a foreclosure for the sole purpose of delay. That the Lender is unhappy that a petition was filed on the eve of a foreclosure sale is not a proper basis for dismissal. As one court found:

> The Creditor ... has not proven by a preponderance of the evidence that the Debtor filed its chapter 11 case as a litigation tactic for the purpose of stalling the Creditor's state court rights, or to open the door for expanded legal sparring of state court issues in bankruptcy court. Its bad faith arguments are quite conclusory and, in the judgment of the Court, manifest its understandable "frustration" with the Debtor's bankruptcy filing rather than a showing of the Debtor's "abuse of judicial purpose." Simply checking off these factors on the list does not prove bad faith.

*In re R & G Properties, Inc.*, 2009 WL 1076703, at *2 (Bankr. D. Vt. Apr. 16, 2009) (internal citations omitted).

33. The Lender wrongly infers that the sole purpose of the filing was to interfere with the Lender's rights. Nothing could be further from the truth. The Debtor believes that the Property can be fully developed and sold for an amount sufficient to satisfy the Lender's mortgage debt. In view of this, the Chapter 11 was filed for entirely legitimate legal and business purposes. These legitimate goals do not constitute a bad faith filing under any fair reading of governing criteria, particularly in light of the existence of other creditors. Indeed, the Lender ignores the other creditors whose interests are worthy of consideration and fails to analyze the implications of Section 362(d)(3), which requires a single asset real estate debtor to file a plan within 90 days.

WHEREFORE, for all of the reasons set forth above, the Debtor respectfully submits that the Motion should be denied in its entirety.

Dated: New York, New York
      September 8, 2023

                              Goldberg Weprin Finkel Goldstein LLP
                              Attorneys for the Debtor
                              125 Park Avenue, 12th Floor
                              New York, NY 10017

                              By:    /s/ Kevin J. Nash, Esq.