UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                                                            Chapter 11

Diamond Elite Park LLC,                                              Case No. 23-22520 (SHL)

                                          Debtor.
---------------------------------------------------------x

# DEBTOR'S DISCLOSURE STATEMENT

## I.

## INTRODUCTION

Diamond Elite Park LLC. (the "Debtor") has filed a Chapter 11 liquidating plan of reorganization (as may be amended, modified or supplemented, the "Plan")[1] with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") contemporaneously herewith. The Plan contemplates a sale of the Debtor's commercial property located at 9630 North 25th Avenue, Phoenix, Arizona (the "Property") and provides for the distribution of the proceeds of the Sale to creditors holding allowed claims.

The Debtor submits this Disclosure Statement pursuant to 11 U.S.C. §1125 (as may be amended, modified or supplemented, the "Disclosure Statement") in support of the Plan to all known holders of Claims against, or Interests in the Debtor in order to adequately disclose information deemed to be material, important and necessary for creditors to make a reasonably informed decision whether to accept or reject the Plan.

A.    **Summary of the Plan**

The Debtor's intent is to sell the Property at the best price possible under a robust auction process, free and clear of all claims, liens, taxes and encumbrances, pursuant to 11 U.S.C. § 363(b)

---

[1] Unless otherwise defined, all capitalized terms have the meanings ascribed to them in the Plan.

1

and (f), as permitted by 11 U.S.C. §§ 1123(a)(5)(D) and 1123(b)(4). In furtherance of this goal, the Debtor has moved to retain Northgate Real Estate Group ("Northgate"), as broker. Objections to the terms of the retention was interposed by the Lender and remain under discussion.

The Debtor's prime objective is to obtain approval of the ultimate sale of the Property in an amount sufficient to pay the mortgage, real estate taxes, administrative expenses of the Chapter 11 case, and generate residual monies to fund a *pro rata* distribution to general unsecured creditors. The amount of the distributions will, of course, depend on the final sale price.

The Debtor has already received a letter of intent from a third party, Strategic Real Estate Management LLC, offering to act as a stalking horse buyer based on an initial bid of $7 million. A copy of the letter of intent is annexed as Exhibit "A" to the Plan. the Debtor hopes and intends to better this offer through a coordinated marketing campaign overseen by the broker.

The Property is encumbered by a mortgage lien held by Okoa Capital LLC (the "Lender") in the original principal amount of $6,790,000. The Lender has filed a proof of claim alleging it is due a total sum of $8,134,420 as of August 18, 2023, which will be subject to review and reconciliation and likely objection as to default interest and other charges. The Property is also subject to real estate taxes totaling $376,048.32 as of the July 9, 2023 petition date.

The auction will be conducted pursuant to Court approved bid procedures based upon a separate application to be filed by the Debtor (the "Bid Procedures Order"). The terms of the Bid Procedures Order shall be negotiated with the Lender and shall provide for the payment of incentives to the stalking horse bidder, including a break-up fee to be paid from the sale proceeds, as well as providing for the retention of credit bid rights by the Lender pursuant to 11 U.S.C. §363(k). The Auction is anticipated to occur sometime in December based upon the sixty (60) day marketing period.

B. **The Scope of this Disclosure Statement**

This Disclosure Statement has been prepared by the Debtor in consultation with its attorneys. As noted above, the purpose of this Disclosure Statement is to provide creditors and other parties-in-interest with relevant information regarding the Debtor's current financial affairs to make an informed decision on whether to vote in favor of the Plan.

The Disclosure Statement has been approved by the Bankruptcy Court as containing adequate information within the meaning of 11 U.S.C. §1125. The Bankruptcy Court's approval of the Disclosure Statement, however, does not constitute an endorsement of the Plan. Instead, creditors are urged to review the Plan in its entirety before voting.

C. **The Confirmation Hearing**

The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan on _____ __, 2023 at 10:00 a.m., prevailing New York Time. The hearing will be conducted by the Honorable Sean Lane, at the United States Bankruptcy Court in White Plains, New York via the Court's eCourt Appearance through the Court's website at: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) or (b) of the Bankruptcy Code have been satisfied in order to permit confirmation and Bankruptcy Court approval of the Plan. Bankruptcy Court approval and confirmation of the Plan makes the Plan binding upon the Debtor and all of the Debtor's creditors and other parties-in-interest.

