UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Diamond Elite Park LLC,<br><br>         Debtor. | Chapter 11<br><br>Case No. 23-22520 (SHL) |
| Diamond Elite Park LLC,<br><br>         Debtor-Plaintiff,<br><br>    -against-<br><br>Strategic Real Estate Management LLC; and;<br>Goldberg Weprin Finkel Goldstein LLP<br>solely in its capacity as Escrow Agent,<br><br>         Defendants. | Adv. Pro. No. |

**DEBTOR'S COMPLAINT TO RECOVER THE CONTRACT DEPOSIT**

Diamond Elite Park LLC, the plaintiff and debtor herein (the "Debtor"), by and through its attorneys, Bronson Law Offices, PC, as and for its complaint against the defendants Strategic Real Estate Management LLC (the "Stalking Horse") and the Debtor's prior counsel Goldberg Weprin Finkel Goldstein LLP, solely in its capacity as escrow agent (the "Escrow Agent"), (collectively, the "Defendants"), respectfully avers as follows:

**I. Preliminary Statement**

1.  This is an adversary proceeding brought by the Debtor in relation to a failed sale of the Debtor's commercial property located at 9630 North 25th Avenue, Phoenix, Arizona (the "Property") wherein the Stalking Horse, entered into a contract with the Debtor (the "Stalking Horse Contract"), defaulted on its obligations thereunder, prematurely and improperly terminated the Stalking Horse Contract and ultimately failed to close the transaction.

1

2. Pursuant to the Stalking Horse Contract, the Stalking Horse was obligated to tender a total good faith deposit of $500,000 to the Debtor, of which the sum of $350,000 was funded, and the balance of the deposit was to be funded on the entry of the order approving the sale. The Debtor should receive the Good Faith Deposit as liquidated damages because the Stalking Horse failed to close the transaction, subject to the rights of the Debtor's secured lender, Okoa Capital LLC, pursuant to Stipulation that was "So Ordered" on March 1, 2024. The partial deposit of $350,000 tendered by the Stalking Horse is currently being held in escrow by the Escrow Agent".

3. Accordingly, the Debtor is now filing this adversary proceeding to obtain (i) an order of the Court requiring the release and turnover of the existing contract deposit of $350,000 from escrow; and (ii) judgment against the Stalking Horse for the additional sum of $150,000 of the Good Faith Deposit and (iii) an order of court directing the Stalking Horse to immediately pay the remaining amount of the required deposit of $150,000 to the Debtor.

## II.    JURISDICTION

4. The Bankruptcy Court has constitutional authority to enter a final judgment in this adversary proceeding as a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (N) and (O). The Bankruptcy Court also has jurisdiction over this matter based on the jurisdictional reservations contained in the Stalking Horse Contract pursuant to which "[a]ny dispute, claim or action arising in connection with this Contract shall be adjudicated by the Bankruptcy Court." *See* Stalking Horse Contract § 25.11.

## III.    PARTIES

5. The Debtor is a New York limited liability company having offices in Spring Valley, New York. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy

Code on July 9, 2023, and therefore has the requisite power and authority to institute this adversary proceeding as a debtor-in-possession pursuant to 11 U.S.C. §§ 323, 1107 and 1108.

6. Upon information and belief, the Stalking Horse is an Arizona limited liability company which has offices in Monsey, New York.

7. Upon information and belief, Escrow Agent is a limited liability partnership which operates a law firm which has offices in New York, New York.

### IV.    FACTS COMMON TO ALL CAUSES OF ACTION

8. Following defaults under its loan with its senior secured lender, Debtor commenced this Chapter 11 case on July 9, 2023 (the "Petition Date"). As of the Petition Date, the Debtor owned the Property, which was vacant and was being renovated for residential use. The Debtor sought chapter 11 relief with the goal of selling the Property in bankruptcy.

9. On November 6, 2023, the Stalking Horse Contract entered into a contract [ECF No. 40, Ex. A] with the Debtor to purchase the Debtor's Property (defined below), for the sum of $7,000,000, including a total deposit of $500,000 (the "Deposit") to be funded in two payments. A copy of the Stalking Horse Contract is attached hereto as "**Exhibit A**".

10. The Stalking Horse tendered a partial deposit in the amount of $350,000 which is being held in escrow by the Escrow Agent pursuant to section 16 of the Staling Horse Contract.

11. Pursuant to Section 3.1(a) of the Stalking Horse Contract, the Stalking Horse was obligated to tender the remaining balance of the Deposit in the amount of $150,000 upon entry of an order of the Bankruptcy Court approving the Stalking Horse Contract. *See* Stalking Horse Contract § 3.1(a).

3

12. The parties entered into the Stalking Horse Contract on an all-cash basis without any financing contingencies or further due diligence pursuant to Section 3.1 of the Stalking Horse Contract.