The Bankruptcy Court has entered an Order (the "<u>Scheduling Order</u>") scheduling the confirmation hearing and directing that objections, if any, shall be filed in writing through the Court's ECF system on or before _____ __, 2023. The Scheduling Order accompanies the

Plan and Disclosure Statement, and creditors are advised to review the dates and deadlines contained therein for voting and objections.

## II.

## **VOTING**

For the Plan to be accepted on a consensual basis, all impaired classes of creditors must vote to accept the Plan or be deemed to accept the Plan as a matter of law. Acceptance of the Plan is based upon the actual votes cast by each class of creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims of those creditors in the particular class who actually vote on the Plan. Even if the Plan is not approved by all voting classes of impaired claims, the Debtor can still confirm the Plan under the cramdown provisions of 11 U.S.C. §1129(b).

In this case, Class 1, the secured Claim of the Lender and Class 2, the claims of all unsecured creditors consisting of contractors, vendors and investors are impaired and eligible to vote on the Plan. A ballot for acceptance or rejection of the Plan accompanies the Plan. The ballot should be completed by each creditor and returned before the voting deadline by either overnight mail or email to Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash, 125 Park Avenue, 12th Floor, New York, New York 10017. Facsimile: (212) 730-4518. E-mail: KNash@GWFGlaw.com. In order to be counted, a ballot must be actually received on or before_____, 2023 at 5:00 p.m. (prevailing New York time) (the "Voting Deadline"). Only timely submitted ballots will be counted towards confirmation of the Plan.

III.

**REPRESENTATIONS**

NO REPRESENTATION CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS CONTRARY TO THE DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY CREDITORS. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT ALTHOUGH GREAT EFFORTS HAVE BEEN MADE BY THE DEBTOR AND ITS COUNSEL TO PROVIDE CREDITORS WITH ACCURATE AND UPDATED INFORMATION.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. WHILE THE DEBTOR BELIEVES THAT THE SUMMARY IS FAIR AND ACCURATE, SUCH SUMMARY IS QUALIFIED TO THE EXTENT THAT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN. **IF ANY INCONSISTENCIES EXIST BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PLAN SHALL CONTROL.**

IV.

**DISCLAIMERS**

**ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

**CERTAIN STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING FORWARD-LOOKING STATEMENTS, ARE BASED ON ESTIMATES AND ASSUMPTIONS RELATING TO THE SALE OF THE PROPERTY. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.**

**THE INFORMATION IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE USED BY ANY PERSON OR ENTITY FOR ANY OTHER PURPOSE. THE FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE DESCRIPTION OF THE DEBTOR, THE PROPERTY AND EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASES, HAS BEEN OBTAINED FROM VARIOUS DOCUMENTS, AGREEMENTS AND PRIOR COURT FILINGS. NEITHER THE DEBTOR NOR ANY OTHER PARTY MAKE ANY REPRESENTATION OR WARRANTY REGARDING SUCH INFORMATION.**

**THE TERMS OF THE PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY WITH THE SUMMARIES IN THIS DISCLOSURE STATEMENT. ALL EXHIBITS TO**

**THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.**

V.

**RELEVANT BACKGROUND INFORMATION**

A.    **Significant Events Leading to the Chapter 11 Filing**

The Debtor acquired the Property for approximately $9.7 million in early 2022 through the acquisition loan in the principal sum of $6,790,000 from the Lender, plus loans and capital contributions of $3,210,000.  At the time, the Property was occupied by commercial tenants, and the Debtor sought to redevelop the Property for residential use.

During the ensuing months, the Property was emptied of commercial tenants while the Debtor sought and obtained rezoning to residential use.  Although reserves were established from the original loan proceeds to pay the Lender, the Debtor exhausted the reserves because of delays in obtaining the rezoning.  Accordingly, the redevelopment took much longer than anticipated, and the costs of renovations exceeded projections.  All of this resulted in a mortgage default being declared on February 2, 2023 and the commencement of ensuing foreclosure proceedings, which triggered the filing of the Chapter 11 case on July 9, 2023, the day before the foreclosure sale.

B.    **Significant Events During the Chapter 11 Case.**

Following the Chapter 11 filing, the Lender quickly moved for discovery pursuant to Bankruptcy Rule 2014 [ECF No. 11], and then the Lender filed a motion seeking relief from the automatic stay or, alternatively, to dismiss the Chapter 11 case [ECF No. 12].  The Debtor turned over numerous documents to the Lender to comply with discovery obligations, and continues to provide additional information sought in follow up requests.

The Debtor filed opposition to the Lender's motion seeking stay relief [ECF No. 18], which has been adjourned pending the filing of this plan and the start of a sale and marketing process.