13. The Debtor's senior secured lender, Okoa Capital LLC (the "Senior Lender"), initially objected to the Debtor's motion to, *inter alia*, approve the Stalking Horse Contract and sell the Property at auction [ECF No. 40] (the "Sale Motion"). Nevertheless, the Debtor negotiated a stipulated order [ECF No. 60] (the "Stipulated Order") with its Senior Lender to sell the Property pursuant to the Stalking Horse Contract. A copy of the Stipulated Order is attached hereto as "**Exhibit B**".

14. Section 23 of the Stipulated Order contains certain milestones relating to the sale of the Property. The first milestone being that "45 days from entry of an order approving retention of the Broker . . . at least one (1) bidder (including the Stalking Horse) must be designated as a Qualified Bidder" (the "Qualified Bidder Milestone"). The Stipulated Order further provided that if these milestones were not met, the Senior Lender would be entitled to relief from stay to enforce its rights and remedies against the Property.

15. On March 1, 2024, the Bankruptcy Court approved the Stipulated Order [ECF No. 60], entered a second Order [ECF No. 61] (the "Sale Order") approving the Stalking Horse Contract and certain bidding procedures (the "Bidding Procedures"), and entered a third Order [ECF No. 59] (the "Broker Order") approving the retention of Northgate Real Estate Group as the real estate broker (the "Broker").

16. Upon entry of the Sale Order, the Stalking Horse was obligated to tender the remaining $150,000 balance of the Deposit pursuant to Section 3.1(a) of the Stalking Horse Contract. The Stalking Horse, however, has failed to deliver the balance of the Deposit.

4

17. Entry of the Broker Order started the clock on the Qualified Bidder Milestone under the Stipulated Order. Thus, the Stalking Horse had to be designated as a Qualified Bidder as of April 15, 2024.

18. Upon entry of the Stipulated Order, Sale Order and Broker Order, the Debtor was ready, willing and able to close under the Stalking Horse Contract, and an auction was scheduled for April 17, 2024 (the "Auction").

19. On information and belief, on March 21, 2024, the Stalking Horse terminated the Stalking Horse Contract in an email to Debtor's prior counsel without stating a proper basis for cause to terminate under the Stalking Horse Contract. As such, the Stalking Horse breached the Stalking Horse Contract as of March 21, 2024.

20. As the Stalking Horse improperly terminated the Stalking Horse Contract, the Debtor was unable to meet the Qualified Bidder Milestone on April 15, 2024, and the Secured Lender was granted relief from automatic stay to enforce its rights against the Property. The Debtor was unable to proceed with the sale of the Property in its Chapter 11 case and ultimately had to turn the Property over to its Secured Lender.

21. The Stalking Horse's breach of the Stalking Horse Contract by improperly terminating it and failing to close the transaction caused great financial injury to the Debtor, its estate and all constituents in the bankruptcy case.

22. The damage to the Debtor were foreseen by the Stalking Horse as it had acknowledged that its failure to close the transaction, as and when required, would cause the Debtor to suffer substantial damages. *See* Stalking Horse Contract, § 15.

23. Section 15 of the Stalking Horse Contract states, "Provided Seller has obtained Bankruptcy Court approval and is otherwise ready, willing and able to close as provided herein

5

and if the Buyer shall fail to close the transaction contemplated herby and as and when required, the Good Faith Deposit shall be paid over to Seller as agreed liquidated damages (as Seller's sole remedy and Buyer's sole obligation) it being acknowledged that in such event Seller will suffer substantial damages but such damages are incapable of exact ascertainment."

24. On information and belief, there was a letter dated April 18, 2024, wherein the Stalking Horse indicated that the Property had been vandalized and demanded that the Stalking Horse Contract be "canceled and nullified".

25. The Stalking Horse entered into the transaction on a strict "**AS-IS, WHERE IS WITH ALL FAULTS**" basis pursuant to Section 19(a) of the Stalking Horse Contract subject to certain other terms of the Stalking Horse Contract.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT
### (AGAINST STALKING HORSE)

26. Debtor incorporates and restates all the preceding paragraphs as if set forth at length herein.

27. To state a claim for breach of contract, a plaintiff must allege: (1) the parties entered into a valid agreement, (2) plaintiff performed, (3) defendant failed to perform, and (4) damages. *VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 2013 NY Slip Op 4298, ¶ 6, 109 A.D.3d 49, 58, 967 N.Y.S.2d 338, 345 (App. Div. 1st Dept.) (*citing Noise In The Attic Prods., Inc. v London Records*, 10 AD3d 303, 307, 782 NYS2d 1 [1st Dept 2004]).

28. The Stalking Horse Contract is a valid and enforceable agreement that was previously approved by the Bankruptcy Court, was properly executed and authorized, and should be enforced by its terms.

6

29. The Debtor performed all of its obligations under the Stalking Horse Contract prior to the Stalking Horse's breach and failure to close.

30. The Stalking Horse breached the Stalking Horse Contract by, *inter alia*, improperly terminating it, defaulting on its obligations therein and failing to close the transaction.

31. The Debtor should be awarded the full Deposit as agreed liquidated damages, pursuant to Section 15 of the Stalking Horse Contract.