The Lender has alleged that the Property is worth less than $3 million, notwithstanding that the Property was purchased for almost $10 million 18 months ago. The Court has noted at two interim hearings that the Lender's due diligence valued the Property at more than $7 million, and that there has been no showing that the Property has declined in value as precipitously as the Lender would have it. The Court has indicated that it is willing to permit the Debtor to market the Property for sale through the Plan process to test going concern value, while keeping open the possibility of an evidentiary hearing on valuation if necessary. The Debtor believes that the LOI from the proposed stalking horse undermines the Lender's appraisal and should blunt consideration of the lift stay motion until after the Marketing Period has ended.

In response to concerns raised by the Lender about continuing vandalism, the Debtor has retained a security company to patrol the Property and physically inspect all access points five times a day, pursuant to Order entered September 19, 2023 [ECF No. 22].

The Lender also raised questions of whether the Debtor's insurance coverage is subject to cancellation on the ground that the construction has ceased. In response, the Debtor has arranged for monies to be provided by the current investors to fund repairs of the vandalism, which will both make the Property more presentable for marketing, and meet the requirements for ongoing reconstruction at the Property for insurance purposes. The Debtor is also seeking a "vacant building" policy to provide additional insurance coverage.

Most recently, the Debtor noticed a proposed order for the retention of Northgate to act as broker [ECF No. 23], to which the Lender filed an objection [ECF No. 25]. The Debtor intends to negotiate the terms of the proposed retention with the Lender in the hope that marketing can commence as soon as possible.

7

# VI.

## TREATMENT OF CLAIMS AND INTERESTS

The table below briefly summarizes the specific classification and treatment of Claims and Interests under the Plan. As provided in the Plan, U.S. Trustee Fees, Administrative Claims, Professional Fee Claims, and Real Estate Tax Claims have not been classified and are excluded from the following Classes in accordance with Section 1123(a)(1) of the Bankruptcy Code:

**A.    Unclassified Claims**

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims, Priority Tax Claims or Bankruptcy Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9) from the monies on hand in the Confirmation Fund.

**Administrative Expenses**. Administrative Expenses consist of Professional Fees and any allowed unpaid fees, costs and expenses incurred by the Debtor in maintaining the Property during the Chapter 11 case. To the extent that any Administrative Expenses have not been paid prior to the Effective Date, each holder of an Administrative Claim shall be paid from the funds on deposit in the Confirmation Account.

**Professional Fee Claims**. All requests for allowance of Professional Fee Claims shall be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. §330. After notice and a hearing, the allowed amounts of such Professional Fee Claims shall be paid by the Disbursing Agent from the Confirmation Fund upon entry of an appropriate Order of the Bankruptcy Court awarding same.

**Priority Claims**. Maricopa County has filed a proof of a claim for unpaid real estate taxes in the amount of $376,046.32. Any open and outstanding real estate taxes owed by the Debtor shall be treated as Priority Tax Claims and shall be paid at the Closing.

8

The Thin Blue Line Consultants LLC has filed an amended proof of claim in the amount of $58,763, asserting that it is owed fees for services rendered to the Debtor. As part of this amended claim, a priority in the amount of $15,150 is asserted for unpaid wages, salaries or commissions pursuant to 11 U.S.C. §507(a)(4). The Debtor intends to object and seek to reclassify the entire claim as Class 2 general unsecured, as the wage priority is available only to individuals and not limited liability companies. To the extent that a portion of the claim is granted priority status, it will be paid in full at the Closing.

**U.S. Trustee Fees**. To the extent not otherwise paid, the Debtor shall pay all accrued U.S. Trustee Fees, together with any interest thereon, from monies held in the Confirmation Fund. Bankruptcy Fees, together with any applicable interest, shall be paid until the Chapter 11 case is closed by entry of a Final Decree.

B.      **Classification And Treatment Of Claims And Interests**

**Classification of Claims and Interests**. The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions and standards of the Bankruptcy Code.

**Summary**. The categories listed below classify Claims and Equity Interest against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Lender | Potentially no, if the Sale generates sufficient funds to pay this Class in full | Yes |
| Class 2 | General Unsecured Claims | Yes | Yes |
| Class 3 | Equity Interest Holders | N/A | N/A |

**Class 1 –Secured Claim of the Lender**. Class 1 consists of the allowed Secured Claim of the Lender in the original principal sum of $6,790,000 plus accrued interest and other permitted

9

charges. The Lender has filed a proof of claim alleging it is due a total sum of $8,134,420 as of August 18, 2023, which will be the subject of review and reconciliation and likely objection to various aspects of the debt.