32. Accordingly, the Debtor is entitled to a judgment (i) declaring and finding that the Debtor is entitled to the full Deposit as liquidated damages for the Stalking Horse's failure to complete the transaction under the Stalking Horse Contract, (ii) directing the release and turnover of the existing, partial Deposit of $350,000 from escrow by the Escrow Agent; (iii) judgment against the Stalking Horse for the additional sum of $150,000 of the Good Faith Deposit and (iv) an order of court directing the Stalking Horse to immediately pay the remaining amount of the required deposit of $150,000 to the Debtor.

**SECOND CAUSE OF ACTION**

**TURNOVER OF PROPERTY UNDER SECTION 543(b)
OF THE BANKRUPTCY CODE
(AGAINST ESCROW AGENT)**

33. Debtor incorporates and restates all the preceding paragraphs as if set forth at length herein. Escrow Agent should immediately turn over the Good Faith Deposit to the Debtor's estate because it is property of the estate.

34. The Good Faith Deposit currently being held by Escrow Agent constitutes property of the bankruptcy estate as said term is defined in Section 541 of the Bankruptcy Code.

35. Defendant Escrow Agent is the "custodian" of the Good Faith Deposit as that term is defined in Section 101(11) of the Bankruptcy Code. Debtor has no claims against Escrow Agent directly but only seeks the appropriate determination by the Court that it should to turnover the

$350,000 that represents a portion of the Good Faith Deposit.

36.     11 U.S.C. §543(b) requires a custodian to deliver property of the estate in its possession, custody or control, and to file an accounting. Accordingly, an order should be entered directing Escrow Agent to turnover the Good Faith Deposit to the Debtor.

### THIRD CAUSE OF ACTION

### TURNOVER OF PROPERTY UNDER SECTION 542(A) AND (B) OF THE BANKRUPTCY CODE
### (AGAINST STALKING HORSE)

37.     Debtor incorporates and restates all the preceding paragraphs as if set forth at length herein.

38.     Section 542(a) of the Bankruptcy Code provides that "an entity, other than a custodian in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title … shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

39.     Pursuant to 11 U.S. Code § 1107 the Debtor in Possession has the rights and duties of the trustee. Therefore, Stalking Horse should be ordered to cause the Good Faith Deposit to be turned over to the Debtor.

40.     The Debtor must allege three elements to state a claim under Section 542(a). These are: "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate." *Kramer v. Mahia (In re Khan)*, 2014 Bankr. LEXIS 4205, 2014 WL 4956676, at 22 (Bankr. E.D.N.Y. Sept. 30, 2014) (quoting *Zazzali v. Minert (In re DBSI, Inc.)*, 468 B.R. 663, 669 (Bankr. D. Del. 2011)).

41.     The first element is established because it is uncontested that a portion of the Good Faith Deposit of $350,000 is held in the IOLA of Escrow Agent.

42. With respect to the second element ". . . this element is adequately pleaded where the plaintiff seeks the turnover of property of the estate that can be put to use in connection with the administration of the estate, including paying the claims of creditors and the costs of administration of the estate. *Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 328 (Bankr. E.D.N.Y. 2018).

43. Now that the Debtor has sold its property the Good Faith Deposit may be its only recoverable asset.

44. The Good Faith Deposit is necessary for payment of Debtor's creditors through a forthcoming Chapter 11 plan. Therefore, the second element is also satisfied.

45. The third element is satisfied because $350,000 is of consequential value to the Debtor's estate because the Debtor's reorganization may depend on its turnover.

46. Section 542(b) provides, "Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor. 11 U.S.C. § 542(b)."

47. The Debtor has established the Good Faith Deposit is a debt that has matured to the Debtor under the Contract. Accordingly, the Good Faith Deposit constitutes estate property subject to turnover under section 542(b) of the Bankruptcy Code. See 11 U.S.C. § 542(b). See id.

48. For the reasons stated herein, pursuant to section 542 of the Bankruptcy Code, the Good Faith Deposit should be determined to be property of the Debtor's estate and Defendants should be required to immediately turn over the withheld funds to the Plaintiff.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for a judgment granting the relief against the Defendant as set forth below:

    a. On the first cause of action judgment by this Court finding Stalking Horse breached the Stalking Horse Contract and awarding Plaintiff the contractually agreed to liquidated damages of the Good Faith Deposit of $500,000.

    b. On the second cause of action an order that the Good Faith Deposit be turned over to the Debtor or the Debtor's bankruptcy estate pursuant to currently in his possession and provide the Debtor with an accounting in accordance with 11 U.S.C. §543.

    c. On the third cause of action, an order compelling to pay the Debtor the remaining $150,000 of the Good Faith Deposit pursuant to 11 U.S.C. § 542.

    d. An award of such other and further relief the Court deems just and proper.

Dated: Harrison, New York
      January 6, 2025                  **BRONSON LAW OFFICES, P.C.**

                           BY:    */s/H. Bruce Bronson*
                                   H. Bruce Bronson, Esq.
                                   *Attorneys for the Debtor/Plaintiff*