**Treatment:** The Allowed Class 1 Claim shall be paid from Available Cash on the Effective Date, after payment of allowed administrative expenses and real estate taxes, up to the amount of its claim as agreed between the parties or determined by the Court. To the extent that the Debtor's objections to the Lender's claim have not been resolved as of the Effective Date, the undisputed portion of the claim shall be paid, and a Disputed Claim Reserve shall be established at Closing in an amount equal to the disputed portion of the claim pending Bankruptcy Court determination thereof.

**Voting** Class 1 Claim is potentially impaired depending on the final purchase price for the Property and, thus, the Class 1 Claimant is entitled to vote.

**Class 2 – General Unsecured Claims.** Class 2 consists of the Allowed General Unsecured Claims.

**Treatment** On the Effective Date, each holder of an Allowed Class 2 General Unsecured Claim shall be paid a *pro rata* share of residual Available Cash, up to the 100% of its Allowed Class 2 Claim. The bar date for filing claims has not yet been fixed, but based upon its schedules, the Debtor estimates that Allowed Class 2 claims may total as much as $8.5 million.

**Voting** Class 2 is potentially impaired, depending on the final purchase price for the Property.

**Class 3 – Equity Interests.** Class 3 consists of the respective membership interests of the equity interest holders in the Debtor.

**Treatment.** The pre-petition equity and membership interests in the Debtor shall be cancelled following the Closing on the Sale, likely without any distribution, unless a surplus arises.

**Voting**  The Class 3 claims are not eligible to vote by reason of their insider status.

C.      **Means For Implementing The Plan**

**Implementation.** The Plan and distributions provided herein shall be implemented through the Sale in accordance with the Bid Procedures Order. The Confirmation Order shall constitute an order of the Bankruptcy Court authorizing the Debtor for title purposes, on the occurrence of the Effective Date, to sell the Property pursuant to 11 U.S.C. §363(b) and (f) for an approved purchase price.

The Confirmation Order shall authorize the Debtor to convey title to the Property pursuant to Sections 363(f), 1123(a)(5)(D) and 1141(a) and (c) of the Bankruptcy Code, free and clear of all Liens, Claims, Encumbrances or interests (other than permitted encumbrances, if any, specified in any APA executed by the designated purchaser), to a designated purchaser.

**Post-Closing Date Transactions.** At or after the Closing, the Disbursing Agent, on behalf of the Debtor, is hereby authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the transfer of the Property, including the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree.

**Transfer of Assets.** On the Closing Date, title to the Property shall be transferred to the designated purchaser pursuant to and in furtherance of this Plan by means of the following:

      a.      a Bargain and Sale Deed to the Property in form and substance reasonably

11

acceptable to the designated purchaser to be recorded in the appropriate register's office (the "Deed"), together with any and all City of Phoenix, Maricopa County or State of Ariona closing documents, including all state and local real property transfer tax returns and any and all affidavits, certificates and other documents which are usual and customary to facilitate a sale of real property in the City of Phoenix; and

      b.    a Bill of Sale, in form and substance reasonably acceptable to the designated purchaser, transferring all personal property of the Debtor used in or useful to the operation and maintenance of the Property.

**Transfer Tax Exemption.**  To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, the Sale of the Property shall be exempt from the payment of transfer, stamp, deed, mortgage recording or similar taxes, since all of the transactions are being done, and constitute a "transfer under and in furtherance of a confirmed plan of reorganization" in bankruptcy.

**Post-Confirmation Stays/Injunctions**.  All stays pursuant to Section 362 of the Bankruptcy Code shall remain in full force and effect until the close of the bankruptcy case and entry of a Final Decree.  All Creditors who hold, have held, or may hold a Claim or Claims against the Debtor are permanently enjoined on and after the Confirmation Date from (i) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or Order against the Property; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Property; and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Property.

**Effect of Confirmation**.  Except for the rights conferred under this Plan, any and all persons or entities who or which hold Claims against the Debtor are hereby permanently and forever enjoined from instituting any action or proceeding whatsoever in law or equity relating to any and all prior transactions involving or relating to the Debtor or the Property.

**D.      Payment Of Dividends**

**Distributions.** The Disbursing Agent shall pay all required distributions to Creditors in accordance with the terms of the Plan on the Effective Date.

**Procedures for Treating and Resolving Disputed Claims**.  Objections to Claims shall be filed prior to the Claims Objection Date.  In the event that a claim is a Disputed Claim as of the date a distribution is to be made hereunder, the Disbursing Agent shall remit the full amount of the undisputed portion of the claim, and establish a Disputed Claim Reserve, to be held unless and until objections to the Disputed Claim have been settled or withdrawn or have been determined by a Final Order.  If the Disputed Claim is eventually allowed, in whole or part, it shall be satisfied from the Disputed Claim Reserve.  If the Disputed Claim is eventually disallowed, in whole or in part, the disallowed portion of the claim shall be released from the Disputed Claim Reserve Fund and returned to the Reorganized Debtor for redistribution in accordance with the terms hereof.

**Unclaimed Distribution**     In the event any creditor fails to claim any distribution within one-hundred eighty (180) days from the date of issuance, such creditor shall forfeit all rights thereto and the distribution shall revert to the Reorganized Debtor for redistribution in accordance with the terms hereof.

**E.    Executory Contracts**

There are currently no executory contracts or unexpired leases. Out of an abundance of caution, on the Confirmation Date, all executory contracts and unexpired leases shall be deemed assumed by the Debtor unless otherwise specified prior to the Confirmation Hearing.

**F.    Modification Of The Plan**

The Debtor reserves the right to modify the Plan in accordance with §1127 of the Bankruptcy Code as may be applicable, upon proper application after notice and a hearing.

**G.    Conditions Precedent To The Effective Date Of The Plan**

a.    Confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court;

b.    The Confirmation Order shall have become a Final Order, unless the Bankruptcy Court waives the period set forth in Bankruptcy Rule 6004(h);

c.    The Closing Date shall have occurred, the purchase price received by the Debtor, and title to the Property shall have been conveyed to the designated purchaser in accordance with this Plan and the Confirmation Order; and

d.    There shall not be in effect on the Effective Date any Order entered by a court of competent jurisdiction staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

**H.    Retention Of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction over the following matters: (i) consideration of any modification of the Plan under §1127 of the Bankruptcy Code; (ii) resolve all matters arising under or relating to the Plan, including, without limitation, the approval, enforcement, and interpretation of any issues or disputes relating to the Sale of the Property or the post-confirmation Closing thereon; (iii) to hear and determine all controversies, suits and disputes that may arise in

14

connection with the interpretation or enforcement of the Plan; (iv) to determine any objections to Claims; (v) to hear and determine all requests and applications for compensation and/or reimbursement of expenses which may be filed by the Debtor's counsel; (vi) to consider any other matters to aid in the implementation of the Plan; and (vii) to issue a Final Decree.

## VII.

## CONFIRMATION REQUIREMENTS

At the Confirmation Hearing, the Debtor will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. The most germane requirements of Section 1129 of the Bankruptcy Code are as follows:

(a)     The Plan complies with the applicable provisions of the Bankruptcy Code;

(b)     The Debtors have complied with the applicable provisions of the Bankruptcy Code;

(c)     The Plan has been proposed in good faith and not by any means forbidden by law;

(d)     The Plan is feasible; and

(e)     The Plan meets the "Best Interest" test.

**1.      Feasibility**

The Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization. Because the Plan provides and contemplates the Sale of the Property under a transparent marketing and auction process, the Debtor submits that feasibility will be easily established, particularly since the Lender retains credit bid rights. Here, the Plan contemplates the liquidation of the Property which can generate a purchase price to pay Allowed Claims, thereby meeting the feasibility test.

15

## 2. Best Interests Test

With respect to each impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of an Allowed Claim or Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. Here, the Plan is designed to maximize the return to creditors from a Sale and provides important transfer tax exemptions, without incurring the costs of a Chapter 7 case. By comparison, a sale of the Property in Chapter 7 would generate not maximum value, since the Transfer Tax exemption is only available in Chapter 11. Moreover, the proceeds of a sale in Chapter 7 would be further reduced by the additional administrative expenses of liquidation, including the commissions of the Chapter 7 trustee and the fees of the trustee's professional. For these reasons, the Plan easily meets the Best Interests Test.

Dated: New York, New York
October 6, 2023

| Diamond Elite Park LLC | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP |
| --- | --- |
| | Attorneys for the Debtor |
| | 125 Park Avenue, 12th Floor |
| | New York, NY 10017 |

By: /s/ David Goldwasser
    David Goldwasser
    Vice President

By: /s/ Kevin J. Nash
    Kevin J. Nash Esq